Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
 A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501     Fax (888) 316-6107
e-mail: baruchcohen@baruchcohenesq.com

Attorney for Defendants PETER MARCO LLC, a California limited liability
company, PETER VOUTSAS, an individual

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ROVINSKY LLC, a Delaware limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>PETER MARCO LLC, a California limited liability company, PETER VOUTSAS, an individual<br><br>Defendants. | USDC # 2:20-cv-02580<br><br>**ANSWER TO COMPLAINT FOR: NEGLIGENCE, CONVERSION, FRAUD, NEGLIGENT MISREPRESENTATION, CIVIL THEFT (CAL. PENAL CODE § 496), AND AIDING AND ABETTING CONVERSION AND CIVIL THEFT**<br><br>COMPLAINT FILED: [Doc-1] 3-18-2020<br>TRIAL DATE: NOT YET SET |

Defendants PETER MARCO LLC, a California limited liability company ("Marco LLC"), PETER VOUTSAS ("Marco") an individual (collectively herein referred to as "Defendants" and/or "Marco"), hereby answers the Complaint For: Negligence, Conversion, Fraud, Negligent Misrepresentation, Civil Theft (Cal. Penal Code § 496), and  Aiding and Abetting Conversion and Civil Theft ("Complaint") filed by Plaintiff DAVID ROVINSKY LLC, a Delaware limited liability company ("Plaintiff" and/or "Rovinsky") in case # 2:20-cv-02580, and denies any and all such allegations, and further admits or denies the specific allegations of the Complaint and states all applicable affirmative defenses, as follows:

4/14-2:54pm

## 1.   IMPORTANT BACKGROUND TO PROVIDE PROPER CONTEXT TO THIS DISPUTE

On 3-18-2020, Plaintiff filed a complaint against Defendants, Case # 2:20-cv-02580 for negligence, conversion, fraud, negligent misrepresentation, civil theft (Cal. Penal Code § 496), and aiding and abetting conversion and civil theft seeking damages of $1,130,000.00, for the sale of a Ring & Necklace.

To better understand this Answer, Defendants provide the backdrop to the Rovinsky transaction, to show that Jona Rechnitz ("Jona") is the real culprit, whose fraudulent actions (unbeknownst to Defendants at the time) caused Plaintiff's damages. Defendants and Plaintiff are both the victims of Jona Rechnitz's fraud.

### a.   MARCO'S TRANSACTIONS WITH RECHNITZ

From the period  8-26-2018 to 12-23-2019, Marco & Jona enjoyed a successful and trusting relationship with each other whereby they engaged in approximately 32 transactions totaling approximately **$39,369,620.00** in value, whereby they bought merchandise from each other and/or returned merchandise to each other. Jona introduced Marco to famous celebrities, including NBA stars Shaquille "Shaq" O'Neal, Scottie Pippen, Sam Cassell, boxing champ Floyd Mayweather, pop stars Kim Kardishian & Kris Jenner, and artist Alec Monopoly, to name a few, who Marco parlayed Jona's introductions into clients and/or to advance his social media presence by being connected to them.

From the period 10-29-2019 to 1-7-2020 (notwithstanding his then legal troubles in NY), Jona assured Marco that he was back from NY refocused on his business, and acquired **$6,950,444.40** of additional jewelry from Marco on consignment for the purpose of reselling them to his clients (including Plaintiff's Ring and Necklace).

At the time, Marco had no reason to believe that the $6,950,444.40 consignments with Rechnitz would be in jeopardy, primarily because of his

successful and trusting relationship with Jona, the 32 prior transactions with him totaling approximately **$39,369,620.00** in value. Accordingly, Marco LLC consigned the following pieces of Consigned Jewelry to Rechnitz.

| # | Date | Vendor | Item | Cost |
|---|------|--------|------|------|
| 1 | 10-29-2019 | Luna | Yellow & White Choker Necklace / Bracelet - 69.13 ct 10stone 34.9ct 412,500 yellow /wt choker/bracelet | $150,000.00 |
| 2 | 11-11-2019 | Marco LLC | Three Butterfly Rings for Kris Jenner & the Kardashians | $22,000.00 |
| 3 | 11-19-2019 | David Rovinsky | NECKLACE - 18KYG Diamond necklace, 134.71 Fancy Yellow, internally flawless, VS2 , 49 stones. | $1,300,000.00 |
| 4 | 11-26-2019 | Marco LLC | Two Watches for Jona's client Justin Bieber | $89,000.00 |
| 5 | 11-27-2019 | David Rovinsky | RING - 43.10 Carat Fancy Yellow diamond+ 6.82 carats. | $1,650,000.00 |
| 8 |  | Marco LLC | Two Diamond fashion rings for Jona's client Kim Kardashian | $5,000.00 |
| 7 | 12-2-2019 | Norman Silverman (Lazar) | BRACELET - Multi-shape 14 stone diamond bracelet, 45.47 carats, white gold. | $500,000.00 |
| 8 | 12-5-2019 | Marco LLC | Watch for Jona's father Robert & Mixed gold & diamond pieces, for Jona's client Alec Andon Monopoly | $145,000.00 $44,200.00 $189,200.00 |
| 9 | 12-9-2019 | Marco LLC | Cufflinks for Jona's client Chaz | $7,000.00 |
| 10 | 12-12-2019 | Norman Silverman | BY215 - BRACELET - Platinum/18kwg 36.69 carats, 132 stones, 44 radiant 25.52cttw., 66 baguettes 7.57 cttw | $140,000.00 |
| 11 | 12-16-2019 | Norman Silverman | NS10052 - EARRINGS - 18kwg 2stones, 9.02 Round Brilliant, J/Sl2G, GIA# 2165989714, 9.02 Round Brilliant, J/Sl2, GIA# 2205611416 | $335,000.00 |

| 12 | 12-16-2019 | Lazar | LAZ52342 - RING- 20.54 carat Oval diamond ring, H/VVS2, GIA# 6204485119 | $793,049.40 |
| 13 | 12-16-2019 | First International | EID MT 13.62 D/VVS1, # 11776564 | $1,333,695.00 |
| 14 | 12-23-2019 | Marco LLC | Watch for Jona's client Kim Kardashian, and Two Diamond fashion rings for Jona's client Kim Kardashian | $141,500.00 |
| 15 | 1-7-2020 | Eli, Inc. | RING - 15.03 Fancy Yellow internally flawless radiant diamond mounted on a WG ring with a diamond halo. | $215,000.00 |
| 16 | | Marco LLC | Saloman (charge back credit card) | $80,000.00 |
| | | | **TOTAL** | **$6,950,444.40** |

Prior to 10-29-2019, and thereafter, Rechnitz repeatedly represented to Marco that he had interested buyers for the pieces of Consigned Jewelry, that consummation of his sales were imminent, and that payment to Marco would be imminent.

> b. **PLAINTIFF WAS AWARE THAT MARCO LLC CONSIGNED THE JEWELRY TO RECHNITZ, AND THAT MARCO LLC'S PAYMENT TO PLAINTIFF WAS CONTINGENT ON RECHNITZ COMPLETING THE DEAL**

On 11-16-2019 at 8:24PM, Plaintiff texted Marco that Rovinsky was aware that Marco LLC was consigning the jewelry to Jona Rechnitz, and that Plaintiff's repayment was contingent on Rechnitz completing the deal:

> ROVINSKY: *I'll have the necklace back in my office in New York on Tuesday. Wife wants it in maryland, husband came in and loves it but hasn't committed yet. It's a pain in the ass to ship out of the store it's at so want to have it in my hands **in case your guy decides he wants to pull the trigger*** [Emphasis added].

