1  Baruch C. Cohen, Esq. (SBN 159455)
   **LAW OFFICE OF BARUCH C. COHEN**
2       A Professional Law Corporation
   4929 Wilshire Boulevard, Suite 940
3  Los Angeles, California 90010
   (323) 937-4501     Fax (888) 316-6107
4  e-mail: baruchcohen@baruchcohenesq.com

5  Attorney for Third Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka
   PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba
6  PETER MARCO LLC

7

8                **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10 DAVID ROVINSKY LLC, a              USDC # 2:20-cv-02580
   Delaware limited liability company,
11                                    **CROSS-COMPLAINT FOR:**
           Plaintiff,
12                                    1.    **INTENTIONAL**
   PETER VOUTSAS aka PETER                  **MISREPRESENTATION &**
13 MARCO aka PETER VOUTSAS, aka            **FRAUD;**
   PETER MARCO                        2.    **CIVIL THEFT (PENAL**
14 EXTRAORDINARY JEWELS OF                  **CODE, § 496);**
   BEVERLY HILLS, dba PETER           3.    **EMBEZZLEMENT;**
15 MARCO LLC,                         4.    **CIVIL CONSPIRACY TO**
                                            **COMMIT THEFT, FRAUD,**
16         Defendants/Third Party Plaintiffs,  **AND FRAUD BY**
                                            **CONCEALMENT;**
17 vs.                                5.    **CONVERSION;**
                                      6.    **BREACH OF CONTRACT;**
18 JONA S. RECHNITZ, an individual;   7.    **BREACH OF THE IMPLIED**
   RACHEL RECHNITZ, an individual;         **COVENANT OF GOOD**
19 LEVIN PRADO aka LEVON                    **FAITH AND FAIR DEALING;**
   PRADO, an individual,             8.    **ACCOUNT STATED; &**
20                                    9.    **UNETHICAL BUSINESS**
           Third Party Defendants.          **PRACTICES IN VIOLATION**
21                                          **OF CALIFORNIA BUSINESS**
                                            **& PROFESSIONS CODE §**
22                                          **17200**

23                                    **DEMAND FOR A JURY TRIAL**

24         Third Party Plaintiffs PETER VOUTSAS aka PETER MARCO aka PETER

25 MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER

26 MARCO LLC. ("Marco") hereby allege the following against Third Party

27 Defendants JONA S. RECHNITZ, RACHEL RECHNITZ, LEVIN PRADO aka

28

4/14-3:01pm

LEVON PRADO, (collectively "Third Party Defendants") as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.     Third Party Plaintiff PETER VOUTSAS aka PETER MARCO ("Marco") is an individual residing in Los Angeles County, State of California.

2.     Third Party Plaintiff PETER MARCO LLC is a limited liability company qualified to do business in California qualified to do business in California. Marco is the managing member of PM-LLC.

3.     Third Party Plaintiff PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS is a dba of Marco and PETER MARCO LLC.

4.     All Third Party Plaintiffs are collectively herein referred to as ("Marco").

5.     Third Party Defendant JONA S. RECHNITZ ("Jona")  is an individual residing in Los Angeles County, State of California. Jona is also Rachel's husband.

6.     Third Party Defendant RACHEL RECHNITZ ("Rachel")  is an individual residing in Los Angeles County, State of California. Rachel is the managing member of Jadelle LLC and the Chief Executive Officer for Jadelle Inc. Rachel is also Jona's wife.

7.     Jona and Rachel Rechnitz operate a jewelry business through two similarly named entities, Jadelle Inc. and Jadelle Jewelry and Diamonds, LLC, herein the Jadelle Entities, whose marque client is the Kardashian family. Both Jona and Rachel Rechnitz advertise political and powerful celebrity connections to create a false sense of credibility about themselves and their business, posting photos on their social media of Kylie Jenner and Kim Kardashian.

8.     The alleged frauds committed by Jona were committed with Rachel's knowledge and direction, making her personally liable. Without Rachel setting up the entities to commit the frauds, Jona lying to steal Marco's Consigned Jewelry, none of the below referenced offenses could have

1    occurred.

2    9.    On information and belief, on 4-6-2020, an involuntary chapter 7 bankruptcy

3          proceeding was filed against Jadelle Jewelry and Diamonds, LLC, a

4          Delaware limited liability company, Jadelle Jewelry, LLC, and Jadelle Inc., a

5          California corporation, USBC # 2:20-bk-13530-BR. The petitioning creditors

6          are: First International Diamond, Inc., with Trade Debt/Damages of

7          $1,976,225.00, Peter Marco, LLC, with Trade Debt/Damages of

8          $7,676,744.00 (The correct amount is $6,950,444.40) and Victor Franco

9          Noval with Trade Debt/Damages of $5,800,000.00, with total petitioners'

10         claims of $15,452,969.00.[1] See, "***Corrupt de Blasio donor Jona Rechnitz's***

11         ***alleged victims trying to force him into bankruptcy***"

12         (https://nypost.com/2020/04/07/de-blasio-donor-jona-rechnitzs-alleged-victi

13         ms-trying-to-bankrupt-him/), and "***Creditors File Petition to Put Jadelle***

14         ***Jewelry in Bankruptcy***"

15         (https://www.jckonline.com/editorial-article/jadelle-jewelry-bankruptcy/).

16   10.   Presently, Third Party Plaintiffs are currently stayed from pursuing the

17         Jadelle entities in this Court by virtue of the automatic stay of bankruptcy (11

18         U.S. Code § 362). Marco will be filing claims against the Jadelle entities

19         debtors in the United States Bankruptcy Court.

20   11.   Non-party JADELLE JEWELRY AND DIAMONDS, LLC ("Jadelle LLC,"

21         collectively with Jadelle Inc., the "Jadelle Entities") (now in an involuntary

22         bankruptcy) is a Delaware limited liability company qualified to do business

23         in California. Rachel is the managing member of Jadelle LLC.

24   12.   Non-party JADELLE JEWELRY, LLC,  ("Jadelle LLC," collectively with

25

26         [1]A true and correct copy of the involuntary chapter 7 bankruptcy proceeding *In
27    re Jadelle Jewelry and Diamonds, LLC, a Delaware limited liability company, Jadelle
      Jewelry, LLC, and Jadelle Inc., a California corporation*, USBC # 2:20-bk-13530-BR
28    is attached as Exhibit "1" and is incorporated herein by this reference.

Jadelle Inc., the "Jadelle Entities") (now in an involuntary bankruptcy) is a California limited liability company qualified to do business in California. Rachel is the managing member of Jadelle LLC.

13. Non-party JADELLE INC. ("Jadelle Inc.") (now in an involuntary bankruptcy) is a California corporation whose principle office is in Beverly Hills and whose CEO, CFO, and Secretary is Rachel.

14. Third Party Defendant LEVIN PRADO AKA LEVON PRADO ("Prado") is the agent for service of process, controller, and check signer for the Jadelle Entities.

15. The alleged frauds committed by Jona were committed with Rachel's knowledge and direction, along with the assistance of Prado, making them personally liable. Without Rachel setting upon the entities to commit the frauds, Jona's lying to steal Marco's Consigned Jewelry, and Prado signing the check, none of the below referenced offenses could have occurred.

16. Upon information and belief, Third Party Plaintiffs believe, that at all times relevant hereto Third Party Defendants, including but not limited to (the Jadelle entities) Jona, Rachel, and Prado, formed a civil conspiracy and engaged in acts in operation and furtherance of that conspiracy.

17. Third Party Plaintiffs are informed and believe, and so allege, that, at all times mentioned, each of the Third Party Defendants was the agent, servant, joint venturer, co-conspirator, and/or employee of some or all of the remaining Third Party Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship and with the full permission and consent of such Third Party Defendants. Third Party Plaintiffs are informed and believe, and so allege, that each Third Party Defendant ratified, approved, and adopted as its own some or all of the acts of each of the other Third Party Defendants. Third Party Plaintiffs are

informed and believe, and thereon allege, that each of the Third Party Defendants materially aided in some or all of the violations of the other Third Party Defendants.

18. Third Party Plaintiffs are informed and believe, and so allege, that the Third Party Defendants are the alter egos of each other and there exists, and at all relevant times herein there existed, a unity of interest and ownership and control among the Third Party Defendants, such that any individuality and separateness among them has ceased to exist, and they are alter egos of each other, and thus one or more Third Party Defendants' business is nothing more than a shell, instrumentality, or conduit through which the remaining Third Party Defendants carry on certain of their business.

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs.

20. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391(b) because Third Party Defendants reside in this district and a substantial part of the events giving rise to this action occurred here.

21. On 3-18-2020 2020, David Rovinsky Inc., filed a complaint against Marco, Case # 2:20-cv-02580 for negligence, conversion, fraud, negligent misrepresentation, civil theft (Cal. Penal Code § 496), and aiding and abetting conversion and civil theft seeking damages of $1,130,000.00.

22. Pursuant to FRCP 13(g), Third Party Plaintiffs cross-claims against Third Party Defendants, as they are responsible for the Rovinsky claim.

23. Pursuant to FRCP 19, Third Party Defendants constitute "Required Party' as they are subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

a.    (A) in that person's absence, the court cannot accord complete relief

among existing parties; or

b.     (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

    i.     (i) as a practical matter impair or impede the person's ability to protect the interest; or

    ii.    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

24.     Pursuant to FRCP 20, Third Party Defendants may be joined in this action in one action as defendants if:

a.     (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

b.     (B) any question of law or fact common to all defendants will arise in the action.

## GENERAL ALLEGATIONS

## JONA RECHNITZ

25.     On information and belief, Jona is infamously known for his involvement with a federal probe into corruption in the NYPD and the de Blasio mayoral campaign. He reportedly funneled money into the 2013 de Blasio campaign and bribed police commanders. He admitted to directing campaign donations to Mayor de Blasio in exchange for access to City Hall and showering NYPD leaders with prostitutes and other bribes to cultivate them as allies. He pleaded guilty to charges of to providing financial and personal benefits and political contributions to public officials including law enforcement officials in exchange for official action in March of 2017. Asked about Jona's

1   testimony, the mayor called Jona *"a liar and a felon*."

2   26.   On 6-6-2016, in the criminal matter entitled: *United States of America vs.*

3   *Jona Rechnitz*, 1:16-cr-00389-AKH, before the United States District Court

4   Southern District of New York, a sealed information was filed against Jona

5   for wire fraud, who then entered a guilty plea. On 3-15-2017, the information

6   against Jona was unsealed, and Jona was released on bond pursuant to release

7   conditions imposed by Judge Alvin K. Hellerstein. On 12-6-2019, Jona was

8   sentenced to 10 months of custody, and was granted release pending appeal.

9   27.   Interestingly, among the Mandatory Conditions of Jona's release was that he

10   not commit another federal, state or local crime.[2]

11   28.   Indeed, in Jona's 10-16-2019 letter to Judge Hellerstein seeking a reduced

12   sentence, Jona wrote the Court (he shared this letter with Marco):

13   *Dear Judge Hellerstein:* **I am a felon. I am a criminal**. *I am the ONLY person to blame for that.* **I have caused tremendous pain and embarrassment to my family, my religion, and to myself**. *There is no way to undo what's been done. It's permanent, and for that I am truly sorry to everyone hurt by my crimes and actions. It eats me alive each and every day. When I wake up, when I go to sleep, it is always on my mind for the past 4 years.* **My actions harmed the people of New York, The people of Correction Officers Benevolent Association, my friends, my family and my community**. *I will forever carry this burden, as I deserve to. I have read of your Honor asking at various sentencings, why do good people do bad things? In my case, not assuming I'm a good person, I can answer this question.* **Arrogance, greed, and insecurity. Arrogance. I felt I was above the law**. *At this young age in my late 20's I was busy accepting honors at dinners and board positions at prestigious institutions.* **It got to my head**. **Greed**. *I wanted to gain contacts to grow my business, to make money and gain stature in the long run*. **Insecurity**. *I wanted to gain popularity by my peers and become a big shot in my community and business circles*. [Emphasis added].

23   ---

24   **Shame on me**. *Finally, I couldn't wiggle my way out of this one. It changed my life as I knew it forever.* **As a supposed religious man, I have been a disgrace to my religion**. *The only way to fix this is to*

---

27   [2]A true and correct copy of Jona's 3-3-2020 *Judgement In a Criminal Case* in *United States of America vs. Jona Rechnitz*, 1:16-cr-00389-AKH is attached hereto as Exhibit "2" and is incorporated herein by this reference.

*make serving G-d my main focus for the rest of my life. I try to every day. I have changed as a person religiously, through prayer, my public and private behavior, and I always stop and think before I'm about to do something to see if it is something my parents, my family, and G-d would approve of.* [Emphasis added].

