| | |
|---|---|
| 1 | Marc S. Williams (Bar No. 198913) |
| 2 | E-mail: mwilliams@cohen-williams.com<br>Reuven L. Cohen (Bar No. 231915) |
| 3 | E-mail: rcohen@cohen-williams.com<br>Brittany L. Lane (Bar No. 323440) |
| 4 | E-mail: blane@cohen-williams.com<br>Youngbin Son (Bar No. 324547) |
| 5 | E-mail: yson@cohen-williams.com |
| 6 | **COHEN WILLIAMS LLP**<br>724 South Spring Street, Ninth Floor |
| 7 | Los Angeles, CA 90014<br>Telephone:  (213) 232-5160 |
| 8 | Facsimile:   (213) 232-5167 |
| 9 | Attorneys for Third-Party Defendants, |
| 10 | JONA S. RECHNITZ and RACHEL RECHNITZ |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID ROVINSKY LLC, a Delaware limited liability company,<br><br>           Plaintiff,<br><br>PETER VOUTSAS aka PETER MARCO aka PETER VOUTSAS, aka PETER MARCO EXTRAORDINARY JEWELS OF BEVERLY HILLS, dba PETER MARCO LLC,<br><br>           Defendants/Third-Party Plaintiffs,<br><br>vs.<br><br>JONA S. RECHNITZ, an individual; RACHEL RECHNITZ, an individual; LEVIN PARDO aka LEVON PRADO, an individual,<br><br>           Third-Party Defendants. | Case No. 2:20-cv-02580-ODW-AS<br><br>**THIRD-PARTY DEFENDANTS JONA S. RECHNITZ AND RACHEL RECHNITZ'S NOTICE OF MOTION AND MOTION FOR STAY OF PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF REUVEN L. COHEN**<br><br>[Concurrently filed with (Proposed) Order]<br><br>Date:         June 15, 2020<br>Time:        1:30 p.m.<br>Courtroom  5D |

**THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

1    NOTICE IS HEREBY GIVEN that at 1:30 p.m., on June 15, 2020, or as soon
2  thereafter as counsel may be heard, in Courtroom 5D, 5th Floor of the First Street
3  Courthouse, 350 W. 1st Street, Los Angeles, CA. 90012, before the Honorable Otis D.
4  Wright II, Third-Party Defendants JONA S. RECHNITZ and RACHEL RECHNITZ
5  (collectively "Rechnitz Defendants") will move this Court for an order staying prosecution
6  of the claims asserted in this action by Defendants/Third-Party Plaintiffs PETER
7  VOUTSAS aka PETER MARCO aka PETER MARCO EXTRAORDINARY JEWELS OF
8  BEVERLY HILLS, dba PETER MARCO LLC ("Peter Marco") against Rechnitz
9  Defendants for six months, at which time Rechnitz Defendants request a status conference
10 to discuss the necessity of any further stay, in light of:

11    (1) the ongoing criminal investigation into allegations relating to Rechnitz
12    Defendants' jewelry business, which is the subject of Peter Marco's claims in this
13    action, and

14    (2) the pending involuntary bankruptcy petition filed against Jadelle Jewelry
15    and Diamonds, LLC ("Jadelle LLC") – the entity through which Rechnitz Defendants
16    operated the jewelry business at issue.

17    To be clear, by this motion, Rechnitz Defendants do not seek an order staying
18 prosecution of the claims asserted in this action by Plaintiff David Rovinsky LLC against
19 Peter Marco.

20    This motion is based on the attached Memorandum of Points and Authorities and
21 Declaration of Reuven L. Cohen, all files and records in this case, and any additional
22 evidence and argument that may be presented to the Court prior to ruling on this motion.

23    ///
24    ///
25    ///
26    ///
27    ///
28    ///

1
**THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 11, 2020.

