**O**

# United States District Court
# Central District of California

| | |
|---|---|
| DAVID ROVINSKY LLC, | Case № 2:20-cv-02580-ODW (ASx) |
| Plaintiff, | **ORDER (1) DENYING MOTION TO STAY ACTION; AND (2) GRANTING MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT [47] [63] [92]** |
| v. | |
| PETER MARCO, LLC, et al., | |
| Defendants and Third-Party Plaintiffs, | |
| v. | |
| JONA S. RECHNITZ et al., | |
| Third-Party Defendants. | |

## I.   INTRODUCTION

On March 18, 2020, David Rovinsky LLC initiated this action against Peter Marco, LLC, and Peter Voutsas (together, "Peter Marco"). (Compl., ECF No. 1.) On April 24, 2020, Peter Marco filed the operative Amended Third-Party Complaint against Jona S. Rechnitz, Rachel Rechnitz, and Levin Prado. (Am. Third-Party Compl. ("ATPC"), ECF No. 39.) On May 18, 2020, the Rechnitzes filed a motion to stay this action. (Mot. Stay ("MTS"), ECF No. 47.) On June 15, 2020, the Rechnitzes filed a motion to dismiss the ATPC. (Mot. Dismiss ("MTD"), ECF No. 63.) For the

following reasons, the Court **DENIES** the motion for a stay of proceedings and **GRANTS** the motion to dismiss.[1]

## II.   PRELIMINARY MATTERS

The Rechnitzes' request for leave to file a request for judicial notice (ECF No. 92) and request for judicial notice (ECF No. 63-1) are **GRANTED**.  The Court takes judicial notice of two documents on file with the United States Bankruptcy Court for the Central District of California in *In re Jadelle Jewelry and Diamonds, LLC*, Case No. 2:20-bk-13530-BR ("*In re Jadelle*"): (1) the government's August 25, 2020, motion for a limited stay of discovery (Req. Leave File Req. Jud. Notice, Ex. A ("Gov't Mot."), ECF No. 92-1), and (2) Voutsas's May 19, 2020, declaration in support of the petitioning creditors' motion for appointment of an interim Chapter 7 trustee (Req. Jud. Notice, Ex. A ("Marco Decl."), ECF No. 63-1).   Fed. R. Evid. 201(b); *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

The Rechnitzes ask the Court to consider the assertions Voutsas made in his bankruptcy declaration, the "Marco Decl.," in evaluating the motion to dismiss, arguing that the assertions are judicial admissions binding on Peter Marco.  (MTD 4 n.5.)  Courts have discretion to treat a party's statements of fact in briefs as judicial admissions conclusively binding on the party.  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988).  Courts generally apply this rule to statements made in briefs within the same action.  *See, e.g.*, *Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. SA CV 14-1645-DOC (RNBx), 2015 WL 13310465, at *3 (C.D. Cal. Jan. 22, 2015) (citing cases applying rule to statements made in briefs opposing motions to dismiss within the same action, and deeming as judicial admissions statements a party made in a declaration submitted in same action before

---

[1] The Court deems these motions appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

removal to federal court).  Because Voutsas submitted his declaration in a separate proceeding involving different parties, the Court declines to apply the rule here.[2]

Peter Marco also requested judicial notice of documents.  (ECF Nos. 49, 62, 85, 90.)  The Court need not rely upon those documents to adjudicate the motions, so those requests are **DENIED** as moot.

Peter Marco and the Rechnitzes present new arguments in requests for judicial notice and supplemental declarations.  (*E.g.*, ECF No. 92 at 3 ("The claims in this action squarely overlap with the subject matter of the criminal investigation . . . ."); ECF No. 94 ¶ 8 ("Rechnitz's *Request for Leave* blurs two issues . . . .").)  The Court did not permit supplemental briefing, so it does not consider these arguments in evaluating the pending motions.

Finally, Peter Marco's briefs exceed the Court's twenty-five-page limit.  C.D. Cal. L.R. 11-6.  The Court does not consider any argument beyond the twenty-fifth substantive page of these briefs.

### III.      BACKGROUND

#### A.      Allegations in the ATPC

From October 29, 2019 to January 7, 2020, after experiencing some legal troubles, Jona Rechnitz[3] told Peter Marco[4] that he was "refocused on his business" and sought to consign jewelry from Peter Marco to sell to his clients.  (ATPC ¶ 32.)  Between October 2019 and January 2020, Peter Marco consigned several pieces of jewelry ("Consigned Jewelry") to Jona.[5]  (ATPC ¶¶ 32–35.)  Peter Marco, Jona,

---

[2] The Court also declines to employ the incorporation-by-reference doctrine to consider the jewelry consignment memoranda attached to the Marco Declaration because the Rechnitzes question the authenticity of the copies attached.  (MTD 4–5 n.6.)  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (deeming incorporation by reference of a document appropriate if "no party questions [its] authenticity").

[3] To avoid confusion, the Court respectfully refers to the Rechnitzes by their given names.