On 11-19-2019 at 10:55am, Plaintiff and Marco texted each other about Jona Rechnitz's purchase:

MARCO:     I received the necklace. Thank you
ROVINSKY:        Thanks. **Is _he coming in today you think_**?
MARCO:     I will let you know. I need to talk to him
ROVINSKY:        **K. Fingers crossed, good luck!** [Emphasis added]

As stated above, on 11-19-2019 and on 11-27-2019, Marco LLC consigned Plaintiff's Ring & Necklace to Jona Rechnitz based on Rechnitz's explicit representations to Marco that he had buyers for them.

| **Date** | **Vendor** | **Item** | **Cost** |
|---|---|---|---|
| 11-19-2019 | Marco LLC to Rechnitz | NECKLACE - 18KYG Diamond necklace, 134.71 Fancy Yellow, internally flawless, VS2 , 49 stones. | $1,300,000.00 |
| 11-27-2019 | Marco LLC to Rechnitz | RING - 43.10 Carat Fancy Yellow diamond+ 6.82 carats. | $1,650,000.00 |
| | | **TOTAL** | **$2,950,000.00** |

The way consignments work, is that if Rechnitz's sale to his clients did not go though, then Rechnitz would return the pieces of Consigned Jewelry back to Marco LLC, who would in turn, return the Ring & Necklace back to Rovinsky.

On 11-20-2019 at 9:55am, Plaintiff and Marco texted each other again about Rechnitz's purchase - showing that Rovinsky knew about Marco's client:

ROVINSKY:        **_Any news from the client yet_**? Just checking in."
                     [Emphasis added]
MARCO:     No. I will let you know. Promise

On 11-27-2019 at 10:57am, Plaintiff and Marco texted each other again about Rechnitz's purchase, wishing him luck with the sale, and acknowledging that this was to be their first successful transaction that broke the ice:

ROVINSKY:        Hi Peter, happy almost thanksgiving. Anything we can celebrate going into the holiday together?
MARCO:     I promise. I will know any day now
ROVINSKY:        _Sounds good. **Good luck my friend**. Have a great thanksgiving_
MARCO:     Happy Thanksgiving to you my Brother. Thank you again for believing in me.
ROVINSKY:        _You're easy to believe in my man! Your energy and hard work is inspiring! Excited to **break the ice** and get the train moving down the tracks together_. [Emphasis added]

On 12-2-2019 at 11:51am, Plaintiff and Marco texted each other again about Rechnitz's $2,950,000.00 purchase:

ROVINSKY:     Sorry, ***what was the number you needed to make it work***? I wasn't taking notes and now trying to get my head into it.
MARCO:     2.9
ROVINSKY:     *Would like to get **$2,950,000** if possible. If you can't make it happen then I'll live at 2.9. Keep me posted* [Emphasis added]

On 12-2-2019 Marco LLC invoiced Rechnitz and his companies Jadelle Jewelry and Diamonds, LLC, a Delaware limited liability company, Jadelle Jewelry, LLC, and Jadelle Inc., a California corporation for the $2,950,000.00, the exact amount of the Rechnitz purchase.

On 12-2-2019 at 9:06pm, Plaintiff and Marco texted each other again about Rechnitz's $2,950,000.00 purchase, acknowledging that Marco was awaiting Rechnitz's $2,950,000.00 check:

ROVINSKY:     *Thanks for the good news. Let me know **when you get the check** and I'll send you invoice for **$2,950,000**. Let me know what amount you want to pay before Jan and **I'll take the 1 percent out of the $25,000 to soften the blow on you and as a thank you for making it happen**!*
MARCO:     Thank you. I will let you know [Emphasis added]

On 12-5-2019 at 10:49am, Plaintiff and Marco texted each other again about Rechnitz's purchase, acknowledging again, that Marco was awaiting Rechnitz's $2,950,000.00 check:

ROVINSKY:     Any news? On a flight and just curious
MARCO:     ***I will receive the check tomorrow***. I will let you know
ROVINSKY:     *Awesome! **Good luck**!* [Emphasis added]

c.     **RECHNITZ'S REPRESENTATIONS TO MARCO THAT HE SOLD PLAINTIFF'S RING & NECKLACE**

On or about 12-5-2019, Rechnitz represented to Marco that he sold Plaintiff's Ring & Necklace and was awaiting receipt of payment from his clients. Rechnitz issued Marco check # 8630 for $2,950,000.00 post-dated to 1-5-2020 (for

Plaintiff's Ring and Necklace).

In turn, on or about 12-5-2019, Marco LLC issued check # 6304 for that exact same amount $2,950,000.00 to Plaintiff, post-dated 1-8-2020, for Plaintiff's Ring and Necklace.

On 12-16-2019 at 7:57am, Plaintiff and Marco texted each other again about Marco LLC's post-dated check for $2,950,000.00:

ROVINSKY:      *Got the check this am. Thank you! You made is for too much money. We agreed on $2,925,000, you made for $2,950,000. Will send you back the difference once deposited*

MARCO:      *Lol. Thank you, I'm crazy busy*

Rechnitz represented to Marco that his check to Marco LLC could not be cashed yet, offering several excuses that seemed plausible to Marco at the time, and Marco in return, told Plaintiff not to deposit Marco LLC's check yet until Rechnitz's check cleared. This is important, because normally, the parties would have agreed to wire transfer payments. The fact that Plaintiff and Marco agreed to a post-dated check evinced Plaintiff's understanding that Plaintiff's payment from Marco LLC was contingent on Rechnitz paying Marco LLC.

During this entire time, Plaintiff was pressuring Marco for word that Marco LLC's post-dated check for $2,950,000.00 would clear, and Marco was conveying to Plaintiff exactly what he believed: that his buyer Rechnitz still needed to receive the funds from Rechnitz's clients and make good on his post-dated check for $2,950,000.00 to Marco LLC.

On 1-2-20, at 9:29:16 AM, Rechnitz texted Marco that his sale with his client consummated and funded:

*Good morning. I'm proud to tell you that **the check was just deposited. 7-10 day hold**. **The manager will see what can be done if anything to make it earlier**. I'm at a client in San Francisco reviewing all of their jewelry which is a big opportunity maybe for us. Have a great day* [Emphasis Added].

On 1-7-20, at 1:19:53 PM, Rechnitz texted Marco that Levin was coming to Marco's store to pick up Rovinsky's ring, because Jona's sale with his client

-7-

consummated and funded:

> *Levin coming at around 2 **for the ring*** [Emphasis Added].

On 1-7-20, at 2:12:17 PM, Rechnitz texted Marco, that Marco had to wait to cash Jona's check for $2,950,000.00 until Jona's bank cleared the funds:

> *7 days is 1-13. 10 days is 1-16. Levin called me to repeat your conversation dates are business days*.

On 1-9-20, at 9:33:33 AM, Rechnitz texted Marco:

> ***I think will have good news on the stones by tomorrow***. *Will update you*. [Emphasis added].

On 1-10-20, at 9:47:57 AM, Rechnitz texted Marco:

> ***Our client said he is choosing over weekend with his wife and will ship back whatever is out Monday***. [Emphasis added].

On 1-12-20, at 9:41:26 AM, Rechnitz texted Marco:

> *His wife is going to select a few rings today or tomorrow they just got back to normalcy. One of the babies had an issue wasn't nursing. She is leaning towards pink, yellow, and 20ct round. **Everything will be selected by tomorrow and shipped back following day. Then we can re ship what they selected***. [Emphasis added].

On 1-12-20, at 7:00:43 PM, Rechnitz texted Marco:

> ***And he will ship back everything*** *and then we will ship back what he chose*. [Emphasis added].

On 1-13-20, at 10:48:09AM, Rechnitz texted Marco:

> *I'm going back to sleep. **Stones from them are being shipped back** Malca and he will let me know which ones he is taking tonight* [Emphasis added].

On 1-13-20, at 10:56:17AM, Rechnitz texted Marco:

> *You sent a few options to the client **they are sending all back and closing deal this evening** on what they choose with you. Then once your paid you'll ship back.* [Emphasis added].

On 1-13-20, at 5:54:46 PM, Rechnitz texted Marco that his check for $2,950,000.00 would clear that week:

> ***Payment by Friday***. [Emphasis added].

On 1-14-20, at 10:01:39 PM, Rechnitz texted Marco that his check for $2,950,000.00 would clear the next day:

-8-

***I'm hoping check goes clear tomorrow****. Hoping hoping*. [Emphasis added].

On 1-15-20, at 8:43:41 AM, Rechnitz texted Marco that his check for $2,950,000.00 did not yet clear, but would clear the next day:

*Funds didn't clear yet but tomorrow is the 10th day. Aaaahhhhhh. Yellow ring will let you know where we stand today.* ***Levin will get check when you tell me he can get it*** *thx*. [Emphasis added].