---

*Your Honor, there are so many examples that I am omitting **as I don't want to portray myself as the victim here**. I caused a lot of pain and harm to others through my criminal activity and don't want to detract from that. JONA RECHNITZ.* [Emphasis added]. [3]

29. On 12-19-19, as reported in the New York Times, **'Liar,' and Star Witness in City Graft Cases, Gets 10-Month Sentence**"
(https://www.nytimes.com/2019/12/19/nyregion/jona-rechnitz-corruption-sentencing.html) Jona was sentenced to five months in prison and five months of house arrest, followed by three years on parole, apologized to Judge Alvin K. Hellerstein for his criminal and immoral behavior, and asked the judge for leniency.

"***I've been a real fraud to God, a fraud to my wife and family, a fraud as an American, a fraud as a businessman***, and a fraud to the people of New York, namely, the hard-working COBA members, and I'm truly sorry for that. ***My actions have hurt many people, and I'm very sorry for that. I continue to pay for my mistakes on a daily basis***. [Emphasis added].

---

"*While living in New York City, **I wrongly felt pressure to become a bigshot**. I was working for one of the largest real restate companies in 2007, and it got to my head. I was in my late 20's, and big people in the real estate industry were dealing with me. **My ego was big, and I so badly wanted to impress these people in order to advance my career and profile**. This is where things started to spiral out of control. This is where I went so off the rails for a number of years. **I assure your Honor that these past years and the experience I've gone through has changed me. I will never act that way again**.*" [Emphasis added].

---

[3] A true and correct copy of Jona's 10-16-2019 letter to Judge Hellerstein seeking a reduced sentence is attached hereto as Exhibit "3" and is incorporated herein by this reference.

4/14-3:01pm

1       *"I've been a big hypocrite to my religion. I failed to conduct myself*
2   *properly between myself and my fellow man and between myself and*
    *my relationship with God. I have strayed. I did all of these horrible*
    *things without worrying about God or the consequences that come*
3   *with this sort of behavior*. *I cannot express to your Honor how*
    *ashamed I am for desecrating my religion.* ***I have and will continue to***
4   ***repent to God every single day. I have and continued to make***
    ***amends. Part of my efforts to make right included cooperating as a***
5   ***first step. I have a lot more work to do."*** [Emphasis added].

6   ---

7       *"This is one of several jobs that I have in the coming months* ***as I***
8   ***continue to sort out my life in a lawful path. In fact, I will spend the***
    ***rest of my life trying to make amends for my criminal behavior***. *I will*
    *try to make a better name for my family, for my religion, and for*
9   *myself.* ***I am on the path to recovery, your Honor. I am a better***
    ***family man; I am a better friend; I am a more religious person. I am***
10  ***working again to make an honest living.***" [Emphasis added].

11      *"THE COURT: What is the new business? Jadelle?*

12      *"Jadelle, yes. I really paid a hefty price for cooperating with the*
    *government for my crimes. Most recently, the New York Post put up an*
13  *article that was mentioned this morning -- your Honor may not be*
    *aware – accusing me of hobnobbing and flirting with the rich and*
14  *famous at a time when I claim I am a pariah to society. In fact, Jadelle*
    *Jewelery hosted a jewelery show to promote the brand and new*
15  *jewelry collection. The event was to make sales and increase business.*
    *One attendee was a Kim Kardashian, a client of Jadelle."*

16
17  ---

18      *"Within my community, within the media, and through*
    *self-introspection. In New York City, I am persona non grata. I am to*
19  *blame.* ***I burnt a lot of bridges and relationships and had to relocate***
    ***to California. I am so truly sorry for my behavior. I am a changed***
20  ***man***...*"

21      ***"I don't see any way to start over a third time. I'm on my second***
    ***chance***...*"*

22  ---

23      *"THE COURT: ... And yet in the life that's been depicted in this court,*
24  ***he cheapens people. He works on their insecurities and their quest***
    ***for material possessions and just does the opposite. He diminishes***
25  ***people....***"[4]

26  _____

27      [4]A true and correct copy of the relevant portions of the transcript of Jona's 12-
    19-2019 Sentencing Hearing is attached hereto as Exhibit "4" and is incorporated
28  herein by this reference.

30. On information and belief, Jona made numerous false statements to the federal sentencing judge because by 12-19-2019, Jona's frauds (below) were well under way. One of the primary reasons for documenting Jona's criminal activities with specificity and by the attachments to this Complaint is to properly expose his fraud and to preempt the "spin" that he and his family will inevitably spin to the community of his innocence and that he is unfairly being pursued. Jona's house of fraudulent cards needs to be exposed. "*The only thing necessary for the triumph of evil is for good men to do nothing*." (Edmund Burke, in a letter addressed to Thomas Mercer). Abuse thrives in a culture of silence.

**MARCO & RECHNITZ (JADELLE)**

31. From the period 8-26-2018 - 12-23-2019, Marco & Jona enjoyed a successful and trusting relationship with each other whereby they engaged in approximately 32 transactions totaling approximately **$39,369,620** in value, whereby they bought merchandise from each other and/or returned merchandise to each other. Jona introduced Marco to famous celebrities, including NBA stars Shaquille "Shaq" O'Neal, Scottie Pippen, Sam Cassell, boxing champ Floyd Mayweather, pop stars Kim Kardishian & Kris Jenner, and artist Alec Monopoly, to name a few, who Marco parlayed Jona's introductions into clients and/or to advance his social media presence by being connected to them.

32. From the period 10-29-2019 - 1-7-2020 (notwithstanding his then legal troubles in NY), Jona assured Marco that he was back from NY refocused on his business, and acquired **$6,950,444.40** of additional jewelry from Marco on consignment for the purpose of reselling them to his clients (including Plaintiff's Ring and Necklace).

33. At the time, Marco had no reason to believe that the $6,950,444.40

consignments with Rechnitz would be in jeopardy, primarily because of his successful and trusting relationship with Jona, the 32 prior transactions with him totaling approximately **$39,369,620** in value. Accordingly, Marco LLC consigned the following pieces of Consigned Jewelry to Rechnitz.

| # | Date | Vendor | Item | Cost |
|---|------|--------|------|------|
| 1 | 10-29-2019 | Luna | Yellow & White Choker Necklace / Bracelet - 69.13 ct 10stone 34.9ct 412,500 yellow /wt choker/bracelet | $150,000.00 |
| 2 | 11-11-2019 | Marco LLC | Three Butterfly Rings for Kris Jenner & the Kardashians | $22,000.00 |
| 3 | 11-19-2019 | David Rovinsky | NECKLACE - 18KYG Diamond necklace, 134.71 Fancy Yellow, internally flawless, VS2 , 49 stones. | $1,300,000.00 |
| 4 | 11-26-2019 | Marco LLC | Two Watches for Jona's client Justin Bieber | $89,000.00 |
| 5 | 11-27-2019 | David Rovinsky | RING - 43.10 Carat Fancy Yellow diamond+ 6.82 carats. | $1,650,000.00 |
| 8 | | Marco LLC | Two Diamond fashion rings for Jona's client Kim Kardashian | $5,000.00 |
| 7 | 12-2-2019 | Norman Silverman (Lazar) | BRACELET - Multi-shape 14 stone diamond bracelet, 45.47 carats, white gold. | $500,000.00 |
| 8 | 12-5-2019 | Marco LLC | Watch for Jona's father Robert &  Mixed gold & diamond pieces, for Jona's client Alec Andon Monopoly | $145,000.00 $44,200.00 $189,200.00 |
| 9 | 12-9-2019 | Marco LLC | Cufflinks for Jona's client Chaz | $7,000.00 |
| 10 | 12-12-2019 | Norman Silverman | BY215 - BRACELET - Platinum/18kwg 36.69 carats, 132 stones, 44 radiant 25.52cttw., 66 baguettes 7.57 cttw | $140,000.00 |

| 11 | 12-16-2019 | Norman Silverman | NS10052 - EARRINGS - 18kwg 2stones, 9.02 Round Brilliant, J/SI2G, GIA# 2165989714, 9.02 Round Brilliant, J/SI2, GIA# 2205611416 | $335,000.00 |
|---|---|---|---|---|
| 12 | 12-16-2019 | Lazar | LAZ52342 - RING- 20.54 carat Oval diamond ring, H/VVS2, GIA# 6204485119 | $793, 049.40 |
| 13 | 12-16-2019 | First International | EID MT 13.62 D/VVS1, # 11776564 | $1,333, 695.00 |
| 14 | 12-23-2019 | Marco LLC | Watch for Jona's client Kim Kardashian, and Two Diamond fashion rings for Jona's client Kim Kardashian | $141,500.00 |
| 15 | 1-7-2020 | Eli, Inc. | RING - 15.03 Fancy Yellow internally flawless radiant diamond mounted on a WG ring with a diamond halo. | $215,000.00 |
| 16 | | Marco LLC | Saloman (charge back credit card) | $80,000.00 |
| | | | **TOTAL** | **$6,950,444.40** |

34.   Prior to 10-29-2019, and thereafter, Rechnitz repeatedly represented to Marco that he had interested buyers for the pieces of Consigned Jewelry, and that consummation of his sales were imminent.

35.   As stated above, on 11-19-2019 and on 11-27-2019, Marco LLC consigned Rovinsky's Ring & Necklace to Rechnitz based on his representations that he had buyers for them.

| **Date** | **Vendor** | **Item** | **Cost** |
|---|---|---|---|
| 11-19-2019 | Marco LLC to Rechnitz | NECKLACE - 18KYG Diamond necklace, 134.71 Fancy Yellow, internally flawless, VS2 , 49 stones. | $1,300,000.00 |
| 11-27-2019 | Marco LLC to Rechnitz | RING - 43.10 Carat Fancy Yellow diamond+ 6.82 carats. | $1,650,000.00 |
| | | **TOTAL** | **$2,950,000.00** |

36.  The way consignments work, is that if Rechnitz's sale to his clients did not go though, then Rechnitz would return the pieces of Consigned Jewelry back to Marco, who would in turn, return the Consigned Jewelry back to Marco's vendors.

37.  Prior to 10-29-2019, and thereafter, Jona repeatedly indicated to Marco that he had buyers and sold the pieces of Consigned Jewelry (including Rovinsky's Ring & Necklace), and was awaiting receipt of payment from his clients. These representations by Jona to Marco were false when made, and Jona knew the representations were false when made. Jona made these representation with the intention of causing Marco to rely on them. Marco indeed relied on Jona's representations to Marco's detriment.

38.  Yet, no sooner than within weeks of being sentenced in the Southern District of New York, Jona, a convicted felon, was apparently so "distraught" and repentant about his criminal past, that instead of reselling Marco' Consigned Jewelry  (including Rovinsky's Ring & Necklace) and repaying Marco, Jona swindled Marco in a large scale fraud by absconding with the  pieces of Consigned Jewelry, and either pawned them off, or used them as collateral for loans to various questionable sources, and has not repaid Marco  the $6,950,444.40. In reality, Jona liquidated Marco' Consigned Jewelry (including Rovinsky's Ring & Necklace). Marco subsequently discovered from colleagues that Jona liquidated all  pieces of Marco LLC's Consigned Jewelry (including Rovinsky's Ring & Necklace).

39.  On information and belief, at this same time, Jona defrauded other diamond dealers and insurance companies in Southern California, including but not limited to: Sotheby's, Leon Landver, Ben Adhoot, and Yehuda Gamzo, Oved Anter, Moti Klein, and Julius Klein. The amount of losses to these various parties is alleged to be over $15,000,000.00.

40.     But even after Marco discovered Rechnitz's recent frauds from colleagues in the jewelry industry, Rechnitz continued to 'play' Marco and deceive him with further false and misleading stories:

On 1-21-20, at 10:22:38AM, Rechnitz texted Marco of a 'major issue' a 'legal situation' a 'huge crisis' and a 'disaster' that forced him to not consummate his deals with Marco:

> The stone of Oved's is coming back tomorrow with all of the other stones. Client isn't taking anythinf. **I have a major issue now they didn't know about my legal situation and freaked out** they also want to reverse previous transactions of mine. He can't be associated with me. A man of his status. **I'm dealing with a huge crisis now and my Dad is at bank trying to sort out issue for me in regards to all this. I stopped the wire because they may be sending the necklace and ring back. I need a few hours to deal with them with my lawyer. This is a disaster. I am trying to fix this** but won't know for a few hours. I also have Moty Klein in town at the same time while this is all going on which is extra stress as he can't hear any of this. Give me a few hours please and I hope to have better news. [Emphasis Added].

41.     On 1-21-20, at 10:23:29AM, Rechnitz texted Marco a vague admission of guilt and liability:

> **I understand if you never want to deal with me again or see my fave ever again I am so sorry.** [Emphasis Added].