Dated:  May 18, 2020

Respectfully submitted,

**COHEN WILLIAMS LLP**

By: */s/ Marc S. Williams*
Marc S. Williams
Reuven L. Cohen
Brittany L. Lane
Youngbin Son

*Attorneys for Third-Party Defendants, JONA S. RECHNITZ and RACHEL RECHNITZ*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Rechnitz Defendants vehemently deny engaging in any wrongdoing and hope to fully defend themselves in this action against Peter Marco's claims. However, because there is an ongoing criminal investigation relating to the Rechnitz Defendants' jewelry business that is also the subject of Peter Marco's claims, and because Peter Marco seeks to recover assets that are also the subject of a pending bankruptcy proceeding that Peter Marco initiated against Rechnitz Defendants' business, Jadelle LLC, the Court should stay prosecution of Peter Marco's claims in this action against Rechnitz Defendants.

Peter Marco alleges that Rechnitz Defendants fraudulently induced him to consign jewelry worth $6,950,440.40 to Rechnitz Defendants and their jewelry business. (*See* Dkt. 39 [Amended Third-Party Complaint], ¶¶ 31-33, 36-38.) This same jewelry business lies at the center of an ongoing federal criminal investigation. Thus, absent a stay of Peter Marco's claims in this action, Rechnitz Defendants would be left with an impossible choice of either waiving their Fifth Amendment rights to defend themselves or asserting their Fifth Amendment rights and potentially ceding to a multi-million-dollar judgment against them. Under these circumstances, the Court should grant a stay of prosecution of Peter Marco's claims in this action.

Additionally, prior to the commencement of this action against Rechnitz Defendants, Peter Marco LLC filed an involuntary bankruptcy petition against Jadelle LLC – the entity through which Rechnitz Defendants operated the jewelry business at issue both in this case and the pending criminal investigation. Based on Peter Marco's Third-Party Complaint in this action, it is clear the consigned goods at issue in this action are the same goods upon which Peter Marco LLC bases his creditor-claim in the bankruptcy proceedings, and which Peter Marco alleges were consigned to Jadelle LLC. Permitting Peter Marco to circumvent the automatic bankruptcy stay in an effort to recover for the same items that he claims are assets of the bankruptcy estate violates principles of fairness, and could harm other creditors.

Rechnitz Defendants respectfully request that the Court stay prosecution of Peter

Marco's claims against them in this action for six months, at which point Rechnitz Defendants request a status conference to determine whether a further stay is warranted.

## II. RELEVANT FACTS

### A. Plaintiff's Original Complaint in this Action

On March 18, 2020, Plaintiff David Rovinsky LLC ("Plaintiff") filed this action, alleging negligence, conversion, fraud, negligent misrepresentation, civil theft, and aiding and abetting conversion and civil theft causes of action against Peter Marco. (*See generally* Dkt. 1 [Complaint].) The gist of Plaintiff's allegations is that Peter Marco failed to pay for or return two pieces of jewelry that Plaintiff consigned to Peter Marco.

### B. Peter Marco's Involuntary Bankruptcy Petition

On April 6, 2020, Peter Marco LLC and two other creditors filed an involuntary bankruptcy petition against Jadelle LLC, the jewelry business operated by Rechnitz Defendants. (*See* Dkt. 39 [Amended Third-Party Complaint], ¶¶ 7, 9-11, Exh. 1.) Jadelle LLC moved to dismiss this petition on May 1, 2020. (*See* Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages [Dkt. 8], *In re Jadelle Jewelry and Diamonds, LLC*, Case No. 2:20-bk-13530-BR (May 1, 2020).)