[4] The ATPC confusingly uses the term "Marco" to refer to both Voutsas *individually* and Voutsas and his businesses *collectively*.  (ATPC ¶¶ 1–4.)  The Court need not distinguish Voutsas from his businesses to decide the motions.  The Court uses masculine pronouns to refer to Peter Marco.

[5] Among the Consigned Jewelry are the yellow diamond ring and yellow radiant diamond necklace at the heart of Plaintiff David Rovinsky's Complaint.  (Compl. ¶¶ 10–11; *see* ATPC ¶ 33.)

Rachel, and Jadelle (the Rechnitzes' jewelry business) memorialized the consignments in a series of memoranda.[6]  (ATPC ¶¶ 124–34.)  "Prior to 10-29-2019, and thereafter," Jona repeatedly told Peter Marco he had interested buyers for the Consigned Jewelry, that sales were imminent, and that he had sold the Consigned Jewelry and was awaiting payment from his clients.  (ATPC ¶¶ 34, 37.)  Peter Marco discovered from colleagues that Jona liquidated the Consigned Jewelry.  (ATPC ¶ 38.)  Peter Marco demanded that Jona return the Consigned Jewelry.  (ATPC ¶ 49.)  In January and February 2020, Jona, his father Robert, and his attorneys communicated with Peter Marco, expressing regret that payment was delayed, requesting that Peter Marco not communicate with the press, and assuring Peter Marco that Jona was arranging for payment.  (ATPC ¶¶ 40–43, 49–56, 58, 67–68.)  Jona has not returned the Consigned Jewelry or paid Peter Marco its stated value.  (*See* ATPC ¶¶ 38, 49.)

Peter Marco brings the following claims: (1) intentional misrepresentation and fraud against Jona, Rachel, and Prado; (2) civil theft against Jona and Rachel; (3) embezzlement against Jona; (4) civil conspiracy to commit theft, fraud, and fraud by concealment against Jona, Rachel, and Prado; (5) conversion against Jona and Rachel; (6) breach of contract against Jona and Rachel; (7) breach of the implied covenant of good faith and fair dealing against Jona, Rachel, and Prado; (8) account stated against Jona and Rachel; and (9) unethical business practices in violation of California Business and Professions Code section 17200 against Jona, Rachel, and Prado.  (ATPC ¶¶ 86–150.)

**B.     Bankruptcy Proceedings**

Jadelle Jewelry and Diamonds, LLC, is one of the Rechnitzes' jewelry businesses; Rachel is its managing member, and Prado is its agent for service of

---

[6] The ATPC refers to three businesses named Jadelle: Jadelle Jewelry and Diamonds, LLC; Jadelle Jewelry, LLC; and Jadelle Inc.  (ATPC ¶¶ 11–13.)  The ATPC is unclear as to which Jadelle entities are party to these consignment memoranda.  (*Compare* ATPC ¶ 126 (stating "the Jadelle Parties" are parties to the memoranda), *with* ATPC ¶ 11 (defining "Jadelle Entities" as the collective term referring to nonparty Jadelle businesses)).  The Court need not distinguish these businesses from one another to decide the motions.

process and controller.   (ATPC ¶¶ 6–7, 11, 14.)   Jadelle Inc. is another of the Rechnitzes' jewelry businesses; Rachel is its chief executive officer, chief financial officer, and secretary.   (ATPC ¶¶ 7, 13.)   On April 6, 2020, Peter Marco and other creditors filed an involuntary bankruptcy petition against Jadelle Jewelry and Diamonds, LLC, and Jadelle Inc.   (ATPC ¶ 9 & Ex. 1.)   Proceedings in *In re Jadelle* are ongoing.

## C.   Criminal Investigation

The Rechnitzes' attorney avers that the Beverly Hills Police Department referred allegations made by Victor Franco Noval, another of the petitioning creditors in *In re Jadelle*, to the Federal Bureau of Investigation for criminal investigation. (Decl. of Reuven L. Cohen ("R. Cohen Decl.") ISO MTS ¶¶ 9–10, ECF No. 47.)   At the time the MTS was filed, the United States Attorney's Office declined to confirm or deny publicly the existence of any investigation.   (*Id.* ¶ 11.)

On August 25, 2020, the United States filed a motion for a limited stay of discovery in *In re Jadelle*.   (Gov't Mot.)   The government states that the FBI is "investigating the alleged theft or taking by fraud of millions of dollars in diamonds while on consignment with Jadelle, some or all of which have recently been recovered and are being held as evidence." (Gov't Mot. 1.)   The government requests a stay in the bankruptcy proceeding based on the overlap between Noval's claims as creditor in *In re Jadelle* and the pending criminal investigation of transfers between Noval and Jadelle.   (Gov't Mot. 10–11.)   The government argues that if discovery in the bankruptcy proceeding is not stayed, Noval, Jona, and others "may be forced to choose to invoke their Fifth Amendment privilege against self-incrimination." (Gov't Mot. 13.)