On 1-15-20, at 7:29:56 PM, Rechnitz texted Marco that the funds would clear because Jona's client released the funds:

*Also 10th business day is tomorrow overnight* ***but I think I managed to get a release in am.*** *Will keep you posted*. [Emphasis added].

On 1-16-20, at 9:05:25 AM, Rechnitz texted Marco that the funds did not yet clear:

*Still not available. Available tomorrow. Aaaahhhhhh*

On 1-16-20, at 10:31:10AM, Rechnitz texted Marco that the funds would clear:

***All goods back Monday and you're getting a wire Monday directly for what they chose****. When oved calls from Moe money Friday just tell give him his check for Monday I guess and tell him not to deposit until Monday because you need funds to clear from the client*. [Emphasis added].

On 1-17-20, at 9:50:55 AM, Rechnitz texted Marco to expect a wire for the $2,950,000.00:

***What's app me balance I owe you separate so I include in the wire. It's happening today. Love u***. [Emphasis added].

On 1-17-20, at 10:44:48AM, Rechnitz texted Marco to expect a wire for the $2,950,000.00 the next day:

***Wire need me two manager sign offs will be out today and hit your account next business day***. [Emphasis added].

On 1-17-20, at 10:50:08AM, Rechnitz texted Marco that Marco should expect a wire for the $2,950,000.00 that day:

***It's for sure going out today they said. I will confirm. Going out shortly***. [Emphasis added].

On 1-17-20, at 12:55:02 PM, Rechnitz texted Marco that Marco should

expect a wire for the $2,950,000.00 the next day:

> *Monday is a bank holiday.* ***So it will be ordered and hit Tuesday morning. I spoke to client****. I'm all over everything*. [Emphasis added].

On 1-20-20, at 2:26:24 PM, Rechnitz texted Marco that Marco to expect a wire for the $2,950,000.00 the next day:

> *Will know tomorrow.* ***Being shipped back tomorrow****. I can't answer you until tomorrow he is at a MLK event he is paying for*. [Emphasis added].

On 1-20-20, at 2:27:42 PM, Marco texted Rechnitz:

> *Ok. Thank you.* ***So most likely we will not have the wire tomorrow?***

[Emphasis added].

On 1-20-20, at 2:28:52 PM, Rechnitz texted Marco:

> ***Correct. Next day****... [Emphasis added].

### d.     MARCO'S SUBSEQUENT DISCOVERY OF RECHNITZ'S FRAUD

Unbeknownst to Marco, Rechnitz's representations that he had buyers and sold Plaintiff's Ring and Necklace were false.

On or about 1-21-2020, Marco subsequently discovered from colleagues in the jewelry industry, that instead of selling Plaintiff's Ring and Necklace and repaying Marco LLC, Rechnitz swindled Marco in a large scale fraud by absconding with all pieces of Consigned Jewelry (including Plaintiff's Ring and Necklace), and either pawned them off, or used them as collateral for loans to various questionable sources, and has not repaid Marco LLC the $6,950,444.40. Marco subsequently discovered from his colleagues that Rechnitz liquidated all pieces of Marco's Consigned Jewelry.

But even after Marco discovered Rechnitz's fraud from colleagues in the jewelry industry, Rechnitz continued to play Marco and deceive him with false and misleading stories:

On 1-21-20, at 10:22:38AM, Rechnitz texted Marco:

4/14-2:54pm

*The stone of Oved's is coming back tomorrow with all of the other stones. Client isn't taking anythinf. **I have a major issue now they didn't know about my legal situation and freaked out** they also want to reverse previous transactions of mine. He can't be associated with me. A man of his status. **I'm dealing with a huge crisis now and my Dad is at bank trying to sort out issue for me in regards to all this. I stopped the wire because they may be sending the necklace and ring back. I need a few hours to deal with them with my lawyer. This is a disaster. I am trying to fix this** but won't know for a few hours. I also have Moty Klein in town at the same time while this is all going on which is extra stress as he can't hear any of this. Give me a few hours please and I hope to have better news.* [Emphasis Added].

On 1-21-20, at 10:23:29AM, Rechnitz texted Marco a vague admission of guilt and liability:

***I understand if you never want to deal with me again or see my fave ever again I am so sorry.*** [Emphasis Added].

On 1-21-20, 10:24:09AM, Rechnitz texted Marco:

***You need to let me try and resolve this now.*** [Emphasis Added]

On 1-21-20, at 10:33:53AM, Rechnitz texted Marco:

***You don't even need to type back anything to me I'm depressed. Upset. This all happened Yesterday evening.*** *I'm dealing with it. Standby* [Emphasis Added].

Even had Marco tried to deposit Rechnitz's $2,950,000.00 post-dated check, he could not because Rechnitz had instructed him to rip it up earlier based on his promises to Marco that he would wire the funds to Marco LLC.

### e.   ROVINSKY'S "RELIANCE" WAS NOT REASONABLE - HE KNEW HE WAS TAKING RISKS WITH MARCO LLC'S CONSIGNMENT TO RECHNITZ

On 1-21-2020 at 12:25pm, Plaintiff and Marco texted each other again about Rechnitz's purchase, with Rovinsky admitting that he took risks by authorizing Marco LLC to consign the jewelry to Rechnitz, acknowledging that Marco was not at fault for Rechnitz's fraud:

ROVINSKY:       *I'm trying to be patient but starting not to understand what the issue is at this point and getting calls every 30 minutes for the last 3 hours to see if money has moved from my partner on the necklace and owner of the ring. If the money hit your account which is now 11 business days*

1   *why is there anything to work out with the bank? It should*
2   *be as simple as the money is in the account and you give*
    *wire instructions to send it from the bank? What am I*
    *missing? I made promises when we made the deal based*
3   *off 1-8 me depositing the check. It's now 1-21 and nothing*
    *has happened. I need to resolve this today. I have gone to*
4   *bat on every end here, **I've taken a lot of risk** and have*
    *believed everything you've said. What is the problem*
5   *today?  It seemed very clear on Friday and Saturday*
    *when we spoke that 11 percent the money this am. It's*
6   *now 12:30 there and 3:30 here and nothing happened? I*
    *am usually very low key but it's $3,000,000 we're talking*
7   *about this can't keep getting pushed and pushed. **In no***
    ***way do I think this is your fault or you're doing***
8   ***anything maliciously** but I'm dealing with two other*
    *people who don't know you and are starting to think*
9   *something not right is happening here*. [Emphasis added]

10      On 1-21-20, at 1:51:24 PM, Plaintiff and Marco texted each other again

11  about Rechnitz's purchase, with Rovinsky admitting that the deal was contingent on

12  Rechnitz paying Marco LLC:

13      ROVINSKY:      What time can I send someone to pick up the pieces
                        tomorrow if the wire isn't sent?
14      MARCO:     I will let you know. I don't have answers right now
        ROVINSKY:      Let's get the pieces back, ***if the deal goes through*** we'll
15                      happily send the pieces back at this point. They've lost all
                        faith in me and my word and want their goods back. ***If***
16                      ***you revive the deal*** we'll get the pieces back to you
                        [Emphasis added]
17
        On 1-21-2020 at 8:52pm, Plaintiff and Marco texted each other again about
18
    Rechnitz's purchase, with Rovinsky acknowledging the Rechnitz predicament, and
19
    now changed his story:
20
        ROVINSKY:      ***Peter I understand you're in a very difficult situation***
21                      *and I think I've showed compassion along the way as this*
                        *deal has dragged out. My mind is not going crazy. It is*
22                      *simple. You sold the jewelry and were paid Jan 6th. You*
                        *told me you were only waiting on funds to clear to pay*
23                      *me. We had a deal. You were supposed to pay me two*
                        *weeks ago! It was not contingent on your clients potential*
24                      *life changes. I'm not being argumentative here. I just*
                        *don't understand. How has our agreement changed? I'm*
25                      *not trying to add more stress. I'm just trying to*
                        *understand how we got to this position. I woke up this*
26                      *morning I was finally being paid $3m and only late this*
                        *afternoon heard for the first time that there was an issue*
27                      *with your client. This is beyond shocking news a month*
                        *after the sale was made. it's another week by the time we*
28

*see the money and they don't trust anything I say at this point.  Is today the first you've heard of any issues with the client and it just happen to coincide with the exact time you promised to send me a wire? Although you only think you're asking for two more days in my and my partners eyes* [Emphasis added]

MARCO:     *Yes. And remember it is 10 business days plus we had a holiday. I really think your partners are not being realistic as to what happens in life. I told you everything.* **I'm doing everything I can**. *I'm sorry if it's not good enough for them. I'm done. I will let you know when I know something. I have never in my 40 years have I had to deal with something like this.  It's a little delayed, that's all. All of this is not making it better or easier*. [Emphasis added]

ROVINSKY:     *No one is trying to make it more difficult. There's a lot of money involved and* **it's out first transaction** *and the game changed today when the story went from we're receiving a wire to now the client might back out. You and I had a clear deal, and there were no contingencies. Shit happens and I feel bad that this is happening to you. Let's talk with clear heads tomorrow and hopefully we'll be able to bring positive closure to this* [Emphasis added]

On 11-27-2019 at 10:57am, Plaintiff and Marco texted each other again about Rechnitz's purchase, acknowledging that their transaction was their first and that Plaintiff was "breaking the ice" with Defendants:

ROVINSKY:     *Hi Peter, happy almost thanksgiving. Anything we can celebrate going into the holiday together*?