42.     On 1-21-20, 10:24:09AM, Rechnitz texted Marco that he is trying to fix his 'major issue' a 'legal situation' a 'huge crisis' and 'disaster:' :

> **You need to let me try and resolve this now.** [Emphasis Added]

43.     On 1-21-20, at 10:33:53AM,  Rechnitz texted Marco his shame and depression that his recent frauds are causing Marco:

> **You don't even need to type back anything to me I'm depressed. Upset. This all happened Yesterday evening.** I'm dealing with it. Standby [Emphasis Added].

44.     In addition, and to make matters worse, on 1-5-2020, Jona issued Marco a worthless check that he had no intention of honoring, # 8630 for $2,950,000.00 post-dated to 1-5-2020 (for the two Rovinsky pieces he had on consignment from Marco).

| Check # | Date | To | $ |
|---------|------|-----|---|
| 8630 | 1-5-2020 | Peter Marco | $2,950,000.00 |

45.   Even had Marco tried to deposit Rechnitz's $2,950,000.00 post-dated check, he could not because Rechnitz had instructed him to rip it up earlier based on his promises to Marco that he would wire the funds to Marco.

46.   In addition, and as an aside, on 1-17-2020 Jona issued two worthless checks to another one of his defrauded creditors First International totaling $2,122,760.00 that he had no intention of honoring: (1) Check # 2200 for $922,760.00; and (2) Check # 2201 for $1,200,000.00.  Both checks were NSF at the time of tender, in violation of the California Civil Code § 1719 and the California Penal Code §476a.

47.   In addition, and to make matters worse, on 1-14-2020 Jona issued another defraused creditor Franco Noval a worthless check that he had no intention of honoring, check # 8817 for $2,500,000.00, and then on 1-16-2020 check # 8820 for $1,300,000.00, and then on 1-22-2020 check # 8823 for $4,500,000.00  also in violation of the California Civil Code § 1719 and the California Penal Code §476a.

| Check # | Date | To | $ |
|---------|------|-----|---|
| 8630 | 1-5-2020 | Peter Marco | $2,950,000.00 |
| 8817 | 1-14-2020 | Franco Noval | $2,500,000.00 |
| 8820 | 1-16-2020 | Franco Noval | $1,300,000.00 |
| 2200 | 1-17-2020 | First International | $922,760.00 |
| 2201 | 1-17-2020 | First International | $1,200,000.00 |
| 8823 | 1-22-2020 | Franco Noval | $4,500,000.00 |
| Total NSF Checks issued by Jona | | | **$13,372,760.00** |

48.   Based upon information and belief, Third Party Defendant Prado, acting in concert with Jona, and to further his scheme, signed Marco's post-dated

check and had his girlfriend or another representative at Wells Fargo Bank issue a stop payment on the check, that Marco was going to deposit.

49.  During this entire time, Jona repeatedly lied to Marco that the deals with his clients were consummated. Jona lulled, and attempted to fabricate one excuse after another to delay paying Marco, and hid the truth from them through stonewalling and lies. Repeated demands have been made to Jona to return Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace). Instead, Jona, took numerous steps to lull Marco into a false sense of security to buy more time, and to keep this matter secret via phone calls and WhatsApp texts.

50.  On 1-22-2020 at 5:12:52, once Jona's most recent frauds in stealing and liquidating Marco' Consigned Jewelry (including Rovinsky's Ring & Necklace) and of other victims, hit the streets, Jona texted Marco begging him to stay quiet and not report him, lulling him to buy time:

"***I'm at my cousin lawyer and cousin*** *still getting everything sorted out* ***so no noise and no issue*** *I'll see you later still*." [Emphasis added].

51.  On 1-27-20 at 3:47:58, Jona repeated his request that Marco not report him for his fraud:

"*Please confirm the following: They will wait until end of day tomorrow* ***and keep it quiet****. Need to know ASAP*"

and then at 4:03:11:

"*Need to know NOW*.".

52.  On 1-29-20 at 7:55:07, Jona repeated his request that Marco not report him for his fraud:

"*All I can say is I'm handling things and* ***don't discuss anything with anyone. No updates to people who call you*** *unless it's oved or lazar*." [Emphasis added].

53.  On 1-30-2020 at 11:35am, Jona introduced Oved Anter of First International Diamonds to an attorney at Williams & Cohen about the Rechnitz cousin's

proposed bailout:

*"Oved meet Reuven. Reuven oved is a vendor I owe and used his goods for loans. **He has been the single biggest force in helping keep people calm**. He needs to hear from you in order to continue please. Thank you."* [Emphasis added].

54.   On 2-4-2020, 12:30:22, Jona repeated his request that Marco not report him to news outlets for his fraud:

*"Pls confirm you didn't hear back **or communicate to the paper**."* [Emphasis added].

55.   On 2-4-2020 at 3:36:55, Jona texted Marco of his fear of being reported to the authorities for his fraud:

*"Is david dealing through you because **I heard he wants to report me** so **confirm that he is holding off** and you'll wait to hear from my lawyers"*

and then at 4:49:01 texted Marco:

*"**Make sure you ignore the reporter**. Moty is too. **She can't print without a comment**."* [Emphasis added].

56.   That night, on 2-4-2020 at 9:40pm, Jona falsely enlisted attorneys to pretend a bailout was coming from family members to buy himself more time. Attorneys from Williams & Cohen wrote Marco about the purported bailout:

*"We write with an update on Jona Rechnitz. **A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities**. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any, equity, the family member has in it. If you are represented by counsel, please let us know and provide your counsel's contact information. Our client's desire is to resolve this matter amicably."*

57.   Meanwhile, on 2-10-2020, as reported in the NY Post: ***"Ex-de Blasio crony used Kardashian ties for fraud scheme, lawsuit claims,"*** (https://nypost.com/2020/02/09/ex-de-blasio-crony-used-kardashian-ties-for-fraud-scheme-lawsuit-claims/), and as reported in the 3-6-2020 article in JCK: ***"The Troubling Case of Jona Rechnitz"*** (https://www.jckonline.com/editorial-article/the-troubling-case-jona-rechnitz

/), and as reported in the 3-10-2020 NY Daily News article "***Corrupt Mayor de Blasio donor Jona Rechnitz faces new FBI probe in L.A.: court papers***" (https://www.nydailynews.com/new-york/ny-rechnitz-los-angeles-probe-202 00310-nrzbb6263nga3hkcyob2lw46wq-story.html), one of Jona's recently defrauded victims filed a lawsuit entitled: *Victor Franco Norval vs Jona S. Rechnitz, Rachel Rechnitz, Jadelle Inc., a California Corporation; Jadelle Jewelry and Diamonds, LLC, a Delaware Limited Liability Company; Levin Prado Aka Levon Prado, an Xiomara Cortez*, LASC # 20SMCV00216, for (1) Fraud (2) Civil Theft (Penal Code, § 496), (3) Breach of Contract, (4) Conspiracy to Commit Theft, Fraud, and Fraud by Concealment, (5) Appointment of Receiver seeking damages of $7,000,000.00.

58. Interestingly, on 2-22-2020, Jona's father Robert Rechnitz reiterated the proposed bailout by Jona's cousin to Marco and represented that Marco would be paid "*first in line*" by Jona's cousin.

59. And then on 2-20-2020, as reported in the NY Post "***De Blasio donor Jona Rechnitz accused of $1M scam in California***," (https://nypost.com/2020/02/28/de-blasio-donor-jona-rechnitz-accused-of-1m -scam-in-california/) another one of Jona's defrauded victims filed a lawsuit entitled: *Israel Sam Gorodistian vs. Jadelle Jewelry and Diamonds, LLC, a Delaware Limited Liability Company; Jadelle Inc., a California Corporation; Jona Rechnitz, Rachel Rechnitz, Robert Rechnitz*, LASC # 20STCV07425, for 1. Conversion; 2. Civil Theft (Pen. Code § 496); 3. Fraud – False Promise; 4. Negligent Misrepresentation; 5. Civil Conspiracy to Defraud; 6. Breach of Oral Contract (2 Counts); 7. Breach of Implied-in-fact Contract (2 Counts); 8. Money Lent; 9. Account Stated; and 10. Breach of Written Guaranty seeking damages of $1,659,333.33.

60. Jona is no stranger to fraud. Unbeknownst to Marco, on 6-3-2019, Jona was

sued in the United States Bankruptcy Court Southern District of New York (Manhattan), Adv. Case No, # 19-01236-jlg by Kenneth P. Silverman, Esq., the Chapter 7 Trustee of the Jointly Administered Estates of National Events Holdings, LLC, Chapter 7 Case No.: 17-11556 (JLG) on 35 counts of receiving fraudulent conveyances through an elaborate Ponzi scheme, pursuant to New York Debtor and Creditor Law §276, and (b) pursuant to 11 U.S.C. §§550(a) and 551, 11 U.S.C. §548(a)(1)(A), and (b), 11 U.S.C. §548(a)(1)(B), and (b),  totaling $45,000,000.00.

## JONA AND ROBERT RECHNITZ

61.  On information and belief, Jona personally ingratiated himself to Marco, as an Orthodox Jewish diamond dealer, leading Marco to believe that Jona was more trustworthy than others because of his Orthodox faith and belief in Jewish law (and common Orthodox Jewish friends in and out of the Diamond industry), which requires honesty and maximum integrity. These types of internal community relationships such as the Orthodox Jewish diamond community create a vulnerability for affinity fraud to be perpetuated. Jona targeted Marco exploiting his standing in, and knowledge of, the customs and practices of this community to further his fraudulent scheme. This type of illegal activity is commonly referred to as "affinity fraud," and refers to scams that prey upon members of identifiable groups, such as religious or ethnic communities, the elderly, or professional groups. The perpetrators of affinity fraud scams, like Jona, frequently are, or pretend to be, members of the group, and they exploit the trust and friendship that exist in groups of people who have something in common. The conventional thinking is that the religious man doing business with you is unlikely to ruthlessly rip you off.

62.  On information and belief, Jona and his father Robert Rechnitz's ("Robert")

4/14-3:01pm

-19-

*modus operandi* is as follows: Robert would meet Marco in Jona's office and at his office, endearing Marco with old school charm warmth & friendship to place him at ease, while Jona would rip him off in broad daylight and steal from him. Then, once Jona's fraud was discovered by his victims (including Marco), Robert was there officially trying to clean up Jona's messes, further lulling the defrauded creditors (including Marco), with promises of bailouts, putting his friendships with Jona's victims on the line so-to-speak, in the unspoken understanding that an action against Jona would be tantamount to an action against Robert. The two acted in tandem like a tag-team to further defraud Marco and other victims.

63.   On the one hand, it is laudable for a loving parent to come to the aid of their child in distress, no matter what. On the other hand, in this case, Marco believes that Robert's involvement was too interwoven with Jona's criminal actions to be innocent or laudable. For example, throughout their relationship, Jona constantly brought his father Robert into the conversations and transactions portraying him to Marco as the moral authority and the one overseeing and coaching Jona's affairs, who's presence conferred legitimacy on Jona's wild bragging and transactions, who appeared at the epicenter whenever Jona's frauds were discovered by his victims (including Marco).

64.   On 8-8-19, at 15:24:03, Jona texted Anter about Jona's father Robert:

***My Dad is a nice guy doesn't talk when ppl owe him ?? lee. Yossi. But keeps getting mad I talk to you too much***.   [Emphasis added]

65.   On 10-28-19 at 8:43:40, Jona texted Marco citing his father as a bailout source for him:

"*Issue! My account has a charge back from that client! Money was withdrawn from my account not enough funds for your wire this morning Bc sent after cutoff Friday. Will resolve next few hours and **get money from my Dad today**. Bear with me until later in the day. I'm sorry. Unforseen.*" [Emphasis added].

66.   On 11-5-19 at 9:22:25, Jona texted Marco seeking a bailout for his father:

> "*You know me by now if I would ever need anything from a friend YOU this is a level 10. I committed to something by tonight **that is not reversible for my Dad** and said it is done. Please tell me you got me and let me breathe here. Thx*"

and at 11-5-19 at 10:12:57:

> "*I am sorry to pressure you and now I'm just letting you know for me this is super urgent And **you are the only person I am comfortable to discuss this with. Obviously it goes without saying I will go all the way for you and I do not need to even say that here but I feel like saying it to remind you I'm always in your corner** either way I hope we have good news today because I'm out of options thank you,*" [Emphasis added].

and at 11-5-19 at 11:44:55 endeared himself to Marco as his 'brother:'

> "***Brother** pls help me here*" and finally, at 11-5-19 at 1:58:26: "***My Dad** is good with 70.*" [Emphasis added].