### C. Peter Marco's Third-Party Complaint in this Action

On April 14, 2020, Peter Marco filed a Third-Party Complaint against Rechnitz Defendants and Levin Prado aka Levon Prado (collectively, "Third-Party Defendants"), claiming that Third-Party Defendants are responsible for Plaintiff's claims against Peter Marco. (*See* Dkt. 19 [Third Party Complaint].) On April 24, 2020, Peter Marco filed an Amended Third-Party Complaint against Third-Party Defendants, alleging various causes of action related to supposed fraudulent conduct by Third-Party Defendants with respect to pieces of jewelry that Peter Marco allegedly consigned to Rechnitz Defendants, as well as Jadelle LLC.[1] Peter Marco claims he is entitled to the same amount of money that Peter

---

[1] Peter Marco alleges that he is precluded from pursuing Jadelle LLC in this action due to the automatic bankruptcy stay. (*See* Dkt. 39 [Amended Third-Party Complaint], ¶ 10.)

Marco LLC is seeking from Jadelle LLC in bankruptcy proceedings. (*See* Dkt. 39 [Amended Third-Party Complaint], ¶¶ 9, 32.)

### D. The Related Criminal Investigation

Rechnitz Defendants first became aware of the ongoing criminal investigation through a draft Los Angeles Superior Court complaint that Rechnitz Defendants received from Victor Franco Noval ("Noval"), who is not a party to this action, but who is one of the petitioning creditors in the above-referenced Jadelle LLC involuntary bankruptcy. (Cohen Decl., ¶ 9; Dkt. 39, ¶ 9.) Rechnitz Defendants received the draft Noval complaint on February 4, 2020. (Cohen Decl., ¶ 9.) The draft complaint contained allegations against Rechnitz Defendants, among others, regarding loans made to Jadelle LLC collateralized by jewelry. (*Id.*)

Noval's draft complaint indicated that Noval had filed a police report with the Beverly Hills Police Department ("BHPD") concerning the allegations in the draft complaint. (Cohen Decl., ¶ 9.) On February 7, 2020, counsel for Rechnitz Defendants confirmed with a detective from the BHPD that allegations related to Rechnitz Defendants' jewelry business had been referred to the Federal Bureau of Investigation ("FBI"). (*Id.* ¶ 10.) Thereafter, Rechnitz Defendants' counsel conferred with an Assistant United States Attorney ("AUSA") from the Los Angeles office of the United States Attorney's Office for the Central District of California ("USAO") regarding the status of any criminal investigation. (*Id.* ¶ 11.) The AUSA advised that the USAO typically does not publicly confirm or deny the existence of any investigation, but that public disclosure of facts related to the criminal allegations concerning Rechnitz Defendants' jewelry business may adversely impact any investigation, and thus the USAO supported a stay of related civil proceedings. (*Id.*)

### III. **ARGUMENT**

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such

3

**THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

proceedings are necessarily controlling of the action before the court." *Id.* at 863-64. Presently, there are two proceedings that bear upon this case: an ongoing criminal investigation led by the FBI, and a pending involuntary bankruptcy proceeding initiated, in part, by Peter Marco LLC. Consideration of both proceedings favor a stay.

### A. The Ongoing Criminal Investigation Favors a Stay.

When faced with pending criminal proceedings, a district court has the discretion to stay civil proceedings "'when the interests of justice seem [] to require such action.'" *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting *Securities & Exchange Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)). Whether a district court exercises that discretion depends on the particular circumstances and competing interests involved in the case. *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). In making such a determination, district courts consider the extent to which the defendant's Fifth Amendment rights are implicated. *Id*. District courts also consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Id.* at 902-03. Here, consideration of these factors weighs heavily in favor a stay.

#### 1. Rechnitz Defendants' Fifth Amendment Rights Are Heavily Implicated and Will Be Prejudiced Absent a Stay.

"[T]he mere possibility of criminal prosecution is all that is necessary for the Fifth Amendment privilege against self-incrimination to be invoked." *Consumer Fin. Prot. Bureau v. Global Fin. Support, Inc.*, No. 15-CV-02440-GPC-WVG, 2016 WL 2868698, at *3 (S.D. Cal. May 17, 2016). Thus, even where a party has not been charged, a stay may still be appropriate. *See id.* (granting 120-day stay and setting status conference to determine necessity of further stay in light of ongoing investigation by IRS and FBI); *see also Franco*