## IV.     LEGAL STANDARDS

## A.   Motion to Stay

The district court has "the power to stay proceedings . . . to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This power includes the discretion to stay a case "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* at 863–64. To determine whether a *Landis* stay is appropriate, courts consider (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

**B.     Motion to Dismiss**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the

pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Fraud-based claims require a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint must identify the "who, what, when, where, and how" of the fraudulent misconduct, "as well as what is false or misleading about" it, and "why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted); *accord Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (requiring "*more* than the neutral facts necessary to identify the transaction").

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## V.    MOTION TO STAY

The Rechnitzes request that the Court stay proceedings against them for six months in light of two pending proceedings involving Jadelle: a criminal investigation and an involuntary bankruptcy action. (MTS 1–2.) The Rechnitzes fail to show that exercise of the Court's discretion to stay the case is appropriate.

## A.    The *Keating* Factors Weigh Against Staying the Action Pending the Criminal Investigation.

"The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). "Nevertheless, a court may decide in its discretion to stay civil proceedings . . . 'when the interests of justice seem[] to require such action.'" *Id.* (alterations in original) (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d

1368, 1375 (D.C. Cir. 1980)).  In deciding whether to stay civil proceedings in light of parallel criminal proceedings, courts consider the following factors: (1) the extent to which the defendant's Fifth Amendment rights are implicated; (2) the plaintiff's interest in proceeding expeditiously with the litigation and the potential prejudice of a delay; (3) the burden the proceedings may impose on the defendant; (4) judicial efficiency; (5) nonparty interests; and (6) the public's interest in the pending civil and criminal litigation.  *Id.* at 324–25.

### 1.    Implication of the Rechnitzes' Fifth Amendment Rights

With respect to the first factor, "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege."  *Id.* at 326.  Although a defendant's Fifth Amendment right is an important consideration, it is but one factor to be weighed against the others.  *See id.*  "[T]he strongest case for deferring civil proceedings . . . is where a party under indictment for a serious offense is required to defend a civil . . . action involving the same matter."  *Dresser Indus.*, 628 F.2d at 1375–76.

The first factor weighs only weakly in favor of staying the action.  As Peter Marco highlights, there is no pending criminal proceeding, only an investigation.  (Opp'n MTS 12, ECF No. 48.)  Without a criminal indictment, "[t]he case for staying civil proceedings is 'a far weaker one.'"  *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989) (quoting *Dresser Indus.*, 628 F.2d at 1376); *see also Estate of Morad v. City of Long Beach*, No. CV 16-06785 MWF (AJWx), 2017 WL 5187826, at *8 (C.D. Cal. Apr. 28, 2017) ("*Keating* stays are rarely, if ever, granted where no indictment has yet been returned.").

Even without an indictment, a court may order a stay "if there is substantial overlap between the criminal investigation and the allegations in the civil lawsuit." *C.M. ex rel. McLain v. Cnty. of Los Angeles*, No. LA 17-cv-05135-VAP-AGRx, 2017 WL 10527380, at *2 (C.D. Cal. Oct. 19, 2017); *accord eBay, Inc. v. Digit. Point Sols., Inc.*, No. C 08-4052 JF (PVT), 2010 WL 702463, at *3 (N.D. Cal. Feb. 25, 2010)

(emphasizing importance of factual and legal overlap in analyzing this factor). The legal and factual issues in this action do not appear to overlap with the criminal investigation. The Rechnitzes identify transfers between Noval and Jadelle as the subject of criminal investigation—not the jewelry consignments from Peter Marco. (R. Cohen Decl. ¶¶ 9–10.) Similarly, the government's motion in *In re Jadelle* identifies an overlap between Noval's claims in the bankruptcy action and the criminal investigation of transfers between Noval and Jadelle. (Gov't Mot. 5–6, 10–11 (citing, among other things, Noval's declaration describing these transfers).) Despite clear allegations presented in the bankruptcy matter regarding the consignments from Peter Marco (*see generally* Marco Decl. (describing Consigned Jewelry transactions in declaration concurrently filed with Noval's declaration)), the government's motion narrowly focuses on the Noval transfers and remains silent as to whether the Peter Marco consignments also are the subject of investigation.[7] The Rechnitzes do not convincingly articulate how their Fifth Amendment rights are implicated by this action given the pending investigation of unrelated transactions with a nonparty.

## 2. *Other* Keating *Factors*

As for prejudice to Peter Marco, a civil plaintiff has an interest in having its case resolved quickly. *ESG Cap. Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014). It would be highly prejudicial to require Peter Marco to await the conclusion of a criminal investigation of unclear scope and duration. If the government ultimately files criminal charges against Jadelle or its officers, the delay may be substantial. The potential for prejudice to Peter Marco is significant and strongly weighs against a stay.

---

[7] The government avers that it recently recovered jewelry owned by or on consignment to Jadelle. (Decl. of Madison MacDonald ISO Gov't Mot. ("MacDonald Decl.") ¶¶ 4–5, 8–9, ECF No. 92-1.) The provenance of the jewelry is the subject of ongoing investigation. (Gov't Mot. 13; *see also* MacDonald Decl. ¶ 11.) The Court declines to speculate whether pieces of the Consigned Jewelry are among the recovered jewelry.