MARCO:     *I promise. I will know any day now*

ROVINSKY:     "*Sounds good.* **Good luck my friend**. *Have a great thanksgiving* [Emphasis added]

MARCO:     *Happy Thanksgiving to you my Brother. Thank you again for believing in me.*

ROVINSKY:     *You're easy to believe in my man!* **Your energy and hard work is inspiring! Excited to break the ice and get the train moving down the tracks together**. [Emphasis added]

f.     **MARCO FACILITATED THE RETURN OF PLAINTIFF'S JEWELRY**

Marco informed Plaintiff of Rechnitz's fraud, and how he apparently took Marco LLC's jewelry to a 3rd party and used them as collateral for loans. Plaintiff asked Marco to assist in connecting Rovinsky with the 3rd party so that Plaintiff could buy back the Ring & Necklace.

On 1-27-2020 at 3:06pm, Plaintiff and Marco texted each other again about

Marco's efforts to facilitate the return of Plaintiff's Ring & Necklace. Plaintiff

wanted to see a picture of his jewelry on top of that day's newspaper to make sure

that the 3rd person actually had the jewelry:

> ROVINSKY:    *How are we doing with the photo*?
> MARCO:    *I will text him now*
> ROVINSKY:    *Thank you **but can they please put today's newspaper with it?** Call you in 1 minute* [Emphasis added]

On 1-30-2020 at 11:23am, Plaintiff and Marco texted each other again about

Marco's efforts to facilitate the return of Plaintiff's jewelry.

> ROVINSKY:    *Spoke to my partners and they are very clear that today is the day. Please reiterate that. They are either wiring malca or a retainer today and made it clear to me that it's no longer in my control. Urgency to push to get to get this done today?*
> MARCO:    *Just got this from Henry. Good news coming your way. Give me a few. OK*
> ROVINSKY:    *Ok thanks. RT Jewelers Inc 2158299977*
> MARCO:    *Please if possible to get the ring today. I'll try but I also have a packed schedule today as well **again this is a favor to help the transaction**.* [Emphasis added]

g.    **RECHNITZ'S RECENTLY DISCOVERED FRAUDS ON THE JEWELRY INDUSTRY IN GENERAL AND TO MARCO IN PARTICULAR**

On information and belief, at this same time, Rechnitz defrauded other

diamond dealers and insurance companies in Southern California, including but not

limited to: Sotheby's, Leon Landver, Ben Adhoot, and Yehuda Gamzo, Oved

Anter, Moti Klein, and Julius Klein.

On 1-17-2020 Rechnitz issued two worthless checks to First International

totaling $2,122,760.00 that he had no intention of honoring: (1) Check # 2200 for

$922,760.00; and (2) Check # 2201 for $1,200,000.00.  Both checks were NSF at

the time of tender, in violation of the California Civil Code § 1719 and the

California Penal Code § 476a.

In addition, and to make matters worse, on 1-14-2020 Rechnitz issued Franco

Noval a worthless check that he had no intention of honoring, check # 8817 for

$2,500,000.00, and then on 1-16-2020 check # 8820 for $1,300,000.00, and then on 1-22-2020 check # 8823 for $4,500,000.00  also in violation of the California Civil Code § 1719 and the California Penal Code § 476a.

| Check # | Date | To | $ |
|---|---|---|---|
| 8630 | 1-5-2020 | Peter Marco | $2,950,000.00 |
| 8817 | 1-14-2020 | Franco Noval | $2,500,000.00 |
| 8820 | 1-16-2020 | Franco Noval | $1,300,000.00 |
| 2200 | 1-17-2020 | First International | $922,760.00 |
| 2201 | 1-17-2020 | First International | $1,200,000.00 |
| 8823 | 1-22-2020 | Franco Noval | $4,500,000.00 |
| | | **TOTAL** | **$13,372,760.00** |

On 2-4-2020 at 9:40pm, attorneys from Williams & Cohen wrote Marco about a purported bailout of Rechnitz:

> "*We write with an update on Jona Rechnitz. **A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities**. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any equity, the family member has in it. If you are represented by counsel, please let us know and provide your counsel's contact information. Our client's desire is to resolve this matter amicably.*" [Emphasis added]

Meanwhile, on 2-10-2020, as reported in the NY Post: "***Ex-de Blasio crony used Kardashian ties for fraud scheme, lawsuit claims***," (https://nypost.com/2020/02/09/ex-de-blasio-crony-used-kardashian-ties-for-fraud-scheme-lawsuit-claims/), and as reported in the 3-6-2020 article in JCK: "***The Troubling Case of Jona Rechnitz***" (https://www.jckonline.com/editorial-article/the-troubling-case-jona-rechnitz/), and as reported in the 3-10-2020 NY Daily News article "***Corrupt Mayor de Blasio donor Jona Rechnitz faces new FBI probe in L.A.: court papers***" (https://www.nydailynews.com/new-york/ny-rechnitz-los-angeles-probe-20200310-nrzbb6263nga3hkcyob2lw46wq-story.html), one of Jona's recently defrauded

victims filed a lawsuit entitled: *Victor Franco Norval vs Jona S. Rechnitz, Rachel Rechnitz, Jadelle Inc., a California Corporation; Jadelle Jewelry and Diamonds, LLC, a Delaware Limited Liability Company; Levin Prado Aka Levon Prado, an Xiomara Cortez*, LASC # 20SMCV00216, for (1) Fraud (2) Civil Theft (Penal Code, § 496), (3) Breach of Contract, (4) Conspiracy to Commit Theft, Fraud, and Fraud by Concealment, (5) Appointment of Receiver seeking damages of $7,000,000.00.

Interestingly, on 2-22-2020, Jona's father Robert Rechnitz reiterated the proposed bailout by Jona's cousin to Marco and represented that Marco would be paid "*first in line*" by Jona's cousin.

And then on 2-20-2020, as reported in the NY Post "***De Blasio donor Jona Rechnitz accused of $1M scam in California***," (https://nypost.com/2020/02/28/de-blasio-donor-jona-rechnitz-accused-of-1m-scam-in-california/) another one of Jona's defrauded victims filed a lawsuit entitled: *Israel Sam Gorodistian vs. Jadelle Jewelry and Diamonds, LLC, a Delaware Limited Liability Company; Jadelle Inc., a California Corporation; Jona Rechnitz, Rachel Rechnitz, Robert Rechnitz*, LASC # 20STCV07425, for 1. Conversion; 2. Civil Theft (Pen. Code § 496); 3. Fraud – False Promise; 4. Negligent Misrepresentation; 5. Civil Conspiracy to Defraud; 6. Breach of Oral Contract (2 Counts); 7. Breach of Implied-in-fact Contract (2 Counts); 8. Money Lent; 9. Account Stated; and 10. Breach of Written Guaranty seeking damages of $1,659,333.33.