67.   On 1-21-20 at 10:22:38, after Jona's recent frauds to Marco was revealed (by other sources in the community), Jona cited his father as the one trying to solve Jona's frauds, Jona texted Marco:

> "*The stone of Oved's is coming back tomorrow with all of the other stones. Client isn't taking anythinf. I have a major issue now they didn't know about my legal situation and freaked out they also want to reverse previous transactions of mine. He can't be associated with me. A man of his status. **I'm dealing with a huge crisis now and my Dad is at bank trying to sort out issue for me in regards to all this**. I stopped the wire because they may be sending the necklace and ring back. I need a few hours to deal with them with my lawyer. This is a disaster. I am trying to fix this but won't know for a few hours. I also have Moty Klein in town at the same time while this is all going on which is extra stress as he can't hear any of this. Give me a few hours please and I hope to have better news.*" [Emphasis added].

68.   On 1-26-20 at 12:18:08 PM, Jona texted Marco a report of his father's attempts to rectify his most recent frauds to his vendors:

> "*And lazar tried to control things a little too much from my cousins money. **My Dad very involved** joe. Just wait...Promise you*" and at 1-26-20 at 12:18:15: "**now*." [Emphasis added].

69.   For now, Robert is not a named party, but Marco reserves the right to name him as a third party defendant once facts become known as to the full extent of his involvement with Jona's most recent frauds. Parenthetically, Robert was recently placed into an involuntary bankruptcy/receivership by his

creditor ITOR 116 SF LLC in Israel, Case # 27255-09-18 for debts in excess of $2,600,000.00 shekel ($9,500,000.00 dollars) ("***Receiving order against businessman Robert Rechnitz, who is close to Netanyahu***" http://www.calcalist.co.il//articles/0,7340,L-3803076,00.html) but the Israeli bankruptcy does not stay Marco's claims against him in this country.

70.     On 3-9-2020, Marco' litigation counsel Baruch C. Cohen ("Cohen") extended a professional courtesy to Robert to inform him that Cohen had been retained by Marco to sue Jona, inquiring (actually, hoping) that Rechnitz's cousin's bailout was imminent, to avoid the litigation. Further, as Robert personally guaranteed the debts to Oved Anter and First International of up to $12,000,000.00, that Cohen would reluctantly have to sue Robert as well. Cohen told Robert that he personally preferred ***not*** to have to sue Robert, as both pray at the same synagogue in Hancock Park and have known each other for years. Cohen acknowledged that Robert attempted to help Cohen in the past and was gracious in Cohen's time of need, as Cohen was to Robert's. Cohen acknowledged that Jona introduced Cohen to Marco. Cohen made it clear that he took no joy in prosecuting these cases on behalf of Marco and Anter against Jona and Robert, as Cohen agonized over it for over a month ever since Marco was being pursued by Rovinsky because of Jona's actions.  But, Cohen explained, that Jona placed his clients in a terrible predicament exposing them to millions of dollars of damages from Rovinsky and others, and the scope of Jona's perfidy and betrayal was so breathtaking, overwhelming and devastating, that Marco and Anter absolutely insisted that Cohen protect their interests. While Cohen did not expect Robert to be pleased with this decision, as Marco's attorney, Cohen owed Marco a 100% duty and must represent his client's interests.

71.     Further, in the matter of *Oved Anter & First International Diamonds*

("Anter") vs Rechnitz et al, on 6-25-2019 Robert personally guaranteed up to $12,000,000.00 of Jona's debt to Anter. Robert's 6-25-2019 Personal Guaranty to Anter stated that Robert stood behind Jona and all his dealing. It reads as follows:

*Dear Oved / First International Diamonds Inc., I very much enjoyed speaking to you by phone. Jona has shared some of your conversations with me. Thank you for being a confidant for Jona. He mentioned to me about how your Father had a special bond and relationship with you. I was also privileged to have a close relationship with my Father, as did Jona. I'm sure you will find much success in your dealings together. I completely understand your desire to know that Jona's family is aware of his dealings with you and stands behind him.* ***I am pleased to confirm that I stand behind Jona and all his dealing with you****. You have indicated that you have extended memos up to the amount of $12,000,000.00. If for some reason you need to callback your credit line, all merchandise will be returned to you, and any cash deficiencies will be repaid by me.* *. May your confidence in Jona and your extension of credit be profitable for both of you.* BOBBY RECHNITZ / CC: JONA RECHNITZ [Emphasis added]

72.     Jona personally handed Robert's 6-25-2019 Personal Guaranty letter to Anter several days after Robert orally promised to personally guaranty Jona's debts to Anter, while all three met at Pat's Kosher Restaurant on Pico Boulevard.

73.     On 6-25-19 at 16:22:18, Jona Whatsapp texted Oved - confirming Robert's Personal Guaranty:

*"It's good to know **I'm worth 12mm to my Dad** not 10mm lol."*

[Emphasis added].

74.     On 7-3-19 at 21:58:14 Jona Whatsapp texted Oved again, confirming the UCC Financing Statement and the Personal Guaranties to Anter:

*"OK also I filled out the application so Monday let's go through it I am away until Monday I will come see you Monday I will take care of that and I will get the application filled out with you. No worries.* ***In meantime you have UCC. My Dad guarantee in writing. My guarantee. My wife. Everything and the legal document that's owns me. I want you to feel protected and will make it happen****."* [Emphasis added].

75.     On 3-9-2020 Cohen notified Robert that he would have to sue Robert on the personal guarantee to Anter as well.

76.    3-10-2020 was the Jewish holiday of Purim, and Robert approached Cohen in synagogue that night acknowledging the professional courtesy extended to him, and asked to speak to Cohen under the guise and pretext of wanting to talk about "nothing legal, just as friends." Cohen reiterated the above, and Robert repeatedly denied personally guaranteeing the debts to Anter.

77.    Robert's denial that he personally guaranteeing the debts to Anter was indeed curious, as Cohen had a copy of Robert's 6-25-2019 Personal Guaranty in his file. So, what was Cohen to make of Robert's denials? Was he involved with Jona's frauds, or was he not?

78.    If indeed, Robert did not sign the Personal Guaranty to Anter - as he insisted to Cohen orally - and giving Robert the benefit of the doubt - then that would mean that Jona forged his own father's name to Robert's 6-25-2019 Personal Guaranty to Anter, and shamelessly exploited Anter's trust and his father's name, using a doctored document to continue to commit crimes while out on bail.

79.    On 3-10-2020 at approximately 10:00pm that night, Jona resumed and resorted to his criminal behavior and called Marco, livid that Cohen is "going after his family and his father" threatening him and Anter that unless he receives a letter from Marco and Anter that they will be firing Cohen as their attorney, that Jona will engage in an all out war, "destroy" "rip apart" and "mess and fuck Cohen good" with the State Bar (claiming to have texts that Cohen was his lawyer creating a conflict of interest), and report Anter to the IRS for criminal tax evasion. Jona repeated his bogus pledge that his cousin is still working on bailing him out to make Marco whole within one week, but that it was conditional on them firing Cohen. Jona brazenly assured Marco that his role as one of the single most important and prolific white collar cooperating witnesses in the recent history of the Southern District of

New York, with his working closely with the FBI as an informant, along with the fact that he only received 10 months custody time with 5 months house arrest, that since the FBI needs him as an informant so badly in the New York case that they would never do anything to him no matter what he did, making him immune from any further prosecution (mistakenly believing that this provides him some kind of ill-conceived immunity from committing criminal acts of fraud and extortion in California [ie., Penal Code 518]). Tragically, Jona learned nothing from his life of crime and resorted to his old tricks of extortion and blackmail, and if anything, has become emboldened by it.

80.  In said conversation, Jona immediately conferenced-in his father Robert into the late night conversation (who was curiously readily available), under the guise and pretext of wanting to talk about "nothing legal, just as friends."

81.  Obviously, whatever good will Cohen was prepared to extend to Robert disintegrated by Jona's extortion call and Robert's convenient joinder late that night.

///
///
///
///
///
///
///
///
///
///
///
///

82. After Jona finished threatening Marco, Cohen and Anter, Jona texted Marco at 10:55pm a veiled confirmation of the conversation:



83.  As to Jona's threats to report Cohen to the State Bar, Jona merely introduced Cohen to Peter Marco and nothing more. Jona was never Cohen's client, and Cohen was never Jona's lawyer, as evidenced by Jona's texts to Cohen.





84.    Obviously, by this lawsuit, Cohen is not resigning and will remain counsel of record for both of his clients, and he and Marco will not be scared away or intimidated by Jona's criminal threats of extortion.

85.    As reported in the 2-12-2020 NY Post article "***DeBlasio Donor Jona Rechnitz Used Kardashian Ties to Further His Schemes***" (http://thejewishvoice.com/2020/02/deblasio-donor-jona-rechnitz-used-kardashian-ties-to-further-his-schemes/) Jona Rechnitz's dark dealings is eerily similar of the character Howard Ratner, played by actor Adam Sandler, in the 2019 film "Uncut Gems," of a charismatic debt-ridden gambling addict, a wheeling, dealing, greedy Jewish diamond dealer, scheming, ripping people off, swearing and making bold plays to try and advance his own life, clearly headed toward self-destruction.

## FIRST CAUSE OF ACTION
## INTENTIONAL MISREPRESENTATION & FRAUD
*(On behalf of Third Party Plaintiffs as to Jona Rechnitz, Rachel Rechnitz, Levin Prado)*

86.    Third Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

87.    The foregoing representations made by Jona, and the Third Party Defendants were false when they were made, and Third Party Defendants knew the representations to be false. Jona and the Third Party Defendants did not intend to comply with the promises and representations when they were made.

88.    The foregoing representations were made by Jona and the Third Party Defendants with the intent to deceive Marco and with knowledge that Marco would rely on them.

89.    Third Party Plaintiffs detrimentally and reasonably relied on the foregoing

1   representations.

2   90.   Third Party Plaintiffs have been damaged by Third Party Defendants' false,

3   intentional, and fraudulent representations and concealing of material

4   information, as alleged above, in an amount to be proven at trial, but at least

5   $6,950,444.40, which represents the consigned jewelry Jona lied to steal as

6   well as tendered worthless instruments for.

7   91.   Third Party Plaintiffs further request the imposition of a constructive trust

8   against all Third Party Defendants who are in possession of the Consigned

9   Jewelry set forth in the Consignment Memos and for an order and judgment

10   that they hold the consigned jewelry and/or all proceeds therefrom as

11   constructive trustees for the benefit of Marco.

12   92.   In doing the things herein alleged, Jona and the Third Party Defendants acted

13   willfully, maliciously, and with the intent to cause injury and harm to Marco.

14   All Third Party Defendants are therefore guilty of malice and/or fraud in

15   conscious disregard of Marco' rights, thereby warranting an assessment of

16   punitive and exemplary damages in an amount appropriate to punish Third

17   Party Defendants, and each of them, and deter them and others from

18   engaging in similar misconduct.

19   **SECOND CAUSE OF ACTION**

20   **CIVIL THEFT (Cal. Penal Code § 496)**

21   *(On behalf of Third Party Plaintiff as to Jona Rechnitz, Rachel Rechnitz)*

22   93.   Third Party Plaintiffs hereby incorporate by reference as though fully set

23   forth in full herein, all preceding Paragraphs of this Complaint.

24   94.   As a result of Jona and Third Party Defendants' conduct as alleged herein,

25   they have violated California Penal Code, §496 that provides: "[e]very

26   person who buys or receives any property that has been stolen or that has

27   been obtained in any manner constituting theft or extortion, knowing the

28

property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170. However, if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year, if such person has no prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290.

95.     Jona and Third Party Defendants have obtained and received property from Marco, the $6,950,444.40 of Consigned Jewelry, in a manner constituting "theft," as that term is defined in California Penal Code, § 484(a) that provides: "[e]very person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

96.     Third Party Defendants' conduct constitutes theft, as that term is defined in California Penal Code § 484(a).

97.     As a direct and proximate result of Third Party Defendants' civil theft, Marco has been damaged in an amount to be proven at trial, but at least

$6,950,444.40.

98.   Pursuant to California Penal Code, § 496(c), Marco is also entitled to recover treble damages from Third Party Defendants.

99.   Pursuant to California Penal Code, § 496(c), Marco is also entitled to recover attorneys' fees from Third Party Defendants.

100.   Marco further requests the imposition of a constructive trust against all Third Party Defendants who are in possession of the consigned jewelry set forth in the Consignment Memos and for an order and judgment that they hold the consigned jewelry and/or all proceeds therefrom as constructive trustees for the benefit of Marco.

101.   In doing the things herein alleged, Third Party Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Marco. Third Party Defendants are therefore guilty of malice and/or fraud in conscious disregard of Marco's rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Third Party Defendants, and each of them, and deter them and others from engaging in similar misconduct.