*v. City of W. Covina*, No. EDCV 18-2587-JGB (SHKx), 2019 WL 6794203, at *2 (C.D. Cal. July 5, 2019) (granting stay of deposition and discovery related to officer's involvement in shooting where authorities were reviewing legality of shooting, and noting "[while defendant-officer's] Fifth Amendment rights are implicated to a lesser extent than they would be if charges had been brought against him . . . this case is not one in which there is an 'absence of any hint of criminal proceedings'"); *Clifford v. Trump*, No. CV 18-02217 SJO (FFM), 2018 WL 3435419, at *3, 6 (C.D. Cal. Apr. 27, 2018), *reconsideration denied*, 2018 WL 3436832 (C.D. Cal. June 19, 2018) (granting defendant's *ex parte* application for 90-day stay in light of ongoing criminal investigation, scheduling status conference at expiration of those 90 days, and noting that "there [was] a large potential factual overlap between the civil and criminal proceedings that would heavily implicate [defendant's] Fifth Amendment rights"); *C.M. by & through McLain v. City of Los Angeles*, No. 17-CV-05135-VAP-AGRx, 2017 WL 10527380, at *2 (C.D. Cal. Oct. 19, 2017) ("[T]he Court may still order a stay if there is substantial overlap between the criminal investigation and the allegations in the lawsuit.").

There is no question that Rechnitz Defendants' Fifth Amendment rights are implicated here. There is an ongoing federal criminal investigation revolving around Rechnitz Defendants' jewelry business. (Cohen Decl. ¶¶ 11, 12.) That same business lies at the heart of Peter Marco's claims. And in fact, Peter Marco alleges numerous causes of action, such as fraud, civil theft, and conversion, that could be considered the civil equivalent of criminal conduct and that contain similar elements to their criminal counterparts. *See, e.g.*, Ninth Circuit Model Criminal Jury Instruction No. 8.124 [Wire Fraud] (reflecting elements of knowledge and intent). With an Answer to Peter Marco's Amended Third-Party Complaint due to be filed on June 15, 2020, Rechnitz Defendants already face the impossible choice of either waiving their Fifth Amendment rights by admitting or denying each of the material allegations raised in the complaint (Fed. R. Civ. P. 8(b)), or exercising those rights and potentially ceding to a multi-million-dollar judgment. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) ("[I]n civil proceedings adverse inferences can

be drawn from a party's invocation of this Fifth Amendment right.").

Further evidencing the prejudice to Rechnitz Defendants, Peter Marco propounded requests for production on Rechnitz Defendants. (Cohen Decl. ¶ 8.) The act of producing certain documents on its own may implicate Rechnitz Defendants' Fifth Amendment rights. *See Fisher v. United States*, 425 U.S. 391, 410 (1976) ("The act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced"); *see also United States v. Hubbell*, 530 U.S. 27, 36 (2000) ("By producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic.").

Thus, absent a stay, Rechnitz Defendants will be forced to choose between defending this action or preserving their constitutional rights – as they will be incapable of doing both.

2. <u>Peter Marco Will Not Be Substantially Prejudiced by a Stay.</u>

Peter Marco's interest in proceeding expeditiously with his civil claims will not be substantially prejudiced by a stay. Given the nature of the action, the only obvious prejudice to Peter Marco is the delay in recovery of a potential monetary judgment. Such a delay "is not sufficient prejudice to warrant denial of a stay." *Larsen v. City of Los Angeles*, No. CV1204392GAFAJWX, 2012 WL 12887557, at *9 (C.D. Cal. Aug. 3, 2012).