In contrast, the burden on the Rechnitzes of proceeding in this action is concrete but not compelling.  As discussed, the Rechnitzes have no constitutional right to a stay.  *Keating*, 45 F.3d at 326.  To the extent the Rechnitzes see fit to invoke their privilege against self-incrimination in this action, "less drastic means" than a stay, "such as asserting the privilege on a question-by-question basis and implementing protective orders," are available.  *Doe v. City of San Diego*, No. 12-cv-689-MMA-DHB, 2012 WL 6115663, at *2 (S.D. Cal. Dec. 10, 2012).  Given the apparent lack of overlap between the subjects of criminal investigation and Peter Marco's claims, such less drastic means are suitable safeguards of the Rechnitzes' rights in this action.  This factor weighs only weakly in favor of a stay.

Judicial efficiency weighs against issuing a stay, as the Court has "an interest in clearing its docket."  *Molinaro*, 889 F.2d at 903.  Although the Rechnitzes limit their stay request to six months (MTS 1–2), no party has provided any indication that the criminal investigation, or resulting criminal proceedings, will be completed by the conclusion of that six-month period.  Indeed, the Rechnitzes already forecast an extension of the stay in their motion papers.  (*See* MTS 2 (requesting a status conference six months from entry of the stay "to determine whether a further stay is warranted").)  A stay would significantly delay adjudication of this matter.

Nonparty interests are unclear.  The nonparty interest factor is "salient in the *Keating* analysis where the third-parties at issue had a direct interest in the outcome of the litigation."  *Petrov v. Alameda Cnty.*, No. 16-cv-04323-YGR, 2016 WL 6563355, at *6 (N.D. Cal. Nov. 4, 2016).  The Rechnitzes argue the petitioning creditors in *In re Jadelle* would benefit from having the bankruptcy action resolved before this one.  (MTS 8–9.)   The government's motion to stay in *In re Jadelle* complicates that argument: should *Jadelle* be stayed, the order in which the actions would be resolved is uncertain.  If *Jadelle* is stayed, the petitioning creditors may have an interest in the continued litigation of this action because the Rechnitzes' participation in discovery or trial may inform the petitioning creditors' claims.  Given the uncertainty as to whether

a stay here would directly benefit the petitioning creditors' interests, this factor does not weigh in favor of or against a stay.

The public interest factor weighs against a stay. The Rechnitzes' counsel declares that someone at the U.S. Attorney's Office informed him that the office would "support[] [the Rechnitzes'] request for a stay with respect to civil proceedings related to the investigation." (R. Cohen Decl. ¶ 11.) As discussed, it does not appear that this proceeding relates to the investigation; the U.S. Attorney's Office has not appeared in this action to "support[]" the Rechnitzes' request for a stay, despite the government's intervention in *In re Jadelle*. Thus, it is unclear whether "the public's interest in the integrity of the criminal case" is implicated here. *Jones v. Conte*, No. C 045312S1, 2005 WL 1287017, at *2 (N.D. Cal. Apr. 19, 2005) (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003)). Instead, the Court acknowledges the public's general interest in swift resolution of civil actions, *see Keating*, 45 F.3d at 326, and determines that this factor weighs against a stay.

Weighing all the *Keating* factors, the Court determines that a stay pending the criminal investigation is not justified at this time.

**B.     The Jadelle Bankruptcy Proceeding Does Not Warrant a Stay Here.**

The Rechnitzes also briefly argue that the ongoing proceedings in *In re Jadelle* warrant a stay of this action because the Consigned Jewelry is arguably an asset of the putative debtor. (MTS 9–10.) The Rechnitzes note that Peter Marco is attempting to recover the value of the Consigned Jewelry simultaneously from Jona, Rachel, and Prado in this action and from Jadelle in the bankruptcy action. (MTS 1, 9.) How Peter Marco's litigation strategy and the ownership status of the Consigned Jewelry favor a stay of these proceedings is unclear. The Rechnitzes offer no argument or authority probative of the issues relevant to whether a stay is appropriate—that is, whether a stay would simplify or complicate the factual or legal issues in this case, whether staying the action would damage the other parties, and whether the Rechnitzes would face hardship or inequity should a stay be denied. *See Lockyer*, 398

1  F.3d at 1110.  It is not the role of the Court to make parties' arguments for them.  *See*

2  *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).  The

3  Rechnitzes fail to meet their burden to show that a stay pending the resolution of *In re*

4  *Jadelle* is appropriate.[8]

5  **C.    Conclusion**

6        Neither the criminal investigation nor the bankruptcy action warrants a stay of

7  this action.  The Court **DENIES** the Rechnitzes' motion for a stay of proceedings.

8                      **VI.    MOTION TO DISMISS**

9        The Rechnitzes move to dismiss the ATPC with prejudice for failure to state a

10  claim.  (MTD 1–3.)  For the following reasons, the Court grants the motion to dismiss

11  but gives Peter Marco leave to amend all but the third claim.