There are many victims of Rechnitz's fraud. Marco was victimized by Rechnitz, and so was Plaintiff. Marco transacted with Plaintiff in good faith, and in the belief that Rechnitz sold the Consigned Jewelry and Marco was awaiting payment from Rechnitz. At no time, did Marco misrepresent anything to Plaintiff. At no time did Marco represent to Plaintiff that the Rechnitz sale was ever

consummated. A careful reading of the texts between Plaintiff and Marco substantiate the accuracy of Marco's representations to Plaintiff. Marco's subsequent discovery of Rechnitz's recent frauds, after-the-fact, cannot have retroactive effect, and imply that Marco knew of Rechnitz's recent frauds when Marco contracted with Plaintiff.

h.    **JADELLE'S INVOLUNTARY BANKRUPTCY PROCEEDING**

As reported in the NY Post: "***Corrupt de Blasio donor Jona Rechnitz's alleged victims trying to force him into bankruptcy***" (https://nypost.com/2020/04/07/de-blasio-donor-jona-rechnitzs-alleged-victims-trying-to-bankrupt-him/) on 4-6-2020, an involuntary chapter 7 bankruptcy proceeding was filed against Jadelle Jewelry and Diamonds, LLC, a Delaware limited liability company, Jadelle Jewelry, LLC, and Jadelle Inc., a California corporation, USBC # 2:20-bk-13530-BR. The petitioning creditors are: First International Diamond, Inc., with Trade Debt/Damages of $1,976,225.00,  Peter Marco, LLC, with Trade Debt/Damages of $7,676,744.00 (the correct amount is $6,950,444.40), and Victor Franco Noval with Trade Debt/Damages of $5,800,000.00, with total petitioners' claims of $15,452,969.00.

Jona is apparently no stranger to fraud. Unbeknownst to Marco, on 6-3-2019, Jona was sued in the United States Bankruptcy Court Southern District of New York (Manhattan), Adv. Case No, # 19-01236-jlg by Kenneth P. Silverman, Esq., the Chapter 7 Trustee of the Jointly Administered Estates of National Events Holdings, LLC, Chapter 7 Case No.: 17-11556 (JLG) on 35 counts of receiving fraudulent conveyances through an elaborate Ponzi scheme, pursuant to New York Debtor and Creditor Law §276, and (b) pursuant to 11 U.S.C. §§550(a) and 551, 11 U.S.C. §548(a)(1)(A), and (b), 11 U.S.C. §548(a)(1)(B), and (b),  totaling $45,000,000.00.

///

### NATURE OF THE CASE

1.    Answering Paragraph 1 of the Complaint, Defendants, admit the allegations in the 1st sentence of this Paragraph, except for the word: "gave." Marco-LLC did not "give" the jewelry to Rechnitz, they were consigned to Rechnitz. Answering Paragraph 1 of the Complaint, Defendants, deny the allegations in the 2nd sentence of this Paragraph.

2.    Answering Paragraph 2 of the Complaint, Defendants, deny the allegations of this paragraph.

### PARTIES

3.    Answering Paragraph 3 of the Complaint, upon information and belief, Defendants deny knowledge or information sufficient to admit or deny the allegations in this paragraph. Answering Paragraph 4 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph. Voutsas operates by a business name Peter Marco ("Marco").

4.    Answering Paragraph 4 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph.

5.    Answering Paragraph 5 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph.

### JURISDICTION AND VENUE

6.    Answering Paragraph 6 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph.

7.    Answering Paragraph 7 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph.

### FACTUAL ALLEGATIONS

8.    Answering Paragraph 8 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph.

9.    Answering Paragraph 9 of the Complaint, upon information and belief,

Defendants admit the allegations in this paragraph.

10.  Answering Paragraph 10 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph. Plaintiff never consigned the 43-carat yellow diamond ring (the "Ring") to Peter Marco personally. Plaintiff consigned the Ring to Marco LLC.

11.  Answering Paragraph 11 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph. Plaintiff never consigned the 134-carat yellow radiant diamond necklace (the "Necklace") to Peter Marco personally. Plaintiff consigned the Necklace to Marco LLC.

12.  Answering Paragraph 12 of the Complaint, upon information and belief, Defendants admit some the allegations in this paragraph. However, as this Paragraph comes under the header that "Peter Marco Falsely Claimed It Sold Jewelry to an Unidentified 'Private Client'" Defendants deny the allegations. Answering Paragraph 12 of the Complaint, upon information and belief, Defendants admits the first sentence in this paragraph. Answering Paragraph 12 of the Complaint, upon information and belief, Defendants admits the second sentence in this paragraph. Answering Paragraph 12 of the Complaint, upon information and belief, Defendants admits the third sentence in this paragraph, except that Peter Marco did not personally agree to sell the two pieces, it was Marco LLC.

13.  Answering Paragraph 13 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph, except that there was no consignment price, there was a negotiated price.

14.  Answering Paragraph 14 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph.

15.  Answering Paragraph 15 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph. Specifically, Defendants

never represented that he had "consummated the sale" with a "private client" (on information and belief, Defendant recalls identifying Rechnitz's identity to Rovinsky at or around this time, and further takes issue with the term "private client" as Rechnitz was in the jewelry business and was well known in business), nor did he ever represent that he "deposited the private client's check" nor did he ever represent that "everything was fine."

16.   Answering Paragraph 16 of the Complaint, upon information and belief, Defendants admits that they met for dinner on 1-8-2020 in Los Angeles, admits that he stated that he hoped that the check would clear in 5-10 days and then Rovinsky could deposit the check he received from Marco LLC thereafter, but deny that there was any "misrepresentation" and further denies that he stated or assured Plaintiff "that this was typical for his bank with deposits of this size." Defendant did not and could not guaranty that Rechnitz's post-dated check would indeed clear. No one could ever make such a guaranty.

17.   Answering Paragraph 17 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph. Specifically, on information and belief, Defendant recalls identifying Rechnitz's identity to Rovinsky at or around this time, and further takes issue with the term "private client" as Rechnitz was in the jewelry business and was well known in business. Additionally, Defendant did not and could not predict when Rechnitz's post-dated check would indeed clear. No one could ever make such a prediction.

18.   Answering Paragraph 18 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph. Specifically, the texts between the parties reveal that Plaintiff was fully aware:

a.      that Plaintiff discounted and renegotiated the sale to Defendants by

1    $450,000.00 (from $3,400,000.00 down to $2,950,000.00);

2    b.    that Defendants were not the ultimate buyer, but rather that Plaintiff

3          consigned the jewelry to Defendants for $2,950,000.00 who was

4          waiting for Rechnitz's deal to go through and for Rechnitz's

5          $2,950,000.00 check to clear;

6    c.    that Plaintiff knew the risk of selling expensive jewelry to a first-time

7          client Marco LLC; &

8    d.    that Marco exercised reasonable care over the Ring and the Necklace,

9          given the circumstances. Hence, Plaintiff's claim of reasonable

10         reliance on alleged representations and assurances to the contrary is

11         pure fiction.

12   19.   Answering Paragraph 19 of the Complaint, upon information and belief,

13         Defendants deny the allegations in this paragraph, especially under heading

14         that: "Rovinsky Learned in Mid-January 2020 That Peter Marco's

15         Representations and Assurances Were False." Specifically, Marco never

16         "changed his story," never represented that he actually "received payment

17         from Rechnitz and never represented that he had received "most of the

18         payment." Further, said claim is illogical and not plausible, as one cannot

19         receive most of a payment on a post-dated check.

20   20.   Answering Paragraph 20 of the Complaint, upon information and belief,

21         Defendants deny the allegations in this paragraph, because the quote

22         attributed to Marco is incomplete  and misleading.

23         *Don't be nervous. I have spoken with the client. I'm pretty sure that*

24         *the sale will go through Thursday I will have the goods or I can*
           *release the payment.*

25         The full and accurate text of Marco shows that Marco referenced the sale

26   going through contingent on Rechnitz's sale going through, that Marco related

27   Rechnitz's promise to him, and his belief that Rechnitz would come through with

28

the sale. The complete and accurate 1-20-2020 text from Marco stated (in bold):

> *Don't be nervous. I have spoken with the client. I'm pretty sure that the sale will go through Thursday I will have the goods or I can release the payment* **tomorrow we will be talking again. I feel pretty good about it. I was promised by Thursday he is working a few things out. Our minds starts to make us crazy. The story has not changed a situation in the client life did but I believe he will honor his promise and commitment**. [Emphasis added].