**THIRD CAUSE OF ACTION**

**EMBEZZLEMENT**

(*On behalf of Third Party Plaintiffs as to Jona Rechnitz*)

102.   Third Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

103.   Based on the foregoing, Jona, without Marco' knowledge or consent, instead of reselling Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace) and repaying Marco, Jona swindled Marco in a large scale fraud by absconding with Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace), and either pawned them off, or used them as collateral for loans

to various questionable sources, and has not repaid Marco the $6,950,444.40. In reality, Jona liquidated Marco' Consigned Jewelry Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace) , and refused to tell Marco how he liquidated the Consigned Jewelry or how he spent the proceeds. Marco asked Jona to disclose the location of the Consigned Jewelry and to provide a tracing and accounting of the proceeds, and Jona refused to do so.

104.   In engaging in the conduct described above, Jona acted despicably, willfully, wantonly, oppressively, fraudulently, or in conscious disregard of Marco's rights, within the meaning of Civil Code § 3924(c), so as to entitle Marco to punitive damages in an amount sufficient to punish or make an example of Jona.

105.   As a result of Jona's actions, Marco have been damaged in an amount according to proof, plus interest, costs, and attorneys' fees as permitted by law.

## FOURTH CAUSE OF ACTION

## CIVIL CONSPIRACY TO COMMIT THEFT, FRAUD, AND FRAUD BY CONCEALMENT

*(On behalf of Third Party Plaintiffs as to Jona Rechnitz, Rachel Rechnitz, Levin Prado)*

106.   Third Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

107.   Jona, Rachel and Prado conspired to make illegal agreements to defraud Marco of the consigned jewelry and to commit civil theft.

108.   Jona, with his wife Rachel, have set up companies to solicit consigned jewelry based upon the false premise they have clients to sell them to. Meanwhile they took Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace), swindled Marco in a large scale fraud by absconding with

the  pieces of jewelry, and either pawned them off, or used them as collateral for loans to various questionable sources, and has not repaid Marco the **$6,950,444.40**. In reality, Jona liquidated Marco's consigned jewelry, and refused to tell Marco how he liquidated the consigned jewelry or how he spent the proceeds. Marco asked Jona to disclose the location of the consigned jewelry and to provide a tracing and accounting of the proceeds, and Jona refused to do so.

109.   Jona deceived Marco to consign them the $6,950,444.40 in jewelry, with false promises of consummated sales and with false promises of repayment.

110.   Third Party Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto, Third Party Defendants formed a civil conspiracy and engaged in the foregoing acts in operation and furtherance of that conspiracy.

111.   Third Party Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto, Third Party Defendants committed the foregoing misrepresentations, wrongs, theft, and fraud for the purpose and in furtherance of a fraudulent conspiracy and scheme to defraud Marco, as alleged herein.

112.   As a result of the civil conspiracy, each and every Defendant is liable and responsible for the acts of the other Third Party Defendants in furtherance of the conspiracy and all damages resulting therefrom.

113.   As a result of the civil conspiracy, Third Party Defendants are jointly and severally liable for $6,950,444.40.

114.   The egregious nature of the Third Party Defendants/conspirators' collective conduct is malicious, wanton, and willful. Marco need to be awarded punitive damages plus a judgment of joint and several liability.

///

///

# FIFTH CAUSE OF ACTION

## CONVERSION

*(On behalf of Third Party Plaintiffs as to Jona Rechnitz, Rachel Rechnitz)*

115.   Third Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

116.   At all times relevant, by virtue of their Consignment Memos, Marco owned, possessed, or had a right to receive and possess their $6,950,444.40 in Consigned Jewelry.

117.   Third Party Plaintiffs recently discovered that the Third Party Defendants have intentionally and substantially interfered with Marco's property by means of false and fraudulent activity, including, but not limited to, misappropriating Marco' Consigned Jewelry (including Rovinsky's Ring & Necklace)  for their own personal use and other theft according to proof. The Third Party Defendants engaged in this conduct with the intention of wrongfully benefitting themselves at the expense of Marco.

118.   Third Party Defendants sold, encumbered, or otherwise transferred Marco's Consigned Jewelry (including Rovinsky's Ring & Necklace) to third parties of questionable reputation, subject to Marco's Consignment Memos without the knowledge of Marco. These transferees took possession of Marco' Consigned Jewelry (including Rovinsky's Ring & Necklace). Once Marco discovers the identities of these fraudulent transferees, Marco will amend this Complaint to add them as Third Party Defendants to a claim and delivery (replevin) cause of action.

119.   Third Party Plaintiffs did not consent to said activities.

120.   As a direct and proximate result of the foregoing acts, Third Party Defendants intended to cause, and have in fact caused, actual harm to Marco, and are liable to Marco for damages in an amount to be proven at trial, but no

1    less than $6,950,444.40.

2    121.   During, and as a further proximate result of, the Third Party Defendants'

3    wrongful possession and detention of Marco's Consigned Jewelry, Marco has

4    suffered the loss of the deterioration of their property and resulting business

5    losses in an amount to be proven at trial.

6    122.   Furthermore, Marco is informed and believe, and so allege, that the Third

7    Party Defendants' aforementioned acts were taken with malice, fraud, and

8    oppression and in conscious disregard for Marco's rights, and were done

9    willfully and with the intent to cause injury to Marco. The Third Party

10   Defendants were aware at all times that Marco was owed either return of the

11   consigned goods or repayment of $6,950,444.40 and intended to

12   surreptitiously misappropriate Marco's consigned goods and funds for their

13   own personal use, seeking only to intentionally and maliciously deceive

14   Marco. Accordingly, Marco is entitled to an award of exemplary and punitive

15   damages against the Third Party Defendants.

16                          **SIXTH CAUSE OF ACTION**

17                          **BREACH OF CONTRACT**

18        (*On behalf of Third Party Plaintiffs as to Jona Rechnitz, Rachel Rechnitz*)

19   123.   Third Party Plaintiffs hereby incorporate by reference as though fully set

20   forth in full herein, all preceding Paragraphs of this Complaint.

21   124.   Third Party Plaintiffs, (the Jadelle Parties), Jona and Rachel are parties to

22   binding contracts, the Consignment Memos.

23   125.   At all times, Marco performed all conditions, covenants, and promises

24   required in accordance with the terms of the Consignment Memos,, except as

25   they have been prevented or excused from performing by the acts and/or

26   omissions of (the Jadelle Parties), Jona & Rachel.

27   126.   Under the 10-29-2019 Consignment Memo to Luna, (the Jadelle Parties) and

28

Jona & Rachel were to either return the Yellow & White Choker Necklace / Bracelet to Third Party Plaintiffs or pay them $150,000.00.

127. Under the 12-2-2019 Consignment Memo to Norman Silverman, (the Jadelle Parties) and Jona & Rachel were to either return the BRACELET - Multi-shape 14 stone diamond bracelet, 45.47 carats, white gold to Third Party Plaintiffs or pay them $500,000.00.

128. Under the 12-12-2019 Consignment Memo to Norman Silverman, (the Jadelle Parties) and Jona & Rachel were to either return the BY215 - BRACELET - Platinum/18kwg 36.69 carats, 132 stones, 44 radiant 25.52cttw., 66 baguettes 7.57 cttw to Third Party Plaintiffs or pay them $140,000.00.

129. Under the 12-16-2019 Consignment Memo to Norman Silverman, (the Jadelle Parties) and Jona & Rachel were to either return the NS10052 - EARRINGS - 18kwg 2stones, 9.02 Round Brilliant, J/Sl2G, GIA# 2165989714, 9.02 Round Brilliant, J/Sl2, GIA# 2205611416 to Third Party Plaintiffs or pay them $335,000.00.

130. Under the 12-16-2019 Consignment Memo to Lazar, (the Jadelle Parties) and Jona & Rachel were to either return the LAZ52342 - RING- 20.54 carat Oval diamond ring, H/VVS2, GIA# 6204485119 to Third Party Plaintiffs or pay them $793, 049.40.

131. Under the 12-16-2019 Consignment Memo to First International, (the Jadelle Parties) and Jona & Rachel were to either return the EID MT 13.62 D/VVS1, # 11776564 to Third Party Plaintiffs or pay them $1,333, 695.00.

132. Under the 11-19-2019 Consignment Memo, the Jadelle Parties) and Jona & Rachel were to either return the NECKLACE - 18KYG Diamond necklace, 134.71 Fancy Yellow, internally flawless, VS2 , 49 stones to Third Party Plaintiffs or pay them $1,300,000.00.

133. Under the 11-27-2019 Consignment Memo to David Rovinsky, (the Jadelle Parties) and Jona & Rachel were to either return the RING - 43.10 Carat Fancy Yellow diamond+ 6.82 carats to Third Party Plaintiffs or pay them $1,650,000.00.

134. Under the 1-7-2020 Consignment Memo to Eli, Inc., (the Jadelle Parties) and Jona & Rachel were to either return the RING - 15.03 Fancy Yellow internally flawless radiant diamond mounted on a WG ring with a diamond halo to Third Party Plaintiffs or pay them $215,000.00.

135. (The Jadelle Parties) and Jona & Rachel breached the Consignment Memos by failing to return the consigned jewelry and make full repayment of the $6,950,444.40. As of the date of filing of this complaint, the full amount of Third Party Plaintiffs' debt in the amount $6,950,444.40 is past due and owing. In addition, accrued and ongoing interest, remains due, owing, and unpaid from (the Jadelle Parties) and Jona & Rachel to Third Party Plaintiffs.

136. As a direct and proximate result of the foregoing acts, Third Party Plaintiffs have been damaged in an amount to be proven at trial, together with interest at the maximum legal rate according to proof. (The Jadelle Parties) and Jona & Rachel would receive unjust enrichment if allowed to retain the benefits of Third Party Plaintiffs' performance under the Consignment Memos without abiding by (the Jadelle Parties) and Jona's & Rachel's own repayment obligations under the  Consignment Memos and/or Third Party Plaintiffs detrimentally relied on the  Consignment Memos and would suffer an unconscionable injury if the Consignment Memos were not enforced.

///

///

///

///

## SEVENTH CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

*(On behalf of Third Party Plaintiffs as to Jona S. Rechnitz., Rachel Rechnitz, Levin Prado)*

137.   Third Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

138.   Based on the foregoing, Third Party Plaintiffs are informed and believe, and on such information and belief allege, that based on the foregoing, Third Party Defendants breached the implied covenant of good faith and fair dealing continuously throughout the business relationship with Marco.

139.   Third Party Plaintiffs are informed and believe, and on such information and belief allege, that there may be other facts constituting breach of the implied covenant of good faith and fair dealing which will be presented through discovery or at the time of trial.

140.   As a direct and proximate cause of the acts of Third Party Defendants, Marco suffered damages in an amount according to proof at the time of trial of at least $6,950,444.40.

141.   Third Party Plaintiffs are informed and believe, and on such information and belief allege, that Third Party Defendants acted despicably, willfully, wantonly, oppressively, fraudulently, or in conscious disregard of Marco's rights. Marco seeks recovery of exemplary damages  in an amount according to proof at the time of trial.

142.   As a result of Third Party Defendants' actions, Marco has been damaged in an amount according to proof, plus interest, costs, and attorneys' fees as permitted by law.

///

**EIGHTH CAUSE OF ACTION**

**ACCOUNT STATED**

*(On behalf of Plaintiff as to Jona Rechnitz, Rachel Rechnitz)*

143. Third Party Plaintiffs hereby incorporate by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

144. Based on the foregoing, in Los Angeles County, State of California, an account was stated in writing by and between Marco and (the Jadelle Parties), Jona, Rachel, and on such statement, a balance of $6,950,444.40 was found due to Marco from (the Jadelle Parties), Jona, Rachel, who all agreed to pay to Marco said balances in full.

145. Although demanded by Marco from (the Jadelle Parties), Jona, Rachel, they have failed to fully repay the balance of $6,950,444.40. Repeated demands were made and ignored by Third Party Defendants. As of the date of filing of this complaint, $6,950,444.40 is the current principal amount past due and owing. In addition, accrued and ongoing interest remains due, owing, and unpaid from (the Jadelle Parties), Jona, Rachel, to Marco.

146. Third Party Plaintiffs have incurred attorneys' fees in connection with this matter, in an amount to be determined at trial. Because the Consignment Memos are contracts on a book account, Marco are entitled to recover attorneys' fees from (the Jadelle Parties), Jona, Rachel, pursuant to Civil Code section 1717.5.

**NINTH CAUSE OF ACTION**

**UNETHICAL BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA**

**BUSINESS & PROFESSIONS CODE §17200**

*(On behalf of Third Party Plaintiffs as to Jona S. Rechnitz, Rachel Rechnitz, Levin Prado)*

147. Third Party Plaintiffs hereby incorporate by reference as though fully set

forth in full herein, all preceding Paragraphs of this Complaint.