Peter Marco does not seem to be in any hurry to litigate his claims. First, Peter Marco did not initiate this civil action. Then, even after this lawsuit was initiated against Peter Marco, Peter Marco LLC filed an involuntary bankruptcy petition against Jadelle LLC before filing any claims against Rechnitz Defendants. Thus, it is hard to imagine what prejudice would result from a delay.[2]

Moreover, a stay might benefit Peter Marco. Absent a stay, Peter Marco may be forced to expend resources litigating the boundaries of Rechnitz Defendants' Fifth Amendment rights. And still, Peter Marco may not obtain certain discovery that would

---

[2] To the extent the bankruptcy proceedings are not dismissed, Peter Marco LLC presumably will be able to seek recovery of the same amounts he seeks here in that forum.

6
**THIRD-PARTY DEFENDANTS' MOTION FOR STAY OF PROCEEDINGS**

otherwise be subject to production. But even if the proposed stay may cause inconvenience and delay to Peter Marco, any such interest is outweighed by the importance of protecting Rechnitz Defendants' constitutional rights.

### 3. The Burden Imposed by the Proceedings on Rechnitz Defendants Favors a Stay.

The burden on Rechnitz Defendants of allowing Peter Marco to prosecute his civil claims against them in this action is manifest. Rechnitz Defendants must file an Answer to the Amended Third-Party Complaint on June 15, 2020, which may require the waiver of Defendants' Fifth Amendment rights. Peter Marco has already propounded discovery, responses to which may likewise require a waiver of Defendants' Constitutional rights. Should Rechnitz Defendants choose to respond and defend themselves against the civil claims, they would be prejudicing their defense to any criminal proceedings. Not only would such an approach require waiver of their Constitutional rights, it would provide the government access to potentially incriminating testimony to which the government would not otherwise have access. Alternatively, if Rechnitz Defendants choose to exercise their Constitutional rights and assert the Fifth Amendment privilege, they will be severely inhibiting their defense to Peter Marco's claims. *See Keating*, 45 F.3d at 326 ("Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding.") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). Thus, the potential prejudice to Rechnitz Defendants favors a stay.

### 4. Judicial Economy Is Served by the Proposed Stay.

A stay of Peter Marco's claims in this action serves judicial economy. The case is still at an early stage – Rechnitz Defendants have not answered the Amended Third-Party Complaint, no scheduling order has been issued yet, and no dispositive motions have been filed. Courts have recognized that a stay in such circumstances can maximize efficiency. *See*, *e.g.*, *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, No. 2:09-CV-

0954 FCD EFB, 2009 WL 2136986, at *4 (E.D. Cal. July 15, 2009) (finding that where "no scheduling order has been issued, and no dispositive motions have been filed . . . [s]taying the case makes efficient use of judicial resources by 'insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination'").

Moreover, if the case were to proceed and Rechnitz Defendants were subject to discovery, a significant portion, if not all, of discovery addressed to Rechnitz Defendants would relate to topics on which they are entitled to invoke their Fifth Amendment privileges, and a number of disputes related to discovery are likely to ensue. *See Clifford v. Trump*, 2018 WL 3435419, at *5. The proposed stay will negate or minimize the need for extensive disputes and motion practice regarding the boundaries of Rechnitz Defendants' rights to invoke their Fifth Amendment privilege. Moreover, the outcome of the criminal investigation may potentially benefit the parties and the Court by streamlining the issues and questions presented in this action. *See id. See Securities and Exchange Comm'n v. Alexander*, No. 10-CV-04535-LHK, 2010 WL 5388000, at *5 (N.D. Cal. Dec. 22, 2010) ("Allowing the criminal action to proceed first may narrow the issues and streamline discovery in the civil proceeding, and collateral estoppel based on findings in the criminal case may expedite resolution of the civil case. A stay will also allow civil discovery to 'proceed unobstructed by concerns regarding self-incrimination.'" [internal citations omitted]). Therefore, the interests of judicial efficiency weigh in favor of a temporary stay.