12  **A.    Fraud-Based Claims**

13        Peter Marco's first, second, fourth, and fifth claims, all of which are predicated

14  on allegations of fraud, must be dismissed.  The Court first considers the fraud-based

15  claims against Jona before turning to the same claims against Rachel.

16        *1.    Intentional Misrepresentation and Fraud (First Claim)*

17        To state a claim of intentional misrepresentation or fraud, a plaintiff must plead:

18        (1) the defendant represented to the plaintiff that an important fact was
19        true; (2) that representation was false; (3) the defendant knew that the
        representation was false when the defendant made it, or the defendant
20        made the representation recklessly and without regard for its truth; (4) the
        defendant intended that the plaintiff rely on the representation; (5) the
21        plaintiff reasonably relied on the representation; (6) the plaintiff was
22        harmed; and (7) the plaintiff's reliance on the representation was a
        substantial factor in causing that harm to the plaintiff.
23

24  *Manderville v. PCG&S Grp., Inc.*, 146 Cal. App. 4th 1486, 1498 (2007) (emphasis

25  omitted); *accord Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996) (articulating the

26

27  _____

    [8] For the first time in the reply, the Rechnitzes contend that some claims may be subject to Jadelle's
28  automatic bankruptcy stay.  (Reply ISO MTS 11, ECF No. 55.)  The Court declines to entertain this
    argument.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not
    consider arguments raised for the first time in a reply brief.").

12

claim in five elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage"). Claims of intentional misrepresentation are subject to the heightened pleading standard of Rule 9(b), requiring the plaintiff to plead the "time, place, and specific content" of the misrepresentations. *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007); *see also Vess*, 317 F.3d at 1103 ("Rule 9(b)'s particularity requirement applies to state-law causes of action.").

Peter Marco alleges that, "[f]rom the period 10-29-2019 - 1-7-2020," Jona assured Peter Marco that "he was back from NY refocused on his business," and that he sought jewelry on consignment "for the purpose of reselling them to his clients." (ATPC ¶ 32.) "Prior to 10-29-2019, and thereafter," Jona further represented that "he had interested buyers for the pieces of Consigned Jewelry," that sale of the Consigned Jewelry was "imminent," and that the sold Consigned Jewelry was "awaiting receipt of payment from his clients." (ATPC ¶¶ 34, 37.)[9]

The time, place, and specific content of these purported misrepresentations is not pleaded with any specificity. For example, the phrase "[p]rior to 10-29-2019, and thereafter" is entirely devoid of temporal meaning; it is unclear when or how many times Jona purportedly made any representations. Peter Marco also fails to articulate which of the pieces of Consigned Jewelry Jona told him had interested buyers, which had imminent sales, and which were sold and awaiting payment, as well as when, where, and how Jona made such representations. Specificity concerning Jona's statements that he was refocused on his business and sought jewelry on consignment for his clients, made an unspecified number of times in a two-month span, is similarly lacking. These allegations fall short of presenting factual content sufficient for Jona to

---

[9] Peter Marco avers Jona told him "further false and misleading stories." (ATPC ¶ 40.) The Court limits its analysis to the two sets of statements described here, which are the only statements identified and argued in the parties' briefs. (MTD 9; Third-Party Pls.' Opp'n MTD ("Opp'n MTD") 14–15, ECF No. 66.)

meaningfully respond to the claim.  *See, e.g.*, *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *14 (N.D. Cal. Nov. 11, 2016) (finding insufficient under Rule 9(b) "allegations of 'repeated' conversations over an eight-month time frame"); *Giron v. Wells Fargo Bank, N.A.*, No. 2:14-cv-02437-ODW (VBKx), 2014 WL 12589628, at *4 (C.D. Cal. May 27, 2014) (finding insufficient under Rule 9(b) "[g]eneralized allegations that at some unknown point a vague statement was made").

Because the allegations concerning the representations at issue are insufficient under Rule 9(b), the Court need not decide whether the other elements are adequately pleaded.  The claim for intentional misrepresentation must be dismissed.

### 2.    *Civil Theft (Second Claim)*

California Penal Code section 496(a) criminalizes buying or receiving "any property that has been stolen or has been obtained in any manner constituting theft or extortion"; section 496(c) provides a private right of action to a person injured by a violation of section 496(a).  To plead a violation of section 496(a), a plaintiff must establish: "(1) that the particular property was stolen, (2) that the accused received, concealed or withheld it from the owner thereof, and (3) that the accused knew that the property was stolen." *Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 213 (2015).

Peter Marco alleges that Jona received the Consigned Jewelry in a manner constituting theft by false pretenses under California Penal Code section 484(a). (ATPC ¶¶ 95–96.)  That subdivision proscribes "knowingly and designedly, by any false or fraudulent representation or pretense, defraud[ing] any other person of . . . personal property."  Cal. Pen. Code § 484(a).  Theft by false pretenses and fraud carry "substantially similar elements," and both are subject to heightened pleading requirements. *Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-cv-00155-BAS (DHB), 2016 WL 1241026, at *8 (S.D. Cal. Mar. 30, 2016); *see Vess*, 317 F.3d at 1103–04 (recognizing Rule 9(b) applies to a claim relying upon

1    allegations of fraud even where fraud is not a necessary element of the claim).   As
2    described above, Peter Marco has not adequately pleaded fraud; for the same reasons,
3    he also has not pleaded theft by false pretenses.   Accordingly, Peter Marco has not
4    adequately alleged facts establishing the first element of his claim, that the property
5    was stolen.