21. Answering Paragraph 21 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph. Specifically, Marco never lulled Plaintiff into a false sense of security and convince him to continue to believe that the delay in payment was merely an issue with the bank. On the contrary, Marco consistently stated that the sale with Plaintiff going through was contingent on Rechnitz's sale going through.

22. Answering Paragraph 22 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph. Specifically, Marco LLC issued the check, not Marco. Further Plaintiff knew that Rechnitz's check was post-dated.

23. Answering Paragraph 23 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph. Specifically, Marco never represented to Plaintiff that he "sold" or "gave" the Ring or Necklace to Rechnitz, Marco LLC consigned them to Rechnitz.

24. Answering Paragraph 24 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph. Further, on information and belief, Defendant recalls identifying Rechnitz's identity to Rovinsky at or around the time of the Rechnitz consignment and Plaintiff approved and authorized it, notwithstanding Rechnitz's criminal past.

25. Answering Paragraph 25 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph.

26. Answering Paragraph 26 of the Complaint, upon information and belief,

Defendants admit that they knew of Rechnitz's criminal history as well as his criminal sentencing in December 2019 (and all of that information was publicly disclosed), but deny that they knew of Rechnitz's "fraudulent conduct" (whatever that means). Further, on information and belief, Defendant recalls identifying Rechnitz's identity to Rovinsky at or around the time of the Rechnitz consignment and Plaintiff approved and authorized it, notwithstanding Rechnitz's criminal past. Further, even if Defendants did not identify Rechnitz's identity earlier, Defendants take issue with the allegation that they had an obligation to identify their private client's identity to Plaintiff. It is standard in the jewelry industry for a merchant not to disclose to its supplier the identity of the merchant's buyer, so that the supplier and the buyer do not cut the merchant out from the deal. That being said, Defendants were under no duty to disclose Rechnitz's identity to Plaintiff.

27. Answering Paragraph 27 of the Complaint, upon information and belief, Defendants deny the heading that: "Threats Against Rovinsky and Rovinsky's Efforts to Mitigate Loss." Answering Paragraph 27 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph, although Defendants are unsure as to the exact date.

28. Answering Paragraph 28 of the Complaint, upon information and belief, Defendants admit the allegations in the first sentence this paragraph. However, Defendants deny the second sentence that Marco "hindered" Plaintiff's efforts to mitigate its losses by getting the jewelry back. On the contrary, Marco facilitated  Plaintiff's efforts to mitigate its losses by getting the jewelry back.

29. Answering Paragraph 29 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph. Specifically, Defendants

never attempted to "deter" Plaintiff from pursuing recovery of the jewelry. On the contrary, Marco facilitated  Plaintiff's efforts to mitigate its losses by getting the jewelry back. Defendant never represented to Plaintiff that the person from whom Rechnitz borrowed money had ties to a Mexican drug cartel and was dangerous..

30.   Answering Paragraph 30 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph. Defendant never instructed Rovinsky not to report anything to law enforcement. Defendant suggested that Plaintiff be patient to give time for the Rechnitz family bailout and to buy back the jewelry.

31.   Answering Paragraph 31 of the Complaint, upon information and belief, Defendants deny knowledge or information sufficient to admit or deny the allegations in this paragraph. Further, Defendant denies conveying any threats to Rovinsky's personal safety and his ability to obtain the jewelry.

32.   Answering Paragraph 32 of the Complaint, upon information and belief, Defendants admit the first sentence in this paragraph. Defendants deny the second sentence in this paragraph. Specifically, Defendants did not connect Rovinsky to several people who purportedly loaned money to Rechnitz and claimed to possess the Ring and the Necklace. Marco introduced Rovinsky to one person "Henry" who represented himself as an intermediary and middleman who knew a man named "Tony" who was the one who lent money to Rechnitz and claimed to possess the Ring and the Necklace. Defendant did not know them well and did no prior business with them.

33.   Answering Paragraph 33 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph.

34.   Answering Paragraph 34 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph, except for the word

"assured." Marco never assured Plaintiff of repayment. On the contrary, he conveyed information he received from Rechnitz's lawyers that the family of Rechnitz was attempting to bailout Rechnitz and pay his defrauded creditors, including Defendants (who would then pay Plaintiff). Further, Defendants never acknowledged ultimate responsibility for any and all of Rovinsky's losses.

35.     Answering Paragraph 35 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph. Defendant denies instructing them to surrender their cell phones. Defendant denies patting down both of them to ensure they had no recording devices.

36.     Answering Paragraph 36 of the Complaint, upon information and belief, Defendants deny patting down both of them to ensure they had no recording devices.  Defendants admit that Marco conveyed what Henry conveyed to him, that Tony purportedly had the jewelry and  wanted to be paid in cash in two different transactions.

37.     Answering Paragraph 37 of the Complaint, upon information and belief, Defendants deny  the allegations in this paragraph. On the contrary, Plaintiff accepted Henry's and Tony's proposal and made two agreed-back (not ransom) payments of $565,000.00 each totaling $1,130.000.00 Rovinsky's partner Rick wire transferred the funds to Malka Amit, who wired the funds to Henry the middleman. Plaintiff's going ahead with the transaction to recover their goods disprove their allegation that Rovinsky feared for his own safety and concerned about the appropriateness of Henry & Tony's proposal and refused to accept it.

38.     Answering Paragraph 38 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph.

39.     Answering Paragraph 39 of the Complaint, upon information and belief,

Defendants deny the allegations in this paragraph. Specifically, Defendants deny that throughout this trying process, Marco continued to communicate directly with the individuals who purportedly had the jewelry. At the initial meeting Rovinsky and Henry exchanged phone numbers and communicated with each other out of Defendants' presence. Defendants further deny the allegation that Marco facilitated Rovinsky making "ransom" payments. Rovinsky agreed to buyback his jewelry with Henry to recover his jewelry. Further, Defendant deny the allegation that Rovinsky asked Marco to make the payment himself or provide jewelry of equal value, and that Marco acknowledged responsibility for Rovinsky's financial loss and refused to make the payment.

40.   Answering Paragraph 40 of the Complaint, upon information and belief, Defendants Defendants deny the allegation that Rovinsky made a "ransom" payment. Rovinsky agreed to buyback his jewelry with Henry to recover his jewelry. Defendants admit the first sentence in this paragraph, other than the word "ransom." Defendants deny knowledge or information sufficient to admit or deny the second sentence in this paragraph.

41.   Answering Paragraph 41 of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph.

42.   Answering Paragraph 42 of the Complaint, upon information and belief, Defendants admit the first sentence in this paragraph. Defendants deny the second sentence in this paragraph. Defendant denies Voutsas demanding more than one-hundred thousand dollars on top of $565,000.00. Defendant further denies any illegal effort to extort Rovinsky and his business associate. Defendants further deny "recognizing" recognizing the significant risk that the Necklace could be seized by law enforcement because it was stolen from Rovinsky. Defendants further that Marco accepted $565,000. It was solely

1    and exclusively an agreed-upon deal with Rovinsky and a pawnbroker named

2    Tony through Henry the middleman.

3    43.    Answering Paragraph 43 of the Complaint, upon information and belief,

4    Defendants deny the heading "Peter Marco Breached the Consignment

5    Agreements with DR LLC and Failed to Exercise Ordinary Care Over the

6    Jewelry."  Answering Paragraph 43 of the Complaint, upon information and

7    belief, Defendants deny knowledge or information sufficient to admit or deny

8    the allegations in this paragraph. A review of Consignment Memos # 4385

9    and # 4338 reveal that only the LLC is liable (and not Peter Marco

10   personally), and were not documented properly in that they contain no terms

11   of sale (ie., no due date, and no provision for interest & attorneys fees), and

12   contain no traditional consignment language in them. Further, Plaintiff never

13   consigned the Ring and the Necklace to Peter Marco. Plaintiff consigned

14   them to Marco LLC.