148.   Based on the foregoing, Third Party Plaintiffs are informed, believe, and thereupon allege , that Third Party Defendants intentionally conspired with each other to restrain competition and deprive Marco of the benefit of their contracts.

149.   As a direct and proximate result of the aforementioned conduct of Third Party Defendants, and each of them, Marco has been damaged in a sum in excess of the jurisdiction of this Court, to be determined according to proof at the time of trial of at least $6,950,444.40.

150.   In engaging in the conduct described above, Third Party Defendants, and each of them, acted willfully and intending to deprive Marco of their property or legal rights, thereby committing acts of fraud, within the meaning of Civil Code §3924(c), so as to entitle Marco to punitive damages in an amount sufficient to punish or make an example of Third Party Defendants, and each of them.

## PRAYER FOR RELIEF

WHEREFORE, Third Party Plaintiffs seek a judgment in their favor and an order granting the following relief:

1.   That Marco be awarded compensatory damages in the amount of at least $6,950,444.40;

2.   That Marco be awarded treble damages pursuant to California Penal Code, §496(c);

3.   That Marco be awarded reasonable attorneys' fees pursuant to California Penal Code, §496©;

4.   That Marco be awarded attorneys' fees pursuant to Civil Code section 1717.5.

5.   For a constructive trust over the Consigned Jewelry and all proceeds

therefrom;

6.  That Marco be awarded punitive damages in an amount to be proven at trial;

7.  That Marco be awarded costs of suit; and

8.  That Marco be awarded such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Third Party Plaintiffs hereby demand a trial by jury to the full extent permitted by law.

DATED:      April 14, 2020          LAW OFFICE OF BARUCH C. COHEN
                                    A Professional Law Corporation

                                    By ____/S/ Baruch C. Cohen_____
                                    Baruch C. Cohen, Esq.
                                    Attorney for Third Party Plaintiffs PETER
                                    VOUTSAS aka PETER MARCO aka
                                    PETER MARCO EXTRAORDINARY
                                    JEWELS OF BEVERLY HILLS, dba
                                    PETER MARCO LLC

# EXHIBIT - 1

United States Bankruptcy Court
Central District of California

## Notice of Involuntary Bankruptcy Case Filing

An involuntary bankruptcy case concerning the debtor (s) listed below was filed under Chapter 7 of the United States Bankruptcy Code, entered on 04/06/2020 at 3:52 PM and filed on 04/06/2020.



**Jadelle Jewelry And Diamonds LLC a Delaware limited liability company**
9454 Wilshire Blvd
Penthouse 01
Beverly Hills, CA 90212
Tax ID / EIN: 00-0000000
*dba* **Jadelle Inc**

The case was filed by the following petitioning creditor(s):

| **First International Diamond Inc** | **Baruch C Cohen** |
|---|---|
| | Law Office of Baruch C. Cohen APLC |
| PO Box 3765 | 4929 Wilshire Blvd Ste 940 |
| Beverly Hills, CA 90212 | Los Angeles, CA 90010 |
| | 323-937-4501 |
| | |
| **Peter Marco LLC** | **Baruch C Cohen** |
| 252 N Rodeo Dr | Law Office of Baruch C. Cohen APLC |
| Bevverly Hills, CA 90210 | 4929 Wilshire Blvd Ste 940 |
| | Los Angeles, CA 90010 |
| | 323-937-4501 |
| | |
| **Victor Franco Noval** | **Ronald N Richards** |
| 1141 Summit Drive | Law Offices of Ronald Richards & Assoc |
| Beverly Hills, CA 90210 | |
| | PO Box 11480 |
| | Beverly Hills, CA 90213 |
| | 310-556-1001 |

The case was assigned case number 2:20-bk-13530-BR to Judge Barry Russell.

If you would like to view the bankruptcy petition and other documents filed by the

CM/ECF - U.S. Bankruptcy Court (v5.2.1 - LIVE)                    Page 2 of 2

petitioning creditor(s) and the debtor, they are available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple Street,, Los Angeles, CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy**
**Court**

ORIGINAL

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

__Central__          District of __California__
                        (State)

Case number (*if known*): _____   Chapter _____

> **FILED**
>
> APR - 6 2020
>
> CLERK U.S. BANKRUPTCY COURT
> CENTRAL DISTRICT OF CALIFORNIA
> BY: _____ Deputy Clerk

☐ Check if this is an
amended filing

## Official Form 205
# Involuntary Petition Against a Non-Individual

12/15

Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).

### Part 1:   Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

| | |
|---|---|
| 1. Chapter of the Bankruptcy Code | *Check one:*<br>☒ Chapter 7<br>☐ Chapter 11 |

### Part 2:   Identify the Debtor

| | |
|---|---|
| 2. Debtor's name | JADELLE JEWELRY AND DIAMONDS, LLC, a Delaware limited liability company |
| 3. Other names you know the debtor has used in the last 8 years<br><br>Include any assumed names, trade names, or *doing business as* names. | Jadelle, Inc. |
| 4. Debtor's federal Employer Identification Number (EIN) | ☒ Unknown<br><br>EIN ___ - _____ |

**5. Debtor's address**

| Principal place of business | Mailing address, if different |
|---|---|
| 9621  Brighton Way<br>Number   Street | 9454  Wilshire Blvd., Penthouse 01<br>Number   Street |
| | P.O. Box |
| Beverly Hills  CA  90210<br>City   State   ZIP Code | Beverly Hills   CA   90212<br>City   State   ZIP Code |
| | Location of principal assets, if different from principal place of business |
| Los Angeles<br>County | Number   Street |
| | City   State   ZIP Code |

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor  __Jadelle Jewelry and Diamonds, LLC__  Case number (if known) _____
　　　　　Name

---

**6. Debtor's website (URL)**  _____

---

**7. Type of debtor**
- ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
- ☐ Partnership (excluding LLP)
- ☐ Other type of debtor. Specify: _____

---

**8. Type of debtor's business**

*Check one:*
- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ☒ None of the types of business listed.
- ☐ Unknown type of business.

---

**9. To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**

- ☒ No
- ☐ Yes. Debtor _____  Relationship _____
　　District _____ Date filed _____  Case number, if known _____
　　　　　　　　　　　　　　　　　　　　　　MM / DD / YYYY

　　Debtor _____  Relationship _____
　　District _____ Date filed _____  Case number, if known _____
　　　　　　　　　　　　　　　　　　　　　　MM / DD / YYYY

---

**Part 3:  Report About the Case**

**10. Venue**

*Check one:*
- ☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.
- ☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

---

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked:*
- ☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.
- ☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

---

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**
- ☒ No
- ☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

---

Official Form 205  　　　　Involuntary Petition Against a Non-Individual  　　　　page 2

American LegalNet, Inc.
www.FormsWorkFlow.com

| Debtor | Jadelle Jewelry and Diamonds, LLC | | Case number (if known) | |
| | Name | | | |

### 13. Each petitioner's claim

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| First International Diamond, Inc. | Trade Debt/Damages | $ 1,976,225.00 |
| Peter Marco, LLC | Trade Debt/Damages | $ 7,676,744.00 |
| Victor Franco Noval | Trade Debt/Damages | $ 5,800,000.00 |
| | Total of petitioners' claims | $ 15,452,969.00 |

If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the , along with the signature of the petitioner's attorney.

### Part 4:   Request for Relief

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both, 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

cab 2698544v1

| Petitioners or Petitioners' Representative | Signature of petitioner or representative, including representative's title |
|---|---|
| Name and mailing address of petitioner | |
| First International Diamond, Inc. | |
| Name | |
| P.O. BOX 3765 | |
| Number    Street | |
| Beverly Hills         CA       90212 | |
| City                State     ZIP Code | |
| Name and mailing address of petitioner's representative, if any | |
| Baruch C. Cohen, Esq. | |
| Law Office of Baruch C. Cohen, APLC | |
| Name | |
| 4929   Wilshire Blvd., Suite 940 | |
| Number   Street | |
| Los Angeles       CA       90010 | |
| City              State     ZIP Code | |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **4-3-2020**
MM/DD/YYYY

x _____

American LegalNet, Inc.
www.FormsWorkFlow.com

Attorneys

Daniel A. Lev
Printed name

SulmeyerKupetz, A Professional Corporation
Firm name, if any

333 South Grand Avenue
Number    Street

Los Angeles            CA            90071
City                   State         ZIP Code

Contact phone   213.626.2311   Email   dlev@sulmeyerlaw.com

Bar number    129622

State    CA

X _____
Signature of attorney

Date signed    04/06/2020
               MM / DD / YYYY

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor   Jadelle Jewelry and Diamonds, LLC                                  Case number (if known) _____

Signature of petitioner or representative, including representative's title

Name and mailing address of petitioner
Peter Marco, LLC
Name

252   N. Rodeo Dr.
Number   Street

Beverly Hills                    CA        90210
City                             State      ZIP Code

Name and mailing address of petitioner's representative, if any
Baruch C. Cohen, Esq.
Law Offices of Baruch C. Cohen, APLC
Name
4929   Wilshire Blvd., Suite 940
Number   Street

Los Angeles                      CA        90010
City                             State      ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed On   4-3-2020
              MM / DD / YYYY

x _____
Signature of petitioner or representative including representative's title

Name and mailing address of petitioner
Victor Franco Noval
Name

1141   Summit Drive
Number   Street

Beverly Hills                    CA
City                             State      ZIP Code

Name and mailing address of petitioner's representative, if any
Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
Name

P.O. Box 11480
Number   Street

Beverly Hills                    CA        90213
City                             State      ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   _____
              MM / DD / YYYY

x _____

Official Form 205                   Involuntary Petition Against a Non-Individual                   page 4

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor    Jadelle Jewelry and Diamonds, LLC                          Case number (if known) _____
          Name

| Signature of petitioner or representative, including representative's title |
| --- |

**Name and mailing address of petitioner**
Peter Marco, LLC
Name

252     N. Rodeo Dr.
Number   Street

Beverly Hills            CA        90210
City                     State     ZIP Code

**Name and mailing address of petitioner's representative, if any**
Baruch C. Cohen, Esq.
Law Offices of Baruch C. Cohen, APLC
Name

4929    Wilshire Blvd., Suite 940
Number   Street

Los Angeles             CA        90010
City                    State     ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed On _____
            MM / DD / YYYY

X_____
Signature of petitioner or representative, including representative's title

**Name and mailing address of petitioner**
Victor Franco Noval
Name

1141    Summit Drive
Number   Street

Beverly Hills            CA        90210
City                     State     ZIP Code

**Name and mailing address of petitioner's representative, if any**
Ronald Richards, Esq.
Law Offices of Ronald Richards & Associates, A.P.C.
Name

P.O. Box 11480
Number   Street

Beverly Hills            CA        90213
City                     State     ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   04/06/2020
              MM / DD / YYYY

X _Ronald Richards_

Official Form 205                    Involuntary Petition Against a Non-Individual                    page 4

American LegalNet, Inc.
www.FormsWorkFlow.com

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| BARUCH C. COHEN ESQ. LAW OFFICE OF BARUCH C. COHEN, APLC 4929 Wilshire Blvd Ste 940 Los Angeles, CA 90010 (323 937-4501) DANIEL A LEV, ESQ. 333 S GRAND AVE STE 3400 LOS ANGELES, CA 90071 (213 626-2311) RONALD N RICHARDS, ESQ. P.O. BOX 11480 BEVERLY HILLS, CA 90213  (310 556-1001) | |

☑ Attorney for Petitioning Creditor(s)
☐ Petitioning Creditor(s) appearing without attorney

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re: JADELLE JEWELRY AND DIAMONDS, LLC., a Delaware limited liability company dba JADELLE INC, | CASE NO.: 20-13530BR CHAPTER: 7 |
|---|---|
| Debtor(s). | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN AN INVOLUNTARY BANKRUPTCY CASE** |

To the above-named debtor(s):

Pursuant to 11 U.S.C. § 303, an involuntary petition was filed on ___4/6/2020___ in this bankruptcy court praying for the entry of an order for relief against you under chapter ___7___ of title 11 of the Bankruptcy Code.  A copy of the involuntary petition accompanies this summons.