        5.    <u>Persons Not Parties to this Action Will Not Be Adversely Impacted by the Proposed Stay but Would Instead Benefit.</u>

While Rechnitz Defendants are not aware of any person other than the parties to this action that has a direct interest in this civil action, there are third-parties who would potentially benefit from a proposed stay. First, the other Jadelle LLC creditors have an interest in having their bankruptcy claims litigated prior to the claims at issue in this case. This is especially true here, where the same pieces of jewelry at issue in this action are the

apparent basis for claims in the bankruptcy matter with respect to Peter Marco. If Peter Marco were to succeed in obtaining "a constructive trust over the Consigned Jewelry and all proceeds therefrom," as sought in the Amended Third-Party Complaint (at 41:2-3), the other creditors would lose out on assets that might be part of the bankruptcy. (*See* Section III.B, *infra*.)

Additionally, the FBI and USAO have an interest in an investigation unaffected by civil proceedings. And the USAO has indicated that it supports a stay of matters related to the criminal investigation. (*See* Cohen Decl., ¶ 11.) Accordingly, staying prosecution of Peter Marco's claims against Rechnitz Defendants in this action will not adversely impact the interests of persons who are not parties to this civil litigation.

      6.      <u>The Interests of the Public Favors a Stay.</u>

The interest of the public would undoubtedly weigh in favor of a stay, as the public interest is better served by the completion of a criminal investigation unfettered by the inevitable civil discovery disputes that will impede Rechnitz Defendants' attempt to resolve the criminal investigation. *See Jones v. Conte*, No. C 04-5312 SI, 2005 WL 1287017, at *2 (N.D. Cal. Apr. 19, 2005) ("[T]he public interest is furthered by a stay because 'the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant.'"). Therefore, this factor also weighs in favor of the proposed stay.

**B.    The Pending Bankruptcy Proceeding Favors a Stay.**

While the ongoing criminal investigation is reason enough to stay this matter, the pending bankruptcy proceeding also supports a stay. To be clear, Jadelle LLC has filed a motion to dismiss the bankruptcy proceeding (Cohen Decl. ¶ 4), which may very well be granted. However, the fact remains that Peter Marco LLC – the dba of the Defendant/Third-Party Plaintiff that filed the Third-Party Complaint against Rechnitz Defendants – filed an involuntary bankruptcy petition, along with other creditors, against Jadelle LLC, seeking to recover the value of the same consigned goods as those at issue in this lawsuit.

Peter Marco alleges that Jadelle LLC was a party to the consignment memoranda at issue in this case. (*See* Dkt. 39 [Amended Third-Party Complaint], ¶ 124.) Thus, his claims

are based on jewelry that is arguably an asset of Jadelle LLC. *See In re Pettit Oil Co.*, 917 F.3d 1130, 1132 (9th Cir. 2019) ("Under settled bankruptcy law, if a consignee files for bankruptcy, any consigned "goods" in its possession become property of the bankruptcy estate unless the seller has previously provided public notice of its interest in the goods (normally by filing a document known as a 'financing statement') and thereby 'perfected' its interest. At issue in this case is whether this rule also extends to the *proceeds* from goods sold that are held by the consignee on the date it files for bankruptcy. We conclude that it does . . . .").

Because assets that are the subject of a bankruptcy proceeding are also the subject of this action, while the bankruptcy proceeding is pending, a stay is warranted here.

## IV. CONCLUSION

For the foregoing reasons, Rechnitz Defendants respectfully request that the Court stay prosecution of Peter Marco's claims in this action against Rechnitz Defendants for six months, at which point Rechnitz Defendants request a status conference to determine whether a further stay is warranted.

Respectfully submitted,

Dated: May 18, 2020      **COHEN WILLIAMS LLP**

By: */s/ Marc S. Williams*
    Marc S. Williams
    Reuven L. Cohen
    Brittany L. Lane
    Youngbin Son

*Attorneys for Third-Party Defendants,
JONA S. RECHNITZ and RACHEL RECHNITZ*

# DECLARATION OF REUVEN L. COHEN

I, Reuven L. Cohen, declare as follows:

1. I am over the age of eighteen and am an attorney duly licensed to practice law in the State of California. I am a partner at Cohen Williams LLP and attorney of record for Third-Party Defendants Jona S. Rechnitz and Rachel Rechnitz (collectively, "Rechnitz Defendants") in the above-captioned action.