6         The Rechnitzes argue that Peter Marco further failed to establish facts showing
7    that Jona received, concealed, or withheld the pieces of Consigned Jewelry from their
8    owners.   (MTD 12.)   Peter Marco does not respond to this argument.   (*See* Opp'n
9    MTD 17–20.)   The Court has not identified any allegation in the ATPC pertaining to
10   this element of the claim, so the second element also appears to be insufficiently
11   pleaded.

12        For both of these reasons, the claim for civil theft must be dismissed.

13        3.    *Civil Conspiracy (Fourth Claim)*

14        Civil conspiracy is not a distinct cause of action under California law, but
15   instead is "a legal doctrine that imposes liability on persons who, although not
16   actually committing a tort themselves, share with the immediate tortfeasors a common
17   plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7
18   Cal. 4th 503, 510–11 (1994).   The elements of a civil conspiracy are "(1) the
19   formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the
20   conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie*
21   *Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995).   Rule 9(b) applies to a civil
22   conspiracy claim where, as here, "the object of the conspiracy is fraudulent." *Swartz*,
23   476 F.3d at 765.

24        Peter Marco claims Jona conspired with Rachel and Prado to defraud Peter
25   Marco and commit civil theft.   (ATPC ¶ 107.)   As discussed above, the fraud and theft
26   claims are inadequately pleaded, so this claim similarly must be dismissed for failure
27   to allege wrongful conduct with the particularity required by Rule 9(b).

28

### 4.     Conversion (Fifth Claim)

"Conversion is the wrongful exercise of dominion over the property of another."  *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) (internal quotation marks omitted).  Its elements are "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  *Id.*  Because the wrongful acts alleged here are predicated in fraud (ATPC ¶ 117), this claim also is subject to heightened pleading requirements. *Vess*, 317 F.3d at 1103–04.

Because the purported conversion by fraud is inadequately pleaded, this claim too must be dismissed for failure to meet Rule 9(b)'s particularity requirement.  In sum, the first, second, fourth, and fifth claims against Jona must be dismissed.

### 5.     *Fraud-Based Claims Against Rachel (First, Second, Fourth, and Fifth Claims)*

Peter Marco also has not adequately pleaded any of these claims against Rachel. As established, the fraud, theft, conspiracy, and conversion claims are subject to the heightened pleading requirements of Rule 9(b).  "To satisfy Rule 9(b), a fraud suit against differently situated defendants must identify the role of each defendant in the alleged fraudulent scheme.  In other words, when defendants engage in different wrongful conduct, plaintiffs must likewise differentiate their allegations."  *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (citation and internal quotation marks omitted).  "[W]ith different actors playing different parts, it is not enough to lump together the dissimilar defendants and assert that everyone did everything."  *Id.* (internal quotation marks omitted).

Peter Marco avers that Rachel is the wife of Jona; the managing member of Jadelle Jewelry and Diamonds, LLC, and Jadelle Jewelry, LLC; and an officer of Jadelle Inc.  (ATPC ¶¶ 6–7, 11–13.)  He alleges that Jona committed wrongdoing "with Rachel's knowledge and direction," as Jona was afforded the opportunity to commit fraud because Rachel "set[] up the entities to commit the frauds."  (ATPC

¶¶ 8, 15.)   Although Peter Marco argues that Rachel "knew of, participated in, and endorsed Jona's frauds," (Opp'n MTD 7), he pleads no factual basis for these conclusions—or any facts showing that Rachel herself made any fraudulent representations.   Peter Marco further contends that "Jona and Rachel (and Jadelle) are one and the same," and that group pleading as to Jona, Rachel, Prado and Jadelle's collective conduct is appropriate.  (Opp'n MTD 8, 12–13.)  But the ATPC does not set forth factual allegations supporting Peter Marco's conclusion that Jona, Rachel, and Prado are alter egos of one another.   (*See* ATPC ¶ 18 (making this conclusion on unpleaded "information and belief").)   In any event, Peter Marco's allegations of fraudulent misconduct are not collective—according to the ATPC, Jona made the misrepresentations at issue, not Rachel or Prado.  (*E.g.*, ATPC ¶¶ 32, 34, 37; *see also* Opp'n MTD 6 (admitting each third-party defendant plays a "respective role[] in the alleged conduct," rather than one collective role).)   Finally, Peter Marco presents allegations concerning Rachel in the opposition brief that are not pleaded.  (*E.g.*, Opp'n MTD 2–3 (arguing Rachel "has been paying off Jona's defrauded creditors through her Paypal and personal bank accounts").)