15   44.    Answering Paragraph 44 of the Complaint, upon information and belief,

16   Defendants deny knowledge or information sufficient to admit or deny the

17   allegations in this paragraph. Further, Plaintiff never consigned the Ring and

18   the Necklace to Peter Marco personally. Plaintiff consigned them to Marco

19   LLC.

20   45.    Answering Paragraph 45 of the Complaint, upon information and belief,

21   Defendants deny  the allegations in this paragraph.

22   46.    Answering Paragraph 46 of the Complaint, upon information and belief,

23   Defendants admits knowing of Rechnitz's upcoming criminal sentencing

24   hearing on December 19, 2019, and deny that the valid consignments to

25   Rechnitz was to "help Rechnitz" from his debt. Defendant denies knowing of

26   Rechnitz's "personal circumstances" (whatever that means), and denies

27   knowing that Rechnitz was heavily in debt.

28

47.   Answering Paragraph 47 of the Complaint, upon information and belief, Defendants deny  the allegations in this paragraph.

48.   Answering Paragraph 48 of the Complaint, upon information and belief, Defendants deny  the allegations in this paragraph based on the heading: "Peter Marco and Voutsas Deceived Rovinsky and Made Dozens of Misrepresentations for More Than a Month, Further Harming DR LLC." Answering Paragraph 48 of the Complaint, upon information and belief, Defendants deny the 1st sentence in this paragraph. Answering Paragraph 48 of the Complaint, upon information and belief, Defendants admit the 2nd sentence in this paragraph that in early December 2019, Voutsas represented that he had a private client, but deny that said representation was false. Answering Paragraph 48 of the Complaint, upon information and belief, Defendants deny the 3rd sentence in this paragraph. Marco never represented that he actually received money from Rechnitz.  Answering Paragraph 48 of the Complaint, upon information and belief, Defendants deny the 4th sentence in this paragraph that Voutsas sent Rovinsky a post-dated check (Further, Marco LLC issued the check, not Marco), but deny that Marco repeatedly stated that he was waiting for funds to clear in his bank account. On the contrary, Marco consistently stated that the sale with Plaintiff going through was contingent on his sale with Rechnitz going through

49.   Regarding Paragraph 49 of the Complaint, Defendants deny  the allegation in this opening paragraph that Voutsas' culpability is without question. He facilitated Rechnitz's fraud, of which he was aware, as evidenced by, among other conduct and statements.

   a.   Answering Paragraph 49a of the Complaint, upon information and belief, Defendants deny  the allegations in this paragraph.

   b.   Answering Paragraph 49b of the Complaint, upon information and

belief, Defendants deny the allegations in this paragraph.

c.   Answering Paragraph 49c of the Complaint, upon information and belief, Defendants admit that Marco connected Plaintiff with the individuals who claimed to have possession of the jewelry, but deny that he demanded more than $1 million to get the jewelry back.

d.   Answering Paragraph 49d of the Complaint, upon information and belief, Defendants admit the allegations in this paragraph that Voutsas communicated directly and regularly with those individuals, but adds that so did Rovinsky.

e.   Answering Paragraph 49e of the Complaint, upon information and belief, Defendants admit that Marco sent Plaintiff pictures of the jewelry in clear plastic bags to facilitate the transaction, but deny that he encouraged Rovinsky to make the ransom payment. On the contrary, it was Rovinsky's idea to get the pictures of the jewelry and to make the buy-back payment.

f.   Answering Paragraph 49f of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph.

g.   Answering Paragraph 49g of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph.

50.   Answering Paragraph 50 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph.

51.   Answering Paragraph 51 of the Complaint, upon information and belief, Defendants deny the first sentence in this paragraph, because it was not a ransom payment, but a buyback payment. Defendants deny the second sentence in this paragraph.

52.   Answering Paragraph 52 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph.

# FIRST CAUSE OF ACTION

## (Negligence – Against Peter Marco)

53.  Answering Paragraph 53 of the Complaint, upon information and belief, Defendants deny  the allegations in this paragraph.

54.  Answering Paragraph 54 of the Complaint, upon information and belief, Defendants deny knowledge or information sufficient to admit or deny the allegations in this paragraph. A review of Consignment Memos # 4385 and # 4338 reveal that only the LLC is liable (and not Peter Marco personally), and were not documented properly in that they contain no terms of sale (ie., no due date, and no provision for interest & attorneys fees), and contain no traditional consignment language in them. Further, Plaintiff never consigned the Ring and the Necklace to Peter Marco, personally. Plaintiff consigned them to Marco LLC.

55.  Answering Paragraph 55 of the Complaint, upon information and belief, Defendants deny knowledge or information sufficient to admit or deny the allegations in this paragraph. . Further, Plaintiff never consigned the Ring and the Necklace to Peter Marco personally. Plaintiff consigned them to Marco LLC.

56.  Answering Paragraph 56 of the Complaint, upon information and belief, Defendants deny knowledge or information sufficient to admit or deny the allegations in this paragraph.

57.  Answering Paragraph 57 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph.

58.  Answering Paragraph 58 of the Complaint, upon information and belief, Defendants deny knowledge or information sufficient to admit or deny the allegations in this paragraph.

///

## SECOND CAUSE OF ACTION

### (Conversion - Against Peter Marco and Peter Voutsas)

59. Answering Paragraph 59 of the Complaint, upon information and belief, Defendants deny the allegations in this paragraph.

60. Answering Paragraph 60 of the Complaint, upon information and belief, Defendants deny knowledge or information sufficient to admit or deny the allegations in this paragraph. Specifically, Defendants do not know that Plaintiff owned the Necklace and the Ring. Defendants were informed by Plaintiff that Rovinsky has partners in them. Further, a review of Consignment Memos # 4385 and # 4338 reveal that only the LLC is liable (and not Peter Marco personally), and were not documented properly in that they contain no terms of sale (ie., no due date, and no provision for interest & attorneys fees), and contain no traditional consignment language in them.

61. Answering Paragraph 61 of the Complaint, upon information and belief, Defendants deny knowledge or information sufficient to admit or deny the allegations in this paragraph. A review of Consignment Memos # 4385 and # 4338 reveal that only the LLC is liable (and not Peter Marco personally), and were not documented properly in that they contain no terms of sale (ie., no due date, and no provision for interest & attorneys fees), and contain no traditional consignment language in them. Further, Plaintiff never consigned the Ring and the Necklace to Peter Marco, personally. Plaintiff consigned them to Marco LLC.

62. Answering Paragraph 62 of the Complaint, Defendants, deny the allegations in this paragraph.

63. Answering Paragraph 63 of the Complaint, Defendants deny the allegations in this paragraph. Specifically, Rovinsky never demanded that both pieces be returned to him.

64. Answering Paragraph 64 of the Complaint, Defendants, deny the allegations in this paragraph.

### THIRD CAUSE OF ACTION

### (Fraud – Against Peter Marco and Peter Voutsas)

65. Answering Paragraph 65 of the Complaint, Defendants, deny the allegations in this paragraph.

66. Answering Paragraph 66 of the Complaint, Defendants, deny the allegations in this paragraph.

67. Answering Paragraph 67 of the Complaint, Defendants, deny the allegations in this paragraph.

68. Answering Paragraph 68 of the Complaint, Defendants, deny the allegations in this paragraph.

69. Answering Paragraph 69 of the Complaint, Defendants, deny the allegations in this paragraph.

70. Answering Paragraph 70 of the Complaint, Defendants, deny the allegations in this paragraph.

71. Answering Paragraph 71 of the Complaint, Defendants, deny the allegations in this paragraph.

72. Answering Paragraph 72 of the Complaint, Defendants, deny the allegations in this paragraph.

### FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation – Against Peter Marco and Peter Voutsas)

73. Answering Paragraph 73 of the Complaint, Defendants, deny the allegations in this paragraph..

74. Answering Paragraph 74 of the Complaint, Defendants, deny the allegations in this paragraph.

75. Answering Paragraph 75 of the Complaint, Defendants, deny the allegations

in this paragraph.