A status conference in the involuntary case commenced by the involuntary petition has been set for:

| Hearing Date: 6/9/2020 Time: 10 am Courtroom: 1668 | Place: ☑ 255 East Temple Street, Los Angeles, CA 90012 ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 ☐ 3420 Twelfth Street, Riverside, CA 92501 ☐ 411 West Fourth Street, Santa Ana, CA 92701 ☐ 1415 State Street, Santa Barbara, CA 93101 |
|---|---|

If you wish to oppose the entry of an order for relief, you must file with the clerk of this court an answer to the involuntary petition or a motion pursuant to FRBP 1011(c) within 21 days after the date of service of this summons and attached involuntary petition, plus 3 additional days if you were served by mail.  At the same time, you must also serve a copy of the answer or motion on the petitioner's attorney (or on the petitioner, if the petitioner does not have an attorney) at the address stated above.  If you file a motion under FRPB 1011(c), your time to answer the petition will be governed by that rule.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 1                          F 1010-1.SUMMONS.INVOL

**TO THE DEBTOR:**

IF YOU FAIL TO TIMELY FILE A RESPONSE TO THIS SUMMONS, THE BANKRUPTCY COURT MAY ENTER AN
ORDER FOR RELIEF IN ACCORDANCE WITH 11 U.S.C. § 303(h).

**TO THE PETITIONING CREDITOR(S):**

IF YOU FAIL TO TIMELY SERVE THE SUMMONS AND INVOLUNTARY PETITION AND/OR TO FILE PROOF OF
SERVICE OF DOCUMENT THEREOF WITH THE COURT OR TO APPEAR AT THE STATUS CONFERENCE, THIS
INVOLUNTARY CASE MAY BE DISMISSED IN ACCORDANCE WITH LBR 1010-1.

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date: 4/7/2020

By: STACEY FORTIER
Deputy Clerk

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                       Page 2                                       F 1010-1.SUMMONS.INVOL

# EXHIBIT - 2

AO 245B (Rev. 09/19)   Judgment in a Criminal Case   (form modified within District on Sept. 30, 2019)
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) | |
| Jona Rechnitz | ) | Case Number:  1: 16 cr. 00389-01(AKH) |
| | ) | USM Number:  77751-054 |
| | ) | Alan Levine/ AUSA, Martin Bell |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)   1

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 1349 | Conspiracy to Commit Honest Services Wire Fraud | 6/6/2016 | 1 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

12/19/2019
Date of Imposition of Judgment

_Signature of Judge_

Hon. Alvin K. Hellerstein, U.S. District Judge
Name and Title of Judge

March 3, 2020
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/3/2020

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __7__

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
5 months. Defendant is notified of his right to appeal.

☑ The court makes the following recommendations to the Bureau of Prisons:
that the defendant be confined at the Lompac or Taft facility outside of Los Angeles.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at _____ ☐ a.m. ☐ p.m. on _____.

  ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before 2 p.m. on _____.

  ☐ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
              Sheet 3 — Supervised Release

| | Judgment—Page | 3 | of | 7 |

DEFENDANT:  Jona Rechnitz
CASE NUMBER:  1: 16 cr. 00389-01(AKH)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

 3 years, of which the first 5 months shall be home confinement.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from
       imprisonment and at least two periodic drug tests thereafter, as determined by the court.
              ☑ The above drug testing condition is suspended, based on the court's determination that you
                  pose a low risk of future substance abuse. *(check if applicable)*
4.   ☑ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of
       restitution. *(check if applicable)*
5.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as
       directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you
       reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached
page.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

|  | Judgment—Page | 4 | of | 7 |
|---|---|---|---|---|

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3D — Supervised Release

| | Judgment—Page | 5 | of | 7 |

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall provide the probation officer with access to any requested financial information.

2. The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless he/she is in compliance with the installment payment schedule.

3. The defendant shall continue to cooperate with the U.S. Attorney's Office.

4. The defendant's duty to pay restitution in the amount of $19,000,000.00 is joint and several with co-conspirators Norman Seabrook (16 Cr. 467) and Murray Huberfeld (16 Cr. 467) provided, however, that defendant Rechnitz' payments shall be capped at $10,000,000.00. The defendant shall make payments of $500,000 per year, payable in equal monthly installments, due on the last day of each month.

5. The defendant shall be supervised by the district of residence.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | | | Judgment — Page | 6 | of | 7 |

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 100.00 | $ 19,000,000.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Correction Officers' Benevolent Association | $19,000,000.00 | $19,000,000.00 | |
| 77-10 21st Avenue | | | |
| East Elmhurst, NY 11370 | | | |

| TOTALS | $ 19,000,000.00 | $ 19,000,000.00 |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT: Jona Rechnitz
CASE NUMBER: 1: 16 cr. 00389-01(AKH)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☑  Lump sum payment of $ ___100.00___ due immediately, balance due

      ☐  not later than _____ , or
      ☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
      _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
      _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
      term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
      imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☑  Special instructions regarding the payment of criminal monetary penalties:
      The defendant shall pay restitution in the amount of $10,000,000.00, joint and several with the $19,000,000.00
      restitution obligation of co-conspirators Norman Seabrook (16 Cr. 467) and Murray Huberfeld (16 Cr. 467). The
      defendant shall make payments of $500,000 per year, payable in equal monthly installments, due on the last day
      of each month.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

# EXHIBIT - 3

Jona Rechnitz
9533 Sawyer Street
Los Angeles, CA 90035
October 16, 2019

Honorable Alvin K Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Hellerstein:

I am a felon. I am a criminal. I am the ONLY person to blame for that.

I have caused tremendous pain and embarrassment to my family, my religion, and to myself.

There is no way to undo what's been done. It's permanent, and for that I am truly sorry to everyone hurt by my crimes and actions. It eats me alive each and every day. When I wake up, when I go to sleep, it is always on my mind for the past 4 years.

My actions harmed the people of New York, The people of Correction Officers Benevolent Association, my friends, my family and my community. I will forever carry this burden, as I deserve to.

I have read of your Honor asking at various sentencings, why do good people do bad things?

In my case, not assuming I'm a good person, I can answer this question. Arrogance, greed, and insecurity.

Arrogance. I felt I was above the law. At this young age in my late 20's I was busy accepting honors at dinners and board positions at prestigious institutions. It got to my head.

Greed. I wanted to gain contacts to grow my business, to make money and gain stature in the long run.

Insecurity. I wanted to gain popularity by my peers and become a big shot in my community and business circles.

Shame on me.

Finally, I couldn't wiggle my way out of this one. It changed my life as I knew it forever.

As a supposed religious man, I have been a disgrace to my religion. The only way to fix this is to make serving G-d my main focus for the rest of my life. I try to every day. I have changed as a person religiously, through prayer, my public and private behavior, and I always stop and think before I'm about to do something to see if it is something my parents, my family, and G-d would approve of.

Making the decision to come forward was the right decision. A very tough decision with tremendous repercussions, but the appropriate decision. It has come with a hefty price. I did not foresee what I was signing up for, and it has been a brutal four years, but I made the right decision. I learned that doing the right thing isn't always the easiest, but it is the only choice. There is right and wrong and nothing in between. It has changed me for the better. It has forced me to change, which I have.

I had to testify in three separate trials. Not an easy task. Outside of the regular pressures a crucial witness deals with, these circumstances were even tougher. There was a lot of press coverage, a lot of community pressure, and a lot of threats and comments made to me. The press put me on trial instead of the defendants. The press called me a snitch and paid more attention to me and my testimony then on the actual trials. They made calls to my friends, my family, and waited outside my home for me to walk outside.

Parts of the community shunned me and my family. Your honor, I can not stress the amount of pain and suffering that we received during this time. Unimaginable pain. Eventually we had to leave town. Leave our lives. Leave immediately.

Then there were the threats and private investigators after me. Threatening voice messages, windows smashed at home, windows smashed in my car several times and my parents cars on the same day at their home, people following me and sitting outside of my home in Los Angeles for periods of time. My wife and I were harassed and video taped at the mall, humiliated in our Synagogue, and embarrassed in public at a local LA high school charity event.

Your Honor, there are so many examples that I am omitting as I don't want to portray myself as the victim here. I caused a lot of pain and harm to others through my criminal activity and don't want to detract from that.

Even at various trials there were intimidation tactics. An attorney representing a defendant yelled at me in the hallway walking in to court and shoved the prosecutor when he confronted him.

The disgusting feeling I had waking up in the morning to go to trial after trial after trial. Sometimes for a week and a half straight.

One of the toughest moments was when a mistrial was declared. I remember feeling like I wanted to tap out. But I could not. I made this decision for me and my beautiful family with the hope of staying together with them at the end of this nightmare. This has been the key factor keeping me going. My family. My amazing, incredible wife and my beautiful 6 children.

The highlight of my week used to be sitting in NYPD Headquarters like a big Macher. Today, my highlight is walking to Synagogue with my children every week, and I let them know it every time we walk. When I ask them what my favorite part of the week is, they say, Daddy! You know the answer, but I still make them repeat it.

Your Honor, I can now tell you proudly I am a hands-on father and husband. I am more of a mentsch. I was not during my criminal years. For that alone, I am grateful to this situation. My wife is an amazing woman. She had a bad feeling about the people I was hanging out with and the people I wanted to impress. She was right. I should have listened to her. I do now.

I had real estate holdings which I had to give up throughout this ordeal. Many investors didn't want to be associated with me, nor do I blame them. In a few cases, some partners viewed my situation as an opportunity forcing me to give up different holdings and assets, taking management decisions and authority from me, ultimately removing me entirely. Starting to make a living again was a struggle for a period of time. Fortunately my wife and I started a new business endeavor, which looks promising. As your Honor can imagine it is hard to find a bank to work with me, so I have secured private loans and financing from family and friends. I finally have a business going that has provided stability and a way to make a living. This case has left me in a big financial hole - I have had to borrow millions of dollars to get this business going and to support my family. I am finally in a position to dedicate myself again to supporting my family. I don't see any way possible to start over a third time. I beg you to allow me to continue on this second journey of life.

This has been a difficult time. I don't feel healthy at all. I am on anti depressant medication, I wake up in the middle of the night in pain and my neck and hands are burning, and I will forever carry this guilt.

Family is everything to me. Cuddling with my children is everything to me. Being a community member and helping others is everything to me. Since this entire ordeal my wife gave birth to two beautiful baby girls. A decision that we made to not put life on hold but to continue with life in the right path and be optimistic that doing the right thing will not hinder our future.

I am a changed man. I suffered a lot. I have been severely punished. My family has suffered a lot. I beg your Honor, please allow me to continue on the path I'm on, together with my family, my wife and 6 young children. They need their Daddy, I need my family together with me, and I promise your Honor, to continue to make

my family proud, my community proud, and your Honor proud.

With humility and sincerity,

Jona

# EXHIBIT - 4

JCJYRECS

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK

2  ..................................................................x

3  UNITED STATES OF AMERICA,

4          v.                 16 CR 389 (AKH)

5  JONA RECHNITZ,

6           Defendant.
                              Sentence

7  ..................................................................x

8                              New York, N.Y.
                              December 20, 2019

9                              10:15 a.m.

10  Before:

11

12                HON. ALVIN K. HELLERSTEIN,

13                              District Judge

                          APPEARANCES

14

15  GEOFFREY S. BERMAN
       United States Attorney for the
       Southern District of New York

16  BY:  MARTIN S. BELL
       JESSICA LONERGAN

17       KIMBERLY RAVENER
       LAURA POMERANTZ

18       Assistant United States Attorneys

19  COOLEY LLP
       Attorneys for Defendant

20  BY:  ALAN LEVINE

21

   Also Present:

22  Andrew Hamilton, Government Paralegal Specialist
   Marc Klausner, NYPD

23    Joseph Downs, FBI

24

25

JCJYRECS                                                              64

1    and, Judge, appearing before judges of this court, including

2    yourself, we either gain or lose credibility.  My hope is that

3    I personally have kept faith with not just a certain caliber  of

4    advocacy but also with the truth and with the way things  really

5    are.

6         To the extent that I have amassed that credibility

7    over a period of time, I am laying it entirely on not only the

8    quality of Mr. Rechnitz's cooperation but the value of  what

9    that means to the mechanism of justice working with respect  to

10   future cooperators.

11        THE COURT:  I have your point, Mr. Bell.

12        MR. BELL:  Thank you, Judge.

13        THE COURT:  Mr. Levine.

14        MR. LEVINE:  Your Honor, I think it might be  helpful

15   if the Court hears from Mr. Rechnitz first.

16        THE COURT:  Sure.

17        Mr. Rechnitz.

18        THE DEFENDANT:  Your Honor, I stand before your  Honor

19   and this court with respect for the law, tremendous remorse  for

20   my actions and behavior, and with great humility.

21        Growing up, my parents raised me in a very loving

22   environment --

23                  THE COURT:  Don't worry about the microphone,

24    Mr. Rechnitz.  Speak to me.  I'll hear you.

25                  THE DEFENDANT:  Growing up, my parents raised me in a

JCJYRECS                                                               65

1  very loving environment.