2. I make this declaration in support of Third-Party Defendants' Motion for Stay of Proceedings (the "Motion"). This declaration is based upon my personal knowledge and based on the files and records in this case. If called upon to testify as to the matters set forth in this declaration, I could and would do so.

3. On March 18, 2020, Plaintiff David Rovinsky LLC ("Plaintiff") filed the Complaint initiating this action. (*See generally* Dkt. 1 [Complaint].)

4. On April 6, 2020, Defendant/Third-Party Plaintiff Peter Marco LLC and two other creditors filed an involuntary bankruptcy petition against Jadelle Jewelry and Diamonds, LLC ("Jadelle LLC"), a jewelry business operated by Rechnitz Defendants. (*See* Dkt. 39 [Amended Third-Party Complaint], ¶¶ 7, 9, Exh. 1.) Jadelle LLC moved to dismiss this petition on May 1, 2020. (*See* Putative Debtor's Motion to Dismiss Involuntary Petition and Request for Attorney's Fees, Costs, and Damages [Dkt. 8], *In re Jadelle Jewelry and Diamonds, LLC*, Case No. 2:20-bk-13530-BR (May 1, 2020).)

5. On April 14, 2020, Defendants/Third-Party Plaintiffs Peter Voutsas aka Peter Marco aka Peter Marco Extraordinary Jewels of Beverly Hills, dba Peter Marco LLC ("Peter Marco") filed a Third-Party Complaint against Third-Party Defendants Jona S. Rechnitz, Rachel Rechnitz, and Levin Prado aka Levon Prado (collectively, "Third-Party Defendants"). (*See* Dkt. 19 [Third Party Complaint].)

6. On April 15, 2020, counsel for Jona Rechnitz and Rachel Rechnitz signed respective waivers of service of summons.

7. On April 24, 2020, Peter Marco filed an Amended Third-Party Complaint against Third-Party Defendants. (*See* Dkt. 39 [Amended Third Party Complaint].)

8. On May 8, 2020, Peter Marco propounded his first set of requests for production on Rechnitz Defendants via e-mail.

9. Prior to the filing of this action, on February 4, 2020, I received a draft Los Angeles Superior Court complaint from counsel for Victor Franco Noval ("Noval"), who is not a party to this action, but who is one of the petitioning creditors in the above-referenced Jadelle LLC involuntary bankruptcy. The draft complaint contained allegations against Third-Party Defendants, and others, regarding loans made to Jadelle LLC that were collateralized by pieces of jewelry. Upon review of the draft complaint, and based on allegations contained therein, I came to understand that the litigant had filed a police report with the Beverly Hills Police Department ("BHPD") concerning the allegations made in the draft complaint.

10. On February 7, 2020, I had a telephone call with Detective Diamond of the Beverly Hills Police Department ("BHPD"). Detective Diamond confirmed that the BHPD had referred the allegations relating to Rechnitz Defendants' jewelry business to the Federal Bureau of Investigation ("FBI") for criminal investigation.

11. After we became aware of this referral, my office reached out to the Los Angeles office of the United States Attorney's Office for the Central District of California ("USAO") regarding the status of any such investigation and the USAO's position on our request for a stay of civil proceedings, including this action. We were advised by the USAO that they typically do not publicly confirm or deny the existence of any investigation, but that public disclosure of facts related to this matter may adversely impact any investigation. As a result, the USAO informed us that it supported our request for a stay with respect to civil proceedings related to the investigation and agreed that I could represent the same to the Court in my declaration in support of such a motion.

12. My office has since confirmed that the investigation is ongoing.

2
DECLARATION OF REUVEN L. COHEN

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 18, 2020, at Los Angeles, California.

By: _____
Reuven L. Cohen