The pleading is entirely devoid of any allegations of Rachel's fraudulent conduct, let alone allegations made with the specificity required by Rule 9(b).   The first, second, fourth, and fifth claims against Rachel must be dismissed.

**B.     Embezzlement (Third Claim)**

There is no civil claim for embezzlement under California law.   *Sharp v. Nationstar Mortg., LLC*, 701 F. App'x 596, 598 (9th Cir. 2017) (citing *In re Basinger*, 45 Cal. 3d 1348, 1363 (1988)); *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1257 (N.D. Cal. 2014).   Peter Marco does not offer any authority to the contrary.[10]   (*See* Opp'n MTD 21–23.)  This claim is dismissed.

---

[10] Instead, he states that "embezzlement may create various causes of action such as, for example, conversion (wrongful taking of property), fraud, and breach of fiduciary duty – all properly alleged in the [ATPC]."  (Opp'n MTD 21.)  The adequacy of the fraud and conversion claims are discussed above, but the ATPC presents no claim of breach of fiduciary duty.

## C.      Breach of Contract (Sixth Claim)

To state a claim for breach of contract under California law, a plaintiff must plead: (1) a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to plaintiff.   *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968); *Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1109 (2015).

The Rechnitzes argue Peter Marco failed to adequately plead the material terms of the asserted contracts, the consignment memoranda—specifically, the terms governing when the consignment memoranda required the Rechnitzes to return or pay the value of the Consigned Jewelry.  (MTD 17.)  "While it is unnecessary for a plaintiff to allege the terms of the alleged contract with precision, the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached."  *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (citation omitted).  If "it affirmatively appears that all the terms of the contract are not set forth in *haec verba*, nor stated in their legal effect, but that a portion which may be material has been omitted, the complaint is insufficient."  *Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 941 (N.D. Cal. 2015) (quoting *Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124 (1880)).

The ATPC affirmatively exhibits several material omissions concerning the Rechnitzes' relevant contract obligations.  Peter Marco alleges that he, Jona, Rachel, and Jadelle are parties to a series of consignment memoranda that obligate Jona and Rachel to either return certain pieces of Consigned Jewelry to Peter Marco or pay Peter Marco their value.  (ATPC ¶¶ 124, 126–34.)  He claims that Jadelle, Jona, and Rachel breached the agreements by failing to either return or pay the value of all of the Consigned Jewelry, and that the value of the Consigned Jewelry "is past due and owing."  (ATPC ¶ 135.)  Taken together, these allegations leave unstated what event or events would trigger the Rechnitzes' obligation to return or pay, or which contracting party would elect between return or payment upon occurrence of the triggering event.

Accordingly, the ATPC leaves unclear how the Rechnitzes have a "past due" payment obligation under the consignment memoranda given the failure to plead contract terms establishing when payment was due.  Peter Marco also has not pleaded any terms giving rise to interest obligations, despite claiming interest is owed under the contracts.  (ATPC ¶ 135.)  Finally, Peter Marco fails to allege the existence of contracts governing consignment of several pieces of Consigned Jewelry for which he claims he is owed payment.  For example, he pleads that the Consigned Jewelry includes three butterfly rings consigned to the Rechnitzes on November 11, 2019, (ATPC ¶ 33), but he does not allege the existence of a memorandum obligating the Rechnitzes to return or pay the value of the rings, (*see* ATPC ¶¶ 126–34).  The ATPC clearly omits material portions of the contracting parties' relevant obligations, so the breach of contract claim must be dismissed.

**D.   Breach of Implied Covenant of Good Faith and Fair Dealing (Seventh Claim)**

California law implies in every contract a covenant of good faith and fair dealing.  *Moore v. Wells Fargo Bank, N.A.*, 39 Cal. App. 5th 280, 291 (2019).  To state a claim for breach of the implied covenant of good faith and fair dealing, the plaintiff must allege the specific contractual obligation from which the implied covenant arose.  *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1050 (C.D. Cal. 2019).

Peter Marco tersely alleges that the Rechnitzes "breached the implied covenant of good faith and fair dealing continuously throughout the business relationship." (ATPC ¶ 138.)  Peter Marco does not identify the specific contractual obligation from which he claims the implied covenant arose, let alone the contract from which the covenant arose.  He further fails to describe how the Rechnitzes "continuously" breached any such covenant.  *See Terpin*, 399 F. Supp. 3d at 1050 (dismissing claim where plaintiff did not allege how defendant "failed or refused to discharge their contractual responsibilities through a conscious or deliberate act to frustrate their contractual agreement").  This claim must be dismissed.

**E.     Account Stated (Eighth Claim)**

"An account stated is an agreement, based on prior transactions between the parties, that all items of the account are true and that the balance struck is due and owing from one party to the other." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1091 (9th Cir. 1989) (quoting *Trafton v. Youngblood*, 69 Cal. 2d 17, 25 (1968)).  To state a claim for account stated, a plaintiff must plead: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; [and] (3) a promise by the debtor, express or implied, to pay the amount due." *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600 (1969).  An account stated "constitutes a new contract which supersedes and extinguishes the original obligation." *Id.* at 604.  Thus, "a debt which is predicated upon the breach of the terms of an express contract cannot be the basis of an account stated." *Moore v. Bartholomae Corp.*, 69 Cal. App. 2d 474, 477 (1945).