76.   Answering Paragraph 76 of the Complaint, Defendants, deny the allegations in this paragraph.

77.   Answering Paragraph 77 of the Complaint, Defendants, deny the allegations in this paragraph.

78.   Answering Paragraph 78 of the Complaint, Defendants, deny the allegations in this paragraph.

79.   Answering Paragraph 79 of the Complaint, Defendants, deny the allegations in this paragraph.

## FIFTH CAUSE OF ACTION

### (Civil Theft (Penal Code § 496) – Against Peter Marco and Peter Voutsas)

80.   Answering Paragraph 80 of the Complaint, Defendants, deny the allegations in this paragraph.

81.   Answering Paragraph 81 of the Complaint, Defendants deny knowledge or information sufficient to admit or deny the allegations in this paragraph, that Rovinsky "entrusted" Peter Marco with the Ring and the Necklace as a "consignee." A review of Consignment Memos # 4385 and # 4338 reveal that only the LLC is liable (and not Peter Marco personally), and were not documented properly in that they contain no terms of sale (ie., no due date, and no provision for interest & attorneys fees), and contain no traditional consignment language in them. Further, Plaintiff never consigned the Ring and the Necklace to Peter Marco, personally. Plaintiff consigned them to Marco LLC.

82.   Answering Paragraph 82 of the Complaint, Defendants, deny the allegations in this paragraph. Specifically, Defendants did not "give" the jewelry to Rechnitz, they were consigned to Rechnitz. Answering Paragraph 82 of the Complaint, Defendants, admit the clause that Rechnitz converted the jewelry

for his own personal use. Answering Paragraph 82 of the Complaint, Defendants, deny the remaining allegations in this paragraph.

83.   Answering Paragraph 83 of the Complaint, Defendants, deny the allegations in this paragraph.

84.   Answering Paragraph 84 of the Complaint, Defendants, deny the allegations in this paragraph.

85.   Answering Paragraph 85 of the Complaint, Defendants, deny the allegations in this paragraph.

## SIXTH CAUSE OF ACTION

### (Aiding and Abetting Conversion and Civil Theft –

### Against Peter Marco and Peter Voutsas)

86.   Answering Paragraph 86 of the Complaint, Defendants, deny the allegations in this paragraph.

87.   Answering Paragraph 87 of the Complaint, Defendants, deny the allegations in this paragraph. Answering Paragraph 87 of the Complaint, Defendants, admit the clause that Rechnitz converted the jewelry for his own personal use, and deny knowledge or information sufficient to admit or deny that Rechnitz gave the pieces to a lender as collateral to obtain a $1 million loan. Further, Marco never acted on his own behalf but on behalf of the LLC. Further, Defendants' did not "give" the jewelry to Rechnitz, they were consigned to Rechnitz.

88.   Answering Paragraph 88 of the Complaint, Defendants, deny the allegations in this paragraph.

89.   Answering Paragraph 89 of the Complaint, Defendants, deny the allegations in this paragraph.

90.   Answering Paragraph 90 of the Complaint, Defendants, deny the allegations in this paragraph.

91.  Answering Paragraph 91 of the Complaint, Defendants, deny the allegations in this paragraph.

92.  Answering Paragraph 92 of the Complaint, Defendants, deny the allegations in this paragraph.

93.  Answering Paragraph 93 of the Complaint, Defendants, deny the allegations in this paragraph.

## PRAYER FOR RELIEF

94.  Answering Paragraphs a, b, c, d, e, f, in this section, Defendants deny that Plaintiff are entitled to any of the relief requested.

## AFFIRMATIVE DEFENSES

95.  Defendants allege the following affirmative defenses to the Complaint. In asserting these affirmative defenses, Defendants do not assume the burden to establish any fact or proposition where that burden is properly imposed on Plaintiff:

a.  The Complaint fails to state facts sufficient to constitute a cause of action against these answering Defendants;

b.  Plaintiff has failed to state a claim upon which relief may be granted;

c.  Plaintiff has failed to mitigate its own damages;

d.  Plaintiff's reliance was not reasonable;

e.  Plaintiff's Consignment Memos # 4385 and # 4338 were not documented properly in that they contain no terms of sale (ie., no due date, and no provision for interest & attorneys fees), and contain no traditional consignment language in them.

f.  Plaintiff is estopped by its own conduct to assert the allegations in the Complaint;

g.  Plaintiff's claims are barred by laches;

h.  Plaintiff suffered no damages as a result of the acts complained of;

i.  If any damages were sustained by Plaintiff, which Defendants deny, said damages were proximately caused by the negligence of Plaintiff and/or third parties other than Defendants and the liability of all responsible parties, named or unnamed, should be apportioned according to their relative degrees of fault, and the liability of Defendants, if any, should be reduced accordingly and apportioned pursuant to California Civil Code §§ 1431 through 1437;

j.  Plaintiff does not have a case or controversy as required by federal law. If the Defendants' alleged conduct is found to have been wrongful, which Defendants deny and continues to deny, then Plaintiff' claims are barred by the doctrine of unclean hands;

k.  Defendants acted in good faith and did not directly or indirectly perform any acts whatsoever which would constitute a violation of any rights possessed by Plaintiff, or any duty owed to Plaintiff;

l.  None of the alleged acts or omissions of Defendants were a substantial factor in bringing about the alleged damages and losses alleged by Plaintiff and, therefore, were not a contributing cause, but instead, were superseded by the acts and/or omissions of Plaintiff and others which were independent, intervening, and proximate causes of the damages and losses alleged by Plaintiff;

m.  Plaintiff's action against Defendants is barred by the fact that they did not deliberately and intentionally violate Plaintiff' rights and was not deliberately indifferent;

n.  Defendants allege that they are immune from liability because their acts, if any, were performed in good faith and without malice;

o.  Defendants have never taken any action with a conscious disregard of Plaintiff's rights, and have not engaged in any conduct with respect to

Plaintiff which would constitute oppression, fraud or malice, nor have Defendants ratified or approved any such act or acts of others;

p.   Plaintiff's claims are barred by the defense of after acquired evidence;

q.   Defendants presently have insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated defenses available. Defendants reserve the right to assert additional defenses that are revealed by further investigation or discovery.

## PRAYER

96.   WHEREFORE, DEFENDANTS pray for judgment or relief against Plaintiff as follows:

a.   That the claims against Defendants be dismissed, with prejudice, and that the Plaintiff take nothing;

b.   That Defendants be awarded their attorney's fees, costs, and disbursements incurred in defending this matter; and

c.   For such other and further relief, including declaratory, equitable relief, and damages, as this Court deems just and proper.

DATED:       April 14, 2020          LAW OFFICE OF BARUCH C. COHEN
                                      A Professional Law Corporation

                                      By ____/S/ Baruch C. Cohen_____
                                      Baruch C. Cohen, Esq.
                                      Attorney for Defendants PETER MARCO
                                      LLC, a California limited liability company,
                                      PETER VOUTSAS, an individual

4/14-2:54pm                           -37-

**CERTIFICATE OF SERVICE**

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles, California; that my business address is 4929 Wilshire Boulevard, Suite 940 Los Angeles, California 90010; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document entitled **ANSWER TO COMPLAINT FOR: NEGLIGENCE, CONVERSION, FRAUD, NEGLIGENT MISREPRESENTATION, CIVIL THEFT (CAL. PENAL CODE § 496), AND  AIDING AND ABETTING CONVERSION AND CIVIL THEFT** on all interested parties in this action by the method indicated below at the address stated below:

| | |
|---|---|
| Anthony R Bisconti, Esq.<br>Bienert Katzman PC<br>601 West 5th Street Suite 720<br>Los Angeles, CA 90071<br>Email: tbisconti@bienertkatzman.com<br>*Attorney for Plaintiff David Rovinsky LLC* | Steven Jay Katzman, Esq.<br>Bienert Katzman PC<br>601 West 5th Street Suite 720<br>Los Angeles, CA 90071<br>Email: skatzman@bienertkatzman.com<br>*Attorney for Plaintiff David Rovinsky LLC* |
| Jason A. Levine, Esq.<br>Hangley Aronchick Segal<br>Pudlin & Schiller<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>Email: jlevine@hangley.com<br>*Attorney for Plaintiff David Rovinsky LLC* | Andrew E. Erdlen, Esq.<br>Hangley Aronchick Segal<br>Pudlin & Schiller<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>Email: aerdlen@hangley.com<br>*Attorney for Plaintiff David Rovinsky LLC* |

**[X]     BY ELECTRONIC TRANSMISSION**: by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case. A pdf version of this document was also transmitted to counsel via electronic mail at the mail address indicated above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 14, 2020 at Los Angeles, California.

By: /s/  Baruch C. Cohen
     Baruch C. Cohen