2          THE COURT:  That's okay, Mr. Levine.  I can hear him.

3          Go ahead.

4          THE DEFENDANT:  Growing up, my parents raised me in a

5  very loving environment with an emphasis on religion and doing

6  the right thing.  Here I am.  I did not start off this way, and

7  I was raised differently.

8          I have let down my family, my parents, my in-laws, my

9  wife, my children, friends, and my community in a big way.  I

10  made very poor choices, and many people have suffered because

11  of them.  I didn't always appreciate the fact that I had the

12  blessing to have six beautiful children in my home and a

13  beautiful wife.

14          When you get into trouble, you realize the blessings

15  of life and what's important.  I took my blessings for granted.

16  I've been a real fraud to God, a fraud to my wife and family, a

17  fraud as an American, a fraud as a businessman, and a fraud to

18  the people of New York, namely, the hard-working COBA members,

19  and I'm truly sorry for that.  My actions have hurt many

20  people, and I'm very sorry for that.  I continue to pay for my

21  mistakes on a daily basis.

22          While testifying before your Honor during the Norman

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23    Seabrook trial, a tape was played for the jury.  It had

24    recorded a conversation where I was going to attend an  Mincha

25    prayer service as a Shiva.  Your Honor asked me to explain what

JCJYRECS

1  Shiva and Mincha were for the jury.  In fact, your Honor

2  explained it much better than I did afterwards.

3        At that moment is when it really hit me what a

4  hypocrite I've been.  It was that exact moment.  Here I am

5  going to pray to God and visiting a mourner to comfort them,

6  and then I turn around and commit these crimes and sins.  It is

7  not the way I was raised and not the way I was educated.

8        While living in New York City, I wrongly felt pressure

9  to become a bigshot.  I was working for one of the largest real

10  estate companies in 2007, and it got to my head.

11        I was in my late 20's, and big people in the real

12  estate industry were dealing with me.  My ego was big, and I so

13  badly wanted to impress these people in order to advance my

14  career and profile.  This is where things started to spiral out

15  of control.  This is where I went so off the rails for a number

16  of years.

17        I assure your Honor that these past years and the

18  experience I've gone through has changed me.  I will never act

19  that way again.  My family and I have been through too much.

20        I have been forced to self-reflect, and I have

21  identified many of my flaws in order to grow from my mistakes.

22  I apologize for my criminal and immoral behavior for trying to

23    bribe my way through these years of my life.

24              I left the moral way of going about business and my

25    religious beliefs.  I bestowed gifts upon police officers in

1   exchange for favors in return.  I raised and contributed large

2   sums of money for the mayor of New York City and his projects

3   in the hope of obtaining benefit in return.

4          I introduced Norman Seabrook and Murray Huberfeld to

5   each other for the purposes of COBA to invest funds into

6   Murrey's fund, Platinum Partners, so that they could both

7   mutually financially benefit from one another and to elevate my

8   status with them.

9          I knowingly delivered a $60,000 kickback payment to

10  Norman Seabrook from Murray Huberfeld.  This corrupt bargain is

11  something that continues to haunt me.  I have struggled with

12  how it is I let my life go astray this way and how I took leave

13  of my adherence of the law and spirituality.

14         I've been a big hypocrite to my religion.  I failed to

15  conduct myself properly between myself and my fellow man and

16  between myself and my relationship with God.  I have strayed.

17         I did all of these horrible things without worrying

18  about God or the consequences that come with this sort of

19  behavior.  I cannot express to your Honor how ashamed I am for

20  desecrating my religion.

21         I have and will continue to repent to God every single

22  day.  I have and continued to make amends.  Part of my efforts

23    to make right included cooperating as a first step.  I have a

24    lot more work to do.

25              I did the best I could for the government and told the

JCJYRECS

68

1   truth about myself, and I realize that I will have to make

2   financially right those that I hurt.

3        Please allow me just a few more minutes to discuss the

4   cooperation.  I hired Mr. Levine in 2016, May 2016.  When I

5   realized that there was an investigation heating up, I knew I

6   had not told the truth to the New York City police officers and

7   Internal Affairs Bureau a few months earlier.

8        Right away, based on my initial conversations with

9   Mr. Levine and Ms. Laura Birger, I authorized them to meet with

10  the assistant U.S. attorneys and begin the process of making a

11  proffer, agreeing to plead guilty and signing a cooperation

12  agreement.

13       I understood from those initial meetings with both my

14  lawyers and the government, if I was going to cooperate with

15  the government, I needed to be 100 percent truthful.

16       I have been completely forthcoming in all my meetings

17  and on the witness stand throughout three separate trials.

18  There is not any question that I was asked that I did not

19  answer truthfully, and there are many events and conduct that I

20  told the government that they did not know.

21       Included in my early proffer sessions with the

22  government -- this was in the spring of 2016.  I gave the

23    government information about two different hard-lending

24    businesses that I was involved in.

25             One turned into a criminal case in which Peralta was

JCJYRECS

1    charged with a Ponzi scheme, and the second one also turned

2    into a criminal case charging Nissen with the same scheme.

3         At the time, I was unaware these were both Ponzi

4    schemes and, as a result, personally lost money for myself and

5    others.  Since then, I am more cautious and conservative in my

6    business dealings.

7         My financial dealings with both were a mess with lots

8    of transactions, paying and receiving, some on my own behalf

9    and some on behalf of third parties, including cash

10   transactions.

11        I was simply unable to sort all those transactions

12   out, and I have yet to file a 2015 tax return.  I told my

13   lawyers and the government about that at the time  immediately.

14        After speaking with my accountant during 2016, I

15   realized I cannot file my 2015 tax returns accurately because  I

16   did not have a handle on all the transactions, and I can't

17   provide my accountant with complete information.

18        The situation got more complex in 2017 for 2016

19   because criminal charges were filed.  I was scheduled to

20   testify in one of the trials, and there was no way to sort out

21   the transactions.

22        As I testified in all three trials, I have yet to file

23    the returns for these years up through 2018.  I was sued in the

24    Peralta bankruptcy and settled paying over $350,000 to the

25    state.

JCJYRECS

1    I have been sued in the Nissen bankruptcy, but that

2  has not moved forward yet, and I do not know what my exposure

3  will be at that bankruptcy.  I understand my obligation to

4  resolve that bankruptcy and have filed tax returns for those

5  years.  And I also understand the additional problems I have

6  created in my inability to file those returns, including the

7  financial consequences they will cause.

8    This is one of several jobs that I have in the coming

9  months as I continue to sort out my life in a lawful path.

10  In fact, I will spend the rest of my life trying to make amends

11  for my criminal behavior.

12    I will try to make a better name for my family, for my

13  religion, and for myself.  I am on the path to recovery,

14  your Honor.  I am a better family man; I am a better friend; I

15  am a more religious person.  I am working again to make an

16  honest living.

17    Please allow me to continuing on this course

18  undisrupted in order to provide for my large family.  I really

19  want to do good, please.  I failed myself in a number of ways.

20  I am humbly asking your Honor to stop the bleeding, to continue

21  in this new business I've started in order to provide for my

22  family and to enable me to take care of my financial

23    responsibilities.

24              THE COURT:  What is the new business?  Jadelle?

25              THE DEFENDANT:  Jadelle, yes.  I really paid a hefty

JCJYRECS                                                                      71

1   price for cooperating with the government for my crimes.  Most

2   recently, the New York Post put up an article that was

3   mentioned this morning -- your Honor may not be aware --

4   accusing me of hobnobbing and flirting with the rich and  famous

5   at a time when I claim I am a pariah to society.

6           In fact, Jadelle Jewelery hosted a jewelery show to

7   promote the brand and new jewelry collection.  The event was to

8   make sales and increase business.  One attendee was a Kim

9   Kardashian, a client of Jadelle.

10          If one were to read the article, I am portrayed as a

11  hobnobber with no concern in the world, no remorse  whatsoever,

12  and like a party animal.  I urge your Honor to watch the  video

13  that was attached to the article online, and your Honor  will

14  see a very different picture.

15          Your Honor will see me dressed in a suit and a tie

16  trying to sell jewelry, no partying, no hobnobbing, just a  man

17  trying to make an honest living.

18          I am not here to complain about my suffering in the

19  past few years, but I can promise your Honor I have been

20  punished in so many ways I can't begin to describe.

21          Within my community, within the media, and  through

22  self-introspection.  In New York City, I am persona non grata.

23    I am to blame.  I burnt a lot of bridges and relationships and

24    had to relocate to California.

25             I am so truly sorry for my behavior.  I am a changed

JCJYRECS                                                                72

1  man.  I have had years to make this change.  It did not happen

2  overnight, your Honor.  I have had four years, close to four

3  years, since this ordeal started.

4          I beg your Honor, please allow me to remain with my

5  family, my beautiful wife and children, and allow me to

6  continue working so that I can continue to provide for them  and

7  make good on my financial obligations.

8          I don't see any way to start over a third time.  I'm

9  on my second chance.  Please allow me to continue on this path.

10  Thank you.

11          THE COURT:  Mr. Levine.

12          MR. LEVINE:  Your Honor, I was just going to ask.  The

13  hour is late.  If the Court would want to take a recess, I

14  would certainly appreciate that.

15          THE COURT:  It's very tempting.

16          MR. LEVINE:  If the Court wishes to proceed, I'd like

17  to proceed.

18          THE COURT:  Keep going, Mr. Levine.

19          MR. LEVINE:  So, your Honor, we're finally here for

20  the day of Mr. Rechnitz's sentence.  How did he get here.  And

21  I think an important question on the mind of the Court is has

22  he shown remorse.

23          Your Honor, we've submitted a lot of letters, and what

24     comes out from those letters is the personality of an

25     individual wanting and needing to help people.

1    THE COURT:  I've read the letters.  They depict a

2 person who enlarges others by charity, by friendship to others

3 and makes other people feel better.

4    And yet in the life that's been depicted in this

5 court, he cheapens people.  He works on their insecurities and

6 their quest for material possessions and just does the

7 opposite.  He diminishes people.

8    How can you square both?

9    MR. LEVINE:  Your Honor, that's what I was going to

10 say.  So this personality that has done so much good for so

11 many people before these events, during these events, and since

12 these events -- it collided with his desire to be independent,

13 to establish himself in Manhattan, and not to take the

14 comfortable road going back to Los Angeles.

15    It also collided with his desire for immediate success

16 by staying in Manhattan in his late 20's.  It introduced him to

17 a world of Jeremy Reichberg.  And he realized in that world

18 that with his money, he could do good for police officials and

19 others, to have them at his beck and call for his community and

20 for himself.

21    What he perceived, incorrectly, would be a win/win,

22 and it turned into a bad/bad.  He never should have offered

# CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles, California; that my business address is 4929 Wilshire Boulevard, Suite 940, Los Angeles CA 90010; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document entitled **CROSS-COMPLAINT FOR: INTENTIONAL MISREPRESENTATION & FRAUD; CIVIL THEFT (PENAL CODE, § 496); EMBEZZLEMENT; CIVIL CONSPIRACY TO COMMIT THEFT, FRAUD, AND FRAUD BY CONCEALMENT; CONVERSION; BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; ACCOUNT STATED; & UNETHICAL BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200** on all interested parties in this action by the method indicated below at the address stated below:

| | |
|---|---|
| Anthony R Bisconti, Esq.<br>Bienert Katzman PC<br>601 West 5th Street Suite 720<br>Los Angeles, CA 90071<br>Email: tbisconti@bienertkatzman.com<br>*Attorney for Plaintiff David Rovinsky LLC* | Steven Jay Katzman, Esq.<br>Bienert Katzman PC<br>601 West 5th Street Suite 720<br>Los Angeles, CA 90071<br>Email: skatzman@bienertkatzman.com<br>*Attorney for Plaintiff David Rovinsky LLC* |
| Jason A. Levine, Esq.<br>Hangley Aronchick Segal<br>Pudlin & Schiller<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>Email: jlevine@hangley.com<br>*Attorney for Plaintiff David Rovinsky LLC* | Andrew E. Erdlen, Esq.<br>Hangley Aronchick Segal<br>Pudlin & Schiller<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>Email: aerdlen@hangley.com<br>*Attorney for Plaintiff David Rovinsky LLC* |
| Marc S. Williams, Esq.<br>Cohen Williams, LLP<br>724 South Spring Street, 9th Floor<br>Los Angeles, CA 90014<br>Email: mwilliams@cohen-williams.com<br>*Attorney for Jona & Rachel Rechnitz* | |

**[X]** **BY ELECTRONIC TRANSMISSION**: by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case. A pdf version of this document was also transmitted to counsel via electronic mail at the email address indicated above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 14, 2020 at Los Angeles, California.

By: _/s/ Baruch C. Cohen_
    Baruch C. Cohen