Peter Marco incorporates his previous allegations by reference to claim that "an account was stated in writing . . . , and on such statement, a balance of $6,950,444.40 was found due."  (ATPC ¶¶ 143–44.)  Aside from the consignment memoranda, Peter Marco does not allege the existence of any written agreement between Peter Marco and the Rechnitzes establishing the amount due for the Consigned Jewelry.  (*See* ATPC ¶ 135 (claiming breach of contract due to failure to "make full repayment of the $6,950,444.40").)  Peter Marco's account stated claim may not be predicated on the same debts claimed due under the consignment memoranda.  *See, e.g.*, *Advanced Cleanup Techs., Inc. v. BP Am. Inc.*, No. CV14-9033-CAS (AJWx), 2016 WL 67671, at *7 (C.D. Cal. Jan. 4, 2016) (concluding plaintiff failed to state claim for account stated where plaintiff sought to recover amounts it claimed were due under a written agreement); *Nat'l Ins. Co. of Hartford v. Expert Auto. Reconditioning, Inc.*, No. SACV 13-0873-DOC (JPRx), 2013 WL 6190591, at *4 (C.D. Cal. Nov. 24, 2013) (same). The claim is dismissed.

**F.     Unethical Business Practices (Ninth Claim)**

California's unfair competition law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."   Cal. Bus. & Prof. Code § 17200.   "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted).

Incorporating his preceding allegations, Peter Marco claims that the Rechnitzes "intentionally conspired with each other to restrain competition and deprive [Peter Marco] of the benefit of their contracts."  (ATPC ¶ 148.)  Peter Marco leaves unclear whether he brings his claims under the unlawful, unfair, or fraudulent prongs of the UCL.  By incorporating his other claims, this claim appears to derive from those claims.  To the extent this claim is predicated on the fraud-based claims, such as conspiracy, it fails to meet the heightened pleading requirements of Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (applying Rule 9(b)'s heightened pleading standards to UCL claims sounding in fraud).  To the extent this claim is predicated on any of the other claims, it fails because Peter Marco failed to state his other claims.  *See Matudio v. Countrywide Home Loans, Inc.*, No. CV 09-02960 DDP (FFMx), 2010 WL 114185, at *3–4 (C.D. Cal. Jan. 6, 2010) (dismissing derivative UCL claim where plaintiff failed to state underlying claims).  This claim must be dismissed.

**G.     Conclusion**

The Court dismisses Peter Marco's claims against the Rechnitzes.

The Court also dismisses Peter Marco's claims against Prado.  "A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."  *Silverton*

*v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981). Prado stands in a similar position to Rachel in the foregoing analysis of the fraud-based claims; Peter Marco fails to allege fraudulent misconduct by Prado, (*see* ATPC ¶¶ 14–16, 48), so the fraud and conspiracy claims against him may be dismissed on that basis. The reasoning supporting dismissal of the breach of implied covenant and UCL claims against the Rechnitzes applies in equal measure to the claims against Prado.

Recognizing the policy favoring adjudicating cases on their merits and granting leave to amend when justice so requires, Fed. R. Civ. P. 15(a)(2), the Court dismisses the first, second, and fourth through ninth claims with leave to amend. Because California law does not provide a civil claim for embezzlement, amendment of such a claim would be futile and the third claim is dismissed without leave to amend.

Concerning amendment, the Court reminds Peter Marco of his pleading obligations under Rule 8(a)(2), which requires a "short and plain statement of the claim." Complaints that are "argumentative, prolix, replete with redundancy, and largely irrelevant" may be dismissed. *Cafasso*, 637 F.3d at 1058 (quoting *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996)). Much of the ATPC consists of scurrilous allegations irrelevant to Peter Marco's substantive claims. (*E.g.*, ATPC ¶¶ 25–30 (discussing unrelated criminal proceedings involving Jona); ATPC ¶¶ 70, 75–84 (setting forth allegations concerning Peter Marco's attorney).) These superfluous allegations do not comport with the letter or spirit of Rule 8; any amended pleading should avoid them.

## VII.   CONCLUSION

For the reasons discussed above, the Court orders as follows:

1.    The Rechnitzes' motion to stay is **DENIED**. (ECF No. 47.)

2.    The Rechnitzes' motion to dismiss the ATPC is **GRANTED**. (ECF No. 63.) Peter Marco's first, second, and fourth through ninth claims are **DISMISSED** with leave to amend. Peter Marco's third claim for embezzlement is **DISMISSED** without leave to amend.

3.      Peter Marco may file a Second Amended Third-Party Complaint within fourteen (14) days curing the deficiencies identified in this Order.   Third-Party Defendants' response shall be due fourteen (14) days thereafter.

**IT IS SO ORDERED.**

September 21, 2020